**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| NEW MEXICO UNITED FOOD AND COMMERCIAL WORKERS UNION'S AND EMPLOYERS' HEALTH AND WELFARE TRUST FUND, on behalf of itself and all others similarly situated, | : : : : : : | |
| Plaintiff | : : | 07-CV-6916 (JGK) |
| v. | : : | Electronically Filed |
| PURDUE PHARMA L.P., *et al.*, | : : : | |
| Defendants. | : : | |

**MEMORANDUM IN SUPPORT OF**
**ABBOTT LABORATORIES' AND ABBOTT**
**LABORATORIES, INC.'S MOTION TO DISMISS**

## TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................1

ARGUMENT ......................................................................................................5

I.   Plaintiff Lacks Standing to Sue Abbott Because It
     Has Alleged No Injury Fairly Traceable to Abbott
     Conduct ................................................................................................6

II.  The Complaint Fails to State a Claim Against Abbott ................................8

     A.   Standard of review .........................................................................8

     B.   All four of Plaintiff's purported causes of action
          fail to allege the elements required under federal
          and state law ................................................................................10

          1.   Plaintiff's Section 1962(c) RICO
               claim (Count I) fails against Abbott....................................10

          2.   Plaintiff's Section 1962(d) RICO
               conspiracy claim (Count II) similarly
               fails against Abbott ..........................................................12

          3.   Plaintiff's consumer protection claim
               (Count III) fails as to Abbott.............................................13

               a.   Plaintiff has standing to pursue a
                    claim only under the New Mexico
                    consumer protection statute ...................................13

               b.   Plaintiff's consumer protection
                    claim fails under New Mexico law .........................14

          4.   Plaintiff's unjust enrichment claim in Count
               IV fails to state a claim against Abbott..............................15

               a.   Abbott was not *unjustly* enriched...........................15

               b.   An unjust enrichment claim is precluded
                    where, as here, Plaintiff has an adequate
                    alternative remedy at law .......................................19

CONCLUSION....................................................................................................21

# TABLE OF AUTHORITIES

**Case**                                                                                          **Page(s)**

*Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534 (1986) ............................................6

*Brooks v. Norwest Corp.*, 103 P.3d 39 (N.M. Ct. App. 2004)...........................................14

*Ctr. for Reprod. Law & Policy v. Bush*, 304 F.3d 183 (2d Cir. 2002)................................6

*Chavarria v. Fleetwood Retail Corp. of New Mexico,* 115 P.3d 799
    (N.M. Ct. App. 2005), *partially rev'd on other grounds,*
    143 P.3d 717 (N.M. 2006)...........................................................................................14

*Ciambriello v. County of Nassau*, 292 F.3d 307 (2d Cir. 2002)..........................................9

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991) .................................2

*Crigger v. Fahnestock & Co., Inc.*, 2003 WL 22170607,
    (S.D.N.Y. Sept. 18, 2003) .........................................................................................19

*De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65 (2d Cir. 1996)....................................8

*DeFalco v. Bernas*, 244 F.3d 286 (2d Cir. 2001) ..............................................................11

*E. River Sav. Bank v. Sec'y of Hous. & Urban Dev.*,
    702 F. Supp. 448 (S.D.N.Y. 1988).............................................................................19

*First Capitol Asset Mgmt., Inc. v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 2004)..............................................................................11, 12

*Frederickson v. Blumenthal*, 648 N.E.2d 1060 (Ill. App. Ct. 1995)..................................19

*Garelick v. Sullivan*, 987 F.2d 913 (2d Cir. 1993)..............................................................6

*Gene B. Glick Co., Inc. v. Sunshine Ready Concrete Co., Inc.*,
    651 So. 2d 190 (Fla. Dist. Ct. App. 1995)..................................................................18

*Gen. Elec. Co. v. Latin Am. Imports*, 214 F. Supp. 2d 758 (W.D. Ky. 2002) ..................18

*George C. Hall & Sons, Inc. v. Taylor*, 628 A.2d 1037 (Me. 1993)..................................20

*Gregory v. Daly*, 243 F.3d 687 (2d Cir. 2001) ...................................................................8

*Haber v. Brown*, 774 F. Supp. 877 (S.D.N.Y. 1991)...........................................................9

*Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21 (2d Cir. 1990) .......................11, 12

*Himes v. Brown & Co. Securities Corp.*,
      518 So. 2d 937 (Fla. Dist. Ct. App. 1987)....................................................15

*HPI Health Care Servs., Inc. v. Mt. Vernon Hospital, Inc.*,
      545 N.E.2d 672 (Ill. 1989) ................................................................... 15-16

*Laverpool v. New York City Transit Auth.*,
      760 F. Supp. 1046 (E.D.N.Y. 1991)........................................................ 9-10

*Lerner v. Fleet Bank, N.A.*, 318 F.3d 113 (2d Cir. 2003) ...................................11

*Lohman v. Daimler-Chrysler Corp.*, 166 P.3d 1091 (N.M. Ct. App. 2007)......................14

*Lombardo v. Santa Monica YMCA*, 215 Cal. Rptr. 224 (Cal. Ct. App. 1985)...................19

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...........................................6

*Madanes v. Madanes*, 981 F. Supp. 241 (S.D.N.Y. 1997) ...........................................11, 12

*Matter of Stiennon*, 73 B.R. 905 (Bankr. W.D. Wis. 1987).................................17

*McConnell v. Fed. Election Comm'n*, 540 U.S. 93 (2003)....................................6

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
      175 F. Supp. 2d 593  (S.D.N.Y. 2001).......................................................13

*Nat'l Benefit Adm'rs, Inc. v. Mississippi Methodist Hosp. & Rehab. Ctr., Inc.*,
      748 F. Supp. 459 (S.D. Miss. 1990)....................................................17, 18

*Nat'l Group for Comm. and Computers Ltd. v. Lucent Techs. Inc.*,
      420 F. Supp. 2d 253 (S.D.N.Y. 2006)................................................... 12-13

*Norris v. Grosvenor Mktg. Ltd.*, 803 F.2d 1281 (2d Cir. 1986).........................19

*Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*,
      170 F.R.D. 361 (S.D.N.Y. 1997)...............................................................9

*Ortho Pharm. Corp. v. Cosprophar, Inc.*, 32 F.3d 690 (2d Cir. 1994)...............................6

*Ostrer v. Aronwald*, 567 F.2d 551 (2d Cir. 1977)...............................................9

*Perry v. Am. Tobacco Co., Inc.,* 324 F.3d 845, 848 (6th Cir. 2003)............................. 14-15

*Ramos v. Patrician Equities Corp.*, 765 F. Supp. 1196 (S.D.N.Y. 1991) .........................13

*Reves v. Ernst & Young*, 507 U.S. 170 (1993)........................................................11

*Roth v. Jennings*, 489 F.3d 499 (2d Cir. 2007)....................................................2

*Santa Fe Custom Shutters & Doors v. Home Depot U.S.A., Inc.*,
    113 P.3d 347 (N.M. Ct. App. 2005)............................................................14

*Season Comfort Corp. v. Ben A. Borenstein Co.*, 655 N.E.2d 1065
    (Ill. App. Ct. 1995)............................................................................18, 19

*Shilkoff, Inc. v. 885 Third Ave. Corp.*, 299 A.D.2d 253,
    750 N.Y.S.2d 53 (1st Dept. 2002)................................................................16

*Smoot v. Physicians Life Ins. Co.,* 87 P.3d 545 (N.M. Ct. App. 2003)................................14

*S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*,
    84 F.3d 629 (2d Cir. 1996)......................................................................12

*Strom v. Goldman, Sachs & Co.*, 202 F.3d 138 (2d Cir. 1999)..........................................19

*Unibrand Tire & Prod. Co. v. Armstrong Rubber Co.*,
    429 F. Supp. 470 (W.D.N.Y. 1977)..............................................................9

*U.S. v. Vicon Constr. Co.*, 575 F. Supp. 1578 (S.D.N.Y. 1983)........................................15

OTHER AUTHORITIES

18 U.S.C. § 1962 .................................................................................5, 10, 11, 12

18 U.S.C. § 1964(c) ........................................................................................11

Dan B. Dobbs, The Law of Remedies § 4.1(2) (1993) ......................................16

FED. R. CIV. P. 9(b) ..........................................................................................12

FED. R. CIV. P. 12(b)(1)........................................................................................6

N.M. Stat. Ann. §§ 57-12-1 ...............................................................................14

Defendants Abbott Laboratories and Abbott Laboratories, Inc. (collectively, "Abbott"), by their undersigned attorneys, submit this memorandum in support of their motion to dismiss Plaintiff New Mexico United Food and Commercial Workers Union's and Employers' Health and Welfare Fund's claims against Abbott.

## I.    INTRODUCTION

In 2006, Plaintiff filed a Complaint in this Court (Case No. 06-CV-0354) that bears a striking resemblance to this one ("the 2006 Case"). Plaintiff voluntarily dismissed that 2006 case after Abbott moved to dismiss it, but it then filed another Complaint this year. Both in 2006 and today, Plaintiff (on behalf of itself and other "third-party payors") has sought to recover from Abbott and the other Defendants the amount by which it allegedly overpaid prescription drug benefits relating to OxyContin.[1]

Abbott is a former co-promoter of the prescription drug OxyContin. *See* Complaint at ¶¶ 68-70. Abbott did not design, manufacture, distribute or sell OxyContin. In its limited role as a co-promoter, Abbott helped market OxyContin primarily to anesthesiologists and orthopedic surgeons. *See id.* at ¶ 69. Abbott also clearly had no involvement in determining the price of OxyContin at any given time.

The undisputed reason Plaintiff filed this repeat lawsuit is that in May of 2007, Defendant The Purdue Frederick Company ("Purdue Frederick") and individual Defendants Michael Friedman, Howard R. Udell and Paul D. Goldenheim[2] pled guilty to

---

[1]    Plaintiff is a "Taft-Hartley" health and welfare trust fund located in Albuquerque, New Mexico. Complaint at ¶ 5. Plaintiff claims no personal injuries in this case; rather, Plaintiff seeks only economic losses. *See, e.g., id.* at ¶ 165 ("Plaintiff and the Class were damaged by paying for these prescriptions"). Specifically, Plaintiff claims that it has overpaid for its insureds' OxyContin prescriptions because "Defendants . . . charge[d] more for OxyContin than they otherwise would have been able to charge, absent market penetration for OxyContin." *Id.* at ¶ 38.

[2]    None of these individuals was a party to the 2006 Case.

misbranding OxyContin in violation of the Food, Drug and Cosmetic Act. *See* Complaint at ¶ 4.[3]  In connection with the guilty pleas, these four Defendants agreed to pay substantial criminal fines and civil penalties, including $130 million that Purdue agreed to set aside for two years to fund settlements of private lawsuits relating to OxyContin, like this one. *See id.* at ¶ 66. The four Defendants also signed an Agreed Statement of Facts, from which Plaintiff quotes heavily in the Complaint, in connection with their guilty pleas. *See, e.g., id.* at 53.

Abbott was not involved in any aspect of the guilty pleas. It played no part in the investigation leading up to the guilty pleas, and it was not a party to the guilty pleas or any of the associated agreements – including the Agreed Statement of Facts – that Purdue Frederick and the individual defendants signed. Abbott was not implicated in any of the alleged or admitted conduct and, in fact, the Commonwealth of Virginia (where the four Defendants were prosecuted), among other states, specifically released OxyContin co-promoters like Abbott from any criminal or civil liability relating to OxyContin. *See* ex. A (Release By The Commonwealth of Virginia).[4]

After Purdue Frederick and the individual defendants pled guilty, Plaintiff dusted off the Complaint from the 2006 Case, added numerous references to and quotations from the guilty pleas and the related documents and events, and re-filed the Complaint from

---

[3]     Purdue Frederick pled guilty to felony misbranding of OxyContin. The individual defendants pled guilty to misdemeanor misbranding. *See* Complaint at ¶ 4.

[4]     This Release is an attachment (Attachment L) to the Purdue Frederick plea agreement referenced throughout the Complaint. It is therefore within the limited realm of documents other than the Complaint that the Court may consider in connection with this Rule 12(b)(6) motion to dismiss. *See Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir. 2007) ("even if not attached or incorporated by reference, a document 'upon which [the complaint] solely relies and which is integral to the complaint' may be considered by the court in ruling on such a [Rule 12(b)(6)] motion" (quoting *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991))).

the 2006 Case as a new case. Whereas in 2006 Plaintiff asserted antitrust claims as the foundation of its causes of action, Plaintiff now asserts as Count I and II of the Complaint RICO causes of action.

However, if one strips away Plaintiff's recitation of the events surrounding the guilty pleas and its RICO claims, one is left with a complaint that looks strikingly similar to the 2006 Complaint. Notably, the current Complaint contains no new information as to Abbott and seeks the very same relief – reimbursement of third-party payor prescription drug benefit payments relating to OxyContin – as did the 2006 Complaint. This is because nothing whatsoever has changed with respect to Abbott since the 2006 Case.

Ironically, in its efforts to strengthen its case against the Purdue defendants by emphasizing and exploiting the guilty pleas, Plaintiff has further highlighted the lack of any connection between the conduct of which it complains and Abbott. There is not a single allegation in the Complaint or in any of the many documents cited in the Complaint that Abbott engaged in any of the Purdue conduct on which the Complaint is clearly premised. Moreover, as even Plaintiff admitted in the 2006 case and as it admits again in this case, Abbott merely "assist[ed]" Purdue in promoting OxyContin. Complaint at ¶ 23. Plaintiff attempts to conceal these crucial points by referring repeatedly to "Defendants" collectively, as if Plaintiff need only refer to Abbott and the Purdue and individual defendants in the same breath in order to subject Abbott to liability for Purdue's alleged conduct.[5]

---

[5]    Plaintiff's repeated use of the shorthand "Defendants" is not only sloppy, it appears intended to deceive. For example, Plaintiff alleges that "Defendants failed to take any steps to reformulate OxyContin
*(Footnote continued on next page)*

A careful reading of the Complaint reveals no link whatsoever between Abbott and the Purdue conduct on which the Complaint is premised. As was true with the 2006 Case, the entirety of Plaintiff's case against Abbott this time is premised on Abbott's mere status as a former co-promoter of OxyContin, not on anything Abbott itself allegedly did. Other than this undisputed connection to the *product* at issue, Plaintiff offers no factual allegation linking Abbott to the *conduct* that Plaintiff alleges in detail as the basis for this renewed lawsuit. Therefore, for the same reason as the 2006 Complaint failed to state a claim against Abbott – lack of a causal link between Abbott and the alleged misconduct – so too does this Complaint fail to state a claim against Abbott.

Consistent with its lack of involvement in the events on which Plaintiffs premise their Complaint, Plaintiff refers to Abbott individually on only a handful of occasions throughout the 44-page Complaint. Indeed, other than identifying Abbott on page 5 and noting that Abbott "assist[ed]" in the marketing and promotion of OxyContin, *id.* at ¶ 23, Plaintiff never mentions Abbott again until the very end of its factual allegations, where it lays out the entirety of its alleged case against Abbott in just five paragraphs (out of a total of 171 paragraphs). *See id.* at ¶¶ 67-71.

All that those five paragraphs provide are slightly more detailed allegations as to Abbott's co-promotion of OxyContin and the entirely unsupported and facially suspect allegation that "while the guilty pleas pertain solely to the Purdue Defendants and the Individual Defendants, Plaintiff submits, *upon information and belief*, that, as Purdue's chosen and retained co-promoter of OxyContin, the Abbott Defendants utilized the same

---

*Continued from previous page*

to prevent its abuse . . . ." *Id.* at 43. Yet it is undisputed that Abbott did not design or manufacture OxyContin, so the formulation of the drug has always been wholly beyond Abbott's control.

deceptive and aggressive marketing tactics as those utilized by Purdue." *Id.* at ¶ 67
(emphasis added). This allegation – which Plaintiff makes years after Abbott's co-
promotion of OxyContin, yet without any other allegations of actual wrongdoing by
Abbott – admits that the *only* basis for Plaintiff's "belief" that Abbott "utilized the same
deceptive and aggressive marketing tactics as those utilized by Purdue" is Abbott's status
as "Purdue's chosen and retained co-promoter of OxyContin." That vague and
speculative allegation simply is not enough of a foundation for Plaintiff to maintain this
lawsuit against Abbott.

## ARGUMENT

The Complaint asserts four causes of action against "Defendants": (1) violation of
18 U.S.C. § 1962(c) (RICO); (2) violation of 18 U.S.C. § 1962(d) (RICO conspiracy); (3)
violations of state consumer protection statutes; and (4) unjust enrichment. The
Complaint should be dismissed as to Abbott for all of the following reasons:

- Plaintiff lacks standing to pursue its claims against Abbott because its
  alleged economic injuries are not fairly traceable to any *Abbott*
  wrongdoing;

- Plaintiff has failed to state a RICO or RICO conspiracy claim against
  Abbott because the Complaint does not allege any predicate acts *by
  Abbott* constituting a pattern of racketeering activity, let alone the
  required minimum two predicate acts;

- Plaintiff, a New Mexico citizen, lacks standing to pursue claims under any
  consumer protection statute other than the New Mexico consumer
  protection statute, and Plaintiff's claim against Abbott fails under the New
  Mexico consumer protection statute because Plaintiff is not a consumer
  and because there is no causal link between Abbott's co-promotion of
  OxyContin and Plaintiff's claimed economic injury; and

- Plaintiff has failed to state a claim for unjust enrichment because the
  Complaint does not allege that the co-promotion payments Abbott
  received from Purdue were in any way unjust, and because Plaintiff
  has adequate remedies at law.

I.    **Plaintiff Lacks Standing To Sue Abbott Because It Has Alleged No
      Injury Fairly Traceable To Abbott Conduct.**

Lack of standing is a defect in subject-matter jurisdiction requiring dismissal of

the Complaint pursuant to FED. R. CIV. P. 12(b)(1). *See Bender v. Williamsport Area*

*Sch. Dist.*, 475 U.S. 534, 541-42 (1986); *Ctr. for Reprod. Law & Policy v. Bush*, 304 F.3d

183, 193 (2d Cir. 2002) ("the determination of standing is a question of subject matter

jurisdiction").

The Supreme Court has articulated three elements that are "the irreducible

constitutional minimum" for a plaintiff to have standing under Article III of the United

States Constitution. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A

plaintiff:

(1)    must have suffered an "injury in fact...which is (a) concrete and
       particularized...and (b) actual or imminent, not conjectural or
       hypothetical;"

(2)    must show "a causal connection between the injury and the
       conduct complained of;" and

(3)    must show it is likely that the injury can be "redressed by a
       favorable decision."

*Id.* at 560-61 (internal quotations and citations omitted).

"The causation component of the Article III standing test insures that the injury

alleged by the plaintiff is attributable to the defendant." *Garelick v. Sullivan*, 987 F.2d

913, 919 (2d Cir. 1993). Moreover, the generally accepted rule in the Second Circuit is

that a court may not "mak[e] presumptions of injury and causation favorable to the

plaintiff." *Ortho Pharm. Corp. v. Cosprophar, Inc.*, 32 F.3d 690, 697 (2d Cir. 1994); *see*

*also McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 107-08 (2003) (articulating "the

standing requirement that the[] injury be "fairly traceable" to [the alleged misconduct]").

Thus, in order to have standing to sue Abbott, Plaintiff must allege that *some misconduct by Abbott* – not by Purdue or "Defendants" – caused it (at least in part) to overpay for OxyContin, the alleged injury here. Plaintiff has utterly failed to do so. Other than identifying Abbott as a co-promoter of OxyContin, Plaintiff alleges no illegal act or particular misconduct by Abbott. On the contrary, all of the misconduct described in the Complaint stems from or relates to the Purdue guilty plea, in which Abbott undisputedly played no part whatsoever. *See* Complaint at ¶ 67. Plaintiff's mere "belief" that because Abbott co-promoted OxyContin, it must have "utilized the same deceptive and aggressive marketing tactics as those utilized by Purdue," *id.*, simply is not enough to give Plaintiff standing to sue Abbott. Plaintiff has to point to something that Abbott actually did in order to sue Abbott.

That Plaintiff is a "third-party payor," *id.* at ¶¶ 2-3, and not a consumer or prescribing physician, further highlights its lack of a connection to Abbott. Even had Plaintiff alleged any actual Abbott misconduct in its co-promotion of OxyContin, that co-promotion necessarily would have been aimed at those who prescribe OxyContin, not insurers like Plaintiff. Moreover, such an insurer pays for OxyContin only if it has been prescribed for one of its beneficiaries by a physician exercising his or her independent medical judgment, and only if and to the extent that insurer's particular policies or benefit plans allow the beneficiary to obtain reimbursement for the medication. These realities create a chain of causation – which must travel from a co-promoter like Abbott to prescribing physicians to patients and, finally, to "third-party payor" health insurance plans like Plaintiff – that is so attenuated that it cannot possibly satisfy the causation prong of standing.

Additionally, as noted above, Abbott had no pricing power with respect to OxyContin. As a mere co-promoter, Abbott had no control whatsoever over the prices that Plaintiff's insured's ultimately paid for OxyContin, let alone over whether Plaintiff reimbursed an insured for such payments. Therefore, Plaintiff's assertion that it is entitled to refunds of "overpay[ments of] substantial amounts of money for OxyContin," Complaint at ¶ 1, reveals yet another disconnect between Plaintiff and Abbott. Abbott had nothing to do with the amount of money that Plaintiff claims to have paid for OxyContin.

Accordingly, because Plaintiff has failed to allege a causal connection between its claimed economic injury and some Abbott-specific misconduct, Plaintiff lacks standing to sue Abbott.

## II.    The Complaint Fails To State A Claim Against Abbott.

### A.    Standard of review

The Second Circuit has repeatedly recognized that a complaint fails to state a claim if it does not state specific facts showing that the plaintiff may be entitled to relief. *See, e.g., Gregory v. Daly*, 243 F.3d 687, 692 (2d Cir. 2001) ("bald assertions and conclusions of law are not adequate … and a complaint consisting [of only] naked assertions, and setting forth no facts upon which a court could find a violation of the Civil Rights Acts, fails to state a claim under Rule 12(b)(6)" (internal quotation marks and citations omitted)). Importantly, "[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." *De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 70 (2d Cir. 1996) (citations omitted). Plaintiff's allegation that "upon information and belief," simply because Abbott co-promoted OxyContin, it must have "utilized the same deceptive and aggressive marketing

tactics as those utilized by Purdue," Complaint at ¶ 67, is precisely this type of

conclusory allegation unsupported by factual assertions.

As this Court observed in *Old Republic Ins. Co. v. Hansa World Cargo Service,*

*Inc.*, 170 F.R.D. 361 (S.D.N.Y. 1997),

> it is clear that in order to satisfy the requirements of Rule 8(a)[,]
> the pleading must contain something more by way of a claim than
> a bare averment that the pleader wants compensation and is
> entitled to it or a statement of facts that merely creates a suspicion
> that the pleader might have a right of action.

*Id.* at 373 (internal citations omitted). Furthermore, a "complaint 'must contain sufficient

factual allegations from which every material point necessary to sustain recovery can be

drawn.'" *Haber v. Brown*, 774 F. Supp. 877, 879 (S.D.N.Y. 1991) (quoting *Unibrand*

*Tire & Prod. Co. v. Armstrong Rubber Co.*, 429 F. Supp. 470, 473 (W.D.N.Y. 1977)). In

determining whether a plaintiff has pled sufficient factual allegations, "legal conclusions,

deductions, or opinions couched as factual allegations are not accorded deference [and]

[d]ismissal is proper if the complaint lacks an allegation regarding a required element

necessary to obtain relief." *Old Republic*, 170 F.R.D. at 384 (internal quotations and

citations omitted). A complaint must state "in detail the factual basis necessary to enable

[defendants] intelligently to prepare their defense." *Ciambriello v. County of Nassau*,

292 F.3d 307, 325 (2d Cir. 2002) (quoting *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d

Cir. 1977)).

Particularly applicable here is the principle that where there are no factual

allegations that could establish that a party actually participated in the alleged

wrongdoing, a complaint fails to state a claim against that party. In *Laverpool v. New*

BA2/326313                                    9

*York City Transit Authority*, 760 F. Supp. 1046 (E.D.N.Y. 1991), a case that – like this

one – involved an alleged RICO conspiracy, the Court observed that

> [s]ignificantly absent from the pleading are any allegations of
> specific facts that each of the individual defendants, by words or
> actions, manifested an agreement to commit two or more of the
> predicate acts …. ***It is not clear from the face of the pleading
> how, or even if, each defendant participated in the alleged
> conspiracy to violate RICO***, and the extent and nature of the roles
> of each of the defendants. In addition, as stated above, the
> plaintiffs have not stated a claim under any of RICO's substantive
> provisions.

*Id.* at 1060 (emphasis added).

These Second Circuit pleading principles make clear that the Complaint must be

dismissed as to Abbott. Plaintiff's entire case against Abbott is premised on a literal

"belief" that simply because Abbott co-promoted OxyContin, it must have engaged in

conduct similar to the conduct to which the drug's manufacturer pled guilty. Plaintiff

gladly takes that leap of faith without alleging a single incident of actual misconduct by

Abbott; however, the law of the Second Circuit does not permit this Court to make that

same leap. Indeed, that Plaintiff filed a 44-page Complaint containing voluminous and

detailed allegations of misconduct by Purdue and the individual defendants, and that

Plaintiff is unable to level a single such allegation against Abbott, speaks volumes about

the deficiency of its case against Abbott.

**B.      All four of Plaintiff's purported causes of action fail to allege
the elements required under federal and state law.**

**1.      Plaintiff's Section 1962(c) RICO claim (Count I)
fails against Abbott.**

To state a valid claim under 18 U.S.C. § 1962(c) against Abbott, Plaintiff must

establish that Abbott, through the commission of two or more predicate acts constituting

a pattern of racketeering activity, directly or indirectly participated in an enterprise, the activities of which affect interstate or foreign commerce. *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001); *Madanes v. Madanes*, 981 F. Supp. 241, 252 (S.D.N.Y. 1997); *see also* 18 U.S.C. § 1962.

The RICO statute grants standing to any person injured in his business or property by reason of a violation of Section 1962. 18 U.S.C. § 1964(c). To demonstrate RICO standing, a plaintiff must plead (1) the defendant's violation of section 1962, (2) an injury to the plaintiff's business or property, and (3) that the defendant's violation caused the injury. *DeFalco*, 244 F.3d at 305; *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23 (2d Cir. 1990). The causation element requires the plaintiff to demonstrate that the injury to business or property was proximately caused by a pattern of racketeering activity violating Section 1962, or by individual RICO predicate acts. *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 122-23 (2d Cir. 2003); *Hecht*, 897 F.2d at 23.

Importantly, the requirements of Section 1962(c) must be established as to *each individual defendant*. *DeFalco*, 244 F.3d at 306 (citations omitted) ("The focus of section 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise, which are proscribed by section 1962(d)"). To be liable under 1962(c), "one must participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 176-77 (1993). While RICO liability "is not limited to those with a formal position in the enterprise...*some* part in directing the enterprise's affairs is required." *Id.* at 179 (emphasis in original); *see also First Capitol Asset Management, Inc. v. Satinwood, Inc.*, 385 F.3d 159, 175-76 (2d Cir. 2004) (plaintiffs must establish that the defendant

conducted or participated in the conduct of the enterprise's affairs through a pattern of racketeering activity). As noted above, Plaintiff has completely failed to allege any specific misconduct *by Abbott*, let alone a "pattern" or the two or more predicate acts necessary to state a Section 1962(c) RICO claim.

Moreover, Plaintiff premises Count I on allegations of mail fraud and wire fraud. These allegations are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires particularized fraud allegations. *First Capitol*, 385 F.3d at 178-79; *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 633-34 (2d Cir. 1996); *Madanes*, 981 F. Supp. at 253. Thus, Plaintiff must allege with particularity as to Abbott the content, time, place and speaker of each alleged mailing or wire transmission, and must demonstrate how each transmission furthered the alleged fraudulent scheme. *Madanes*, 981 F. Supp. at 253. Not only has Plaintiff failed to meet this standard, the Complaint contains no such allegations at all as to Abbott.

### 2. Plaintiff's Section 1962(d) RICO conspiracy claim (Count II) similarly fails against Abbott.

In Count II, the Complaint alleges a violation of 18 U.S.C. § 1962(d), which prohibits individuals from conspiring to violate the substantive provisions of RICO. *See* Complaint at ¶¶ 103-12. However, Plaintiff's claim under Section 1962(d) fails as a matter of law because its substantive RICO claim (premised on Section 1962(c)) is defective. *First Capitol*, 385 F.3d at 182.

Additionally, a plaintiff claiming a conspiracy to violate Section 1962 must specifically allege an agreement by *each defendant* to commit at least two predicate acts. *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25-26 (2d Cir. 1990). Conclusory allegations of a conspiracy are insufficient to plead a Section 1962(d) claim. *Nat'l Group*

*for Comm. and Computers Ltd. v. Lucent Technologies Inc.*, 420 F. Supp. 2d 253, 272

(S.D.N.Y. 2006). Rather, the complaint must set forth "sufficient facts to suggest how

each of the defendants, through words or action, reached an agreement" to violate Section

1962. *Id.*

In addition to failing to allege any predicate acts by Abbott, the Complaint

similarly fails to allege an agreement by Abbott to commit any predicate acts.

Accordingly, Plaintiff's RICO conspiracy count fails as to Abbott.

> ### 3.    Plaintiff's consumer protection claim (Count III) fails as to Abbott.

> #### a.    Plaintiff has standing to pursue a claim only under the New Mexico consumer protection statute.

Plaintiff in Count III purports to assert a claim for "violations of [the] state

consumer protection statutes" of all 50 states and the District of Columbia. *See*

Complaint at 36. However, Plaintiff is a New Mexico citizen and, accordingly, suffered

any alleged economic losses in New Mexico. Its consumer protection remedies are

therefore limited to those provided by New Mexico law. Stated another way, this New

Mexico Plaintiff lacks standing to pursue claims premised on the non-New Mexico

consumer protection statutes listed in Count III of the Complaint. *See Ramos v. Patrician*

*Equities Corp.*, 765 F. Supp. 1196, 1199 (S.D.N.Y. 1991). Plaintiff similarly lacks

standing to represent a class seeking to pursue consumer protection claims premised on

statutes outside of New Mexico. *See In re Methyl Tertiary Butyl Ether ("MTBE") Prods.*

*Liab. Litig.*, 175 F. Supp. 2d 593, 607 n.21 (S.D.N.Y. 2001).

### b. Plaintiff's consumer protection claim fails under New Mexico law.

In Count III, Plaintiff seeks to recover under N.M. Stat. Ann. §§ 57-12-1, *et seq.*
Complaint at ¶ 143. However, this New Mexico consumer protection statute, known as
the Unfair Practices Act ("UPA"), "gives standing only to buyers of goods or services."
*Santa Fe Custom Shutters & Doors v. Home Depot U.S.A., Inc.*, 113 P.3d 347, 353 (N.M.
Ct. App. 2005); *see also Lohman v. Daimler-Chrysler Corp.*, 166 P.3d 1091 (N.M. Ct.
App. 2007). As a non-consumer, third-party payor, Plaintiff did not buy anything.
Rather, Plaintiff merely provided prescription drug benefits to its insureds who, to the
extent Plaintiff's policies authorized them to do so, obtained reimbursement from
Plaintiff for their purchases of OxyContin. Because Plaintiff is at least one step removed
from the actual consumer, it lacks standing under the UPA. *See Santa Fe*, 113 P.3d at
353.

More fundamentally, regardless of the particular unfair or deceptive trade
practices act that Plaintiff invokes, Count III fails for lack of causation. Plaintiff has
simply failed to allege any unfair or deceptive trade practice in which Abbott engaged
that caused the economic harm it alleges. *See Brooks v. Norwest Corp.*, 103 P.3d 39, 51
(N.M. Ct. App. 2004) (to recover under UPA "[p]laintiffs as a class must…establish
causation…."); *Smoot v. Physicians Life Ins. Co.,* 87 P.3d 545, 550 (N.M. Ct. App. 2003)
(an action under the UPA requires proof of a causal link between defendant's deceptive
conduct and plaintiff); *see also Chavarria v. Fleetwood Retail Corp. of New Mexico,* 115
P.3d 799, 810 (N.M. Ct. App. 2005), *partially rev'd on other grounds,* 143 P.3d 717
(N.M. 2006) (reversing award of damages on the grounds that evidence was insufficient
to establish that plaintiffs sustained any injury as a result of the deceptive practice in

question); *Perry v. Am. Tobacco Co., Inc.*, 324 F.3d 845, 848, 851 (6th Cir. 2003) (affirming dismissal of plaintiffs' unfair trade practices act claim for lack of standing because plaintiffs did not allege "direct injury" and noting that "Plaintiffs [who] cannot show that they have been proximately injured by Defendants' conduct" cannot maintain an unfair trade practices act claim); *Himes v. Brown & Co. Securities Corp.*, 518 So. 2d 937, 938 (Fla. Dist. Ct. App. 1987) (alleging claim under unfair trade practices act requires "actual damages proximately caused by" the defendant).

As Plaintiff concedes, Abbott simply co-promoted OxyContin. Abbott did not have any control over the pricing of OxyContin or the allegedly excessive sums that Plaintiff purportedly paid, pursuant to Plaintiff's policies for OxyContin, to reimburse its insureds' OxyContin purchases. As a result, there is no causal link between Abbott's co-promotion of OxyContin and Plaintiff's claimed "consumer protection" injury.

For all of these reasons, Count III should be dismissed as to Abbott.

### 4.    Plaintiff's unjust enrichment claim in Count IV fails to state a claim against Abbott.

#### a.    Abbott was not *unjustly* enriched.

In Count IV, Plaintiff seeks "restitution of Defendants' wrongful profits" on the theory that Abbott was unjustly enriched by Plaintiff "pa[ying] for OxyContin when [it] otherwise would not have done so." Complaint at ¶ 170-71. However, this theory of unjust enrichment is wholly inapplicable to the facts Plaintiff has alleged as to Abbott. "[T]he vast majority of unjust enrichment cases involve either defendants who have received 'double recoveries' or those who have unquestionably benefitted [sic] through the uncompensated labors of another." *U.S. v. Vicon Constr. Co.*, 575 F. Supp. 1578, 1579 (S.D.N.Y. 1983). Thus, as the Illinois Supreme Court explained in *HPI Health*

*Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 545 N.E.2d 672 (Ill. 1989), in cases like this one where Plaintiff is seeking recovery of a benefit transferred to Abbott by a third party, "retention of the benefit would be unjust where (1) the benefit should have been given to the plaintiff, but the third party mistakenly gave it to the defendant instead ... (2) the defendant procured the benefit from the third party through some type of wrongful conduct ... or (3) the plaintiff for some other reason had a better claim to the benefit than the defendant." *Id.* at 679 (internal citations omitted).

The allegations on which the Plaintiff relies in support of its unjust enrichment claim against Abbott do not fall into any of these three categories. On the contrary, as the Complaint makes clear, Abbott received payments for co-promoting OxyContin pursuant to its co-promotion agreement with Purdue. *See* Complaint at ¶¶ 68-69. Therefore, Abbott did not unjustly benefit from the sale of OxyContin, but rather received compensation to which it was contractually entitled for co-promotional services rendered. A claim for unjust enrichment simply does not lie under these circumstances. *See Shilkoff, Inc. v. 885 Third Ave. Corp.*, 299 A.D.2d 253, 253-54, 750 N.Y.S.2d 53, 54 (1st Dept. 2002) ("plaintiff's cause of action [for unjust enrichment] was properly dismissed because it was not unjust for [defendant] to retain funds obtained pursuant to its clear contractual right"); Dan B. Dobbs, The Law of Remedies § 4.1(2) (1993) (It is a well-established principle of unjust enrichment law that "one who is enriched by what he is entitled to under a contract or otherwise is not unjustly enriched").

Additionally, the unjust-enrichment-by-association theory on which Plaintiff appears to be relying as to Abbott – *i.e.*, that Purdue was purportedly unjustly enriched by its alleged misconduct and, therefore, its co-promoter Abbott must also have been

unjustly enriched – has been resoundingly rejected by the courts. In *National Benefit Administrators, Inc. v. Mississippi Methodist Hospital & Rehabilitation Center, Inc.*, 748 F. Supp. 459 (S.D. Miss. 1990), for example, an employee health benefits plan sued a hospital to recover approximately $65,000 in payments to the hospital for medical treatment of the son (Derron) of one of its members (Samuel Johnson). Under the plan, medical benefits coverage extended to members' minor children and children who were full-time students under the age of 25. *Id.* at 461. The plan initially paid benefits to the hospital based on Samuel Johnson's representation that, at the time of his son's treatment, Derron was 18 years old and was a full-time student. The plan later learned that, in fact, Derron was 19 years old and was not a student at the time the hospital treated him. *Id.*

The court proceeded to assess the plan's claim against the hospital for "restitution." Because the hospital "was innocent of any misrepresentations and had no reason to know that the payments were in error," the court concluded that the hospital "ha[d] not been unjustly enriched" insofar as the hospital received money in exchange for services provided. *Id.* at 465; *see also Matter of Stiennon*, 73 B.R. 905, 907-08 (Bankr. W.D. Wis. 1987) (court determined that "[t]here was no unjust enrichment," because the plaintiff had failed to demonstrate any "wrongful or unconscionable conduct on the part of [the defendant]"). In arriving at this ruling, the court relied on the "widely-recognized" principle that

> restitution may not be had in cases in which the mistaken payment is made to an innocent third party creditor, i.e., ***one who has made no misrepresentations and has no knowledge of the mistake***. This exception derives from the fact that the element of unjust enrichment, typically considered a prerequisite for restitution, is absent in such cases. No unjust enrichment occurs because the creditor is actually owed the money it receives and has exchanged value for the right to receive the money.

*Nat'l Benefit Adm'rs*, 748 F. Supp. at 464-65 (emphasis added) (internal citations omitted).

In *Season Comfort Corp. v. Ben A. Borenstein Co.*, 655 N.E.2d 1065 (Ill. App. Ct. 1995), a second-tier subcontractor on a construction project had failed to perfect its mechanics' lien rights against the property on which the project was located. It therefore pursued an alternate cause of action for unjust enrichment against the property's owner and the general contractor, even though they had paid in full the first tier subcontractor for which the plaintiff had performed services.

The *Season Comfort* court rejected the plaintiff's claim for unjust enrichment, stating that "[t]here is nothing in this case to demonstrate that either [the owner or the general contractor] were unjustly enriched," and observing that "[n]o person is unjustly enriched unless the retention of the benefit would be unjust." *Id.* at 1071. Because the owner and general contractor had paid for what they received, they were not ***unjustly*** enriched. *Id.*; *see also Gen. Elec. Co. v. Latin Am. Imports*, 214 F. Supp. 2d 758, 769 (W.D. Ky. 2002) (under Florida law, unjust enrichment is "an equitable claim which is precluded where payment has been made for the benefit conferred"); *Gene B. Glick Co., Inc. v. Sunshine Ready Concrete Co., Inc.*, 651 So. 2d 190 (Fla. Dist. Ct. App. 1995) ("Unjust enrichment is equitable in nature and cannot exist where payment has been made for the benefit conferred").

These basic principles demonstrate that Plaintiff's Complaint does not and cannot allege facts giving rise to a claim for unjust enrichment. The Complaint identifies no conduct by Abbott that would support a finding that it has been ***unfairly*** or ***unjustly*** enriched at Plaintiff's expense. The only specific enrichment that the Complaint alleges

is that Abbott received compensation from Purdue in exchange for co-promoting

OxyContin. Complaint at ¶ 69. However, as shown above, money received by someone

to whom it was owed is not a proper basis for an unjust enrichment claim.

> **b.**    **An unjust enrichment claim is precluded where,
> as here, Plaintiff has an adequate alternative
> remedy at law.**

Unjust enrichment is an alternative, equitable theory of recovery that may not be

pursued when the plaintiff has an adequate remedy at law. *Norris v. Grosvenor*

*Marketing Ltd.*, 803 F.2d 1281, 1287 (2d Cir. 1986); *Crigger v. Fahnestock & Co., Inc.*,

2003 WL 22170607, *12 (S.D.N.Y. Sept. 18, 2003) (citing *Strom v. Goldman, Sachs &*

*Co.*, 202 F.3d 138, 144 n. 6 (2d Cir. 1999)); *E. River Sav. Bank v. Sec'y of Hous. &*

*Urban Dev.*, 702 F. Supp. 448, 455 (S.D.N.Y. 1988); *see also Frederickson v.*

*Blumenthal*, 648 N.E.2d 1060, 1062 (Ill. App. Ct. 1995) ("The question to be determined

is whether the remedy at law compares favorably with the remedy afforded by the equity

court" (internal quotation marks and citations omitted)); *Lombardo v. Santa Monica*

*YMCA*, 215 Cal. Rptr. 224, 228 (Cal. Ct. App. 1985).

Moreover, "[i]f plaintiff ultimately prevails on its legal claims, or if plaintiff's

legal claims fail due to its own fault, then plaintiff will be unable to recover on its claim

of unjust enrichment." *E. River Sav. Bank*, 702 F. Supp. at 455. Thus, in *Season*

*Comfort Corp.*, the court rejected an unjust enrichment claim, holding, *inter alia*, that the

plaintiff had an adequate legal remedy under the mechanics' lien statute and that its

failure to comply with that statute did "not warrant relief under the doctrine of unjust

enrichment." 655 N.E.2d at 1071. As Plaintiff's own Complaint demonstrates, Plaintiff

has availed itself of alternative federal and state statutory remedies against Purdue and,

therefore, recovery under a theory of unjust enrichment is not available to Plaintiff in this case.

Additionally, the presence of another defendant against whom there may be an available remedy at law requires dismissal of the unjust enrichment claims against Abbott. In *George C. Hall & Sons, Inc. v. Taylor*, 628 A.2d 1037 (Me. 1993), the Supreme Judicial Court of Maine held that a construction company could not assert an unjust enrichment claim against a real estate owner who engaged in no wrongdoing and who benefited from improvements to his parking lot, because the owner was not a party to the construction contract between the lessee and the construction company. *Id.* at 1039. The court held that because the construction company had obtained a full judgment against the lessee, there was no basis for concluding that "it would be inequitable for [the owner] to retain the benefit conferred on the real estate." *Id.* In other words, in the absence of any allegation that it could not obtain relief against the party who allegedly engaged in the wrongdoing (*i.e.*, the lessee) – allegations that are similarly absent from this Complaint – the construction company had an adequate remedy at law, and there was no basis for an unjust enrichment claim against a third party.

The same is true here. Plaintiff has potential legal remedies against Purdue. Therefore, there is no basis for permitting an unjust enrichment claim against Abbott. Accordingly, Count IV fails as a matter of law as to Abbott.

## CONCLUSION

This Court should dismiss with prejudice all of Plaintiff's claims – as set forth in

Counts I through IV of the Complaint – as to Abbott.

Respectfully submitted,

*Attorneys for Defendants*
*Abbott Laboratories and Abbott*
*Laboratories, Inc.*

By:

Michael C. Hartmere (MH-6839)
VENABLE LLP
405 Lexington Avenue
Chrysler Building, 56th Floor
New York, New York 10174
(212) 307-5500 (voice)
(212) 307-5598 (fax)

Of Counsel:

Paul F. Strain
M. King Hill, III
VENABLE LLP
1800 Mercantile Bank & Trust Building
2 Hopkins Plaza
Baltimore, Maryland 21201
(410) 244-7400 (voice)
(410) 244-7742 (fax)