# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| **NEW MEXICO UNITED FOOD AND COMMERCIAL WORKERS UNION'S AND EMPLOYERS' HEALTH AND WELFARE TRUST FUND**, on behalf of itself and all others similarly situated,<br><br>          **Plaintiff,**<br><br>   v.<br><br>**PURDUE PHARMA, L.P., PURDUE PHARMA, INC., THE PURDUE FREDERICK COMPANY, INC., d/b/a THE PURDUE FREDERICK COMPANY, P.F. LABORATORIES, INC., ABBOTT LABORATORIES, INC., MICHAEL FRIEDMAN, HOWARD R. UDELL, PAUL D. GOLDENHEIM, JOHN DOE** Nos. 1 through 20, and **JANE DOE Nos. 1 through 20,**<br><br>          **Defendants.** | : Civil Action No. 07-6916(JGK)<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO ABBOTT LABORATORIES' AND ABBOTT <u>LABORATORIES, INC.'S MOTION TO DISMISS</u>

SEEGER WEISS LLP
Christopher A. Seeger, Esq. (CS-4880)
David R. Buchanan, Esq.
One William Street
New York, NY   10004
Tel: 212-584-0700
Fax: 212-584-0799
*Plaintiff's Lead and Liaison Counsel*

Additional Counsel Listed on Signature Page

## TABLE OF CONTENTS

I.   INTRODUCTION .................................................................................... 1

II.  FACTUAL BACKGROUND .................................................................. 2

III. ARGUMENT ........................................................................................... 5

     A. THE NMUFCW HAS ARTICULATED FACTS DESCRIBING HOW
        PLAINTIFF'S INJURY IS ATTRIBUTABLE TO ABBOTT ............................ 6

     B. COUNT I ADEQUATELY STATES A SECTION 1962(C)
        RICO CLAIM ......................................................................................... 6

     C. COUNT II ADEQUATELY STATES A SECTION 1962(C)
        RICO CLAIM ....................................................................................... 16

     D. COUNT III ADEQUATELY PLEADS STATE LAW
        CONSUMER PROTECTION CLAIMS ...................................................... 18

     E. COUNT IV ADEQUATELY PLEADS STATE LAW
        CLAIMS IN EQUITY FOR UNJUST ENRICHMENT .................................. 22

IV. CONCLUSION ...................................................................................... 25

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Alexandra Global Master Fund, Ltd. v. Ikon Office Solutions, Inc.*,
No. 06 Civ. 5383, 2007 WL 2077153 (S.D.N.Y. July 20, 2007) ...........................5

*Baisch v. Gallina*, 346 F.3d 366 (2d Cir. 2003)..................................................10

*Bell Atlantic Corp. v.Twombly*, 127 S. Ct. 1955 (2007) .......................................6

*Burrell v. State Farm and Cas. Co.*, 226 F. Supp.2d 427 (S.D.N.Y. 2002) ...................11

*Castano v. American Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996) .......................................19

*Center Cadillac Inc. v. Bank Leumi Trust Co.*,
808 F. Supp. 213 (S.D.N.Y. 1992), *aff'd*, 99 F.3d 401 (2d Cir. 1995).................15

*Center for Reproductive Law and Policy v. Bush*, 304 F.3d 183 (2d Cir. 2002).................6

*Davis v. Commercial Bank of New York*, 275 F. Supp.2d 418 (S.D.N.Y. 2003).............6, 7

*DeFalco v. Bernas*, 244 F.3d 286 (2d Cir. 2001) ...............................................12

*Desiano v. Warner-Lambert Co.*, 326 F.3d 339 (2d Cir. 2003)....................................9, 11

*East River Savings Bank v. Secretary of Hous. and Urban Dev.*,
702 F. Supp. 448 (S.D.N.Y. 1988) ........................................................25

*Erickson v. Pardus*, 127 S. Ct. 2197 (2007) .....................................................6

*General Electric Capital Corp. v. Posey*, 415 F.3d 391 (5th Cir. 2005) ...........................15

*Goldman v. Belden*, 754 F.2d 1059 (2d Cir. 1985)..................................................6

*H.J. Inc. v Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989)..................................13

*Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21 (2d Cir. 1990) ...................16, 17

*In re Neurontin Mktg., Sales Practices, and Prod. Liab. Litig.*,
433 F. Supp.2d 172 (D. Mass. 2006)...............................................14, 25

*In re Pharm. Indus. Average Wholesale Price Litig.*,
230 F.R.D. 61 (D. Mass. 2005)..........................................................19

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    307 F. Supp.2d 196 (D. Mass. 2004) ...................................................................10

*In re Sumitomo Copper Litig.*, 995 F. Supp. 451 (S.D.N.Y. 1998) ...................................15

*In re Zyprexa Prod. Liab. Litig.*, 493 F. Supp.2d 571
    (E.D.N.Y. 2007)....................................................................................9, 14, 19

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) .........................................................6

*JSC Foreign Economic Association Technostroyexport v. Weiss*,
    No. 06-Civ.-6095, 2007 WL 1159637 (S.D.N.Y. Apr. 18, 2007) .........................12

*Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006 (2d Cir. 1986)....................................3

*Kassner v. 2nd Avenue Delicatessen, Inc.*, 496 F.3d 229 (2d Cir. 2007) ............................9

*Lerner v. Fleet Bank, N.A.*, 318 F.3d 113 (2d Cir. 2003) ....................................................10

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ..........................................................7

*Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000)......................................................7

*Matter of Stiennon*, 73 B.R. 905 (Bankr. W.D. Wis. 1987).................................................25

*Moore v. PaineWebber, Inc.*, 189 F.3d 165 (2d Cir. 1999) .................................................14

*National Benefit Adm'rs, Inc. v. Mississippi Methodist Hosp.*
    *& Rehab. Ctr., Inc.*, 748 F. Supp. 459 (S.D. Miss. 1990).....................................25

*Perry v. American Tobacco Co., Inc.*, 324 F.3d 845 (6th Cir. 2003) ................................22

*Powers v. Lycoming Engines*, 245 F.R.D. 226 (E.D. Pa. 2007) ..........................................19

*Robinson v. Government of Malaysia*, 269 F.3d 133 (2d Cir. 2001)....................................7

*Salinas v. United States*, 522 U.S. 52 (1997).....................................................................17

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985) .........................................................11

*Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*,
    742 F.2d 786 (3d Cir. 1984)..................................................................................15

*Spence v. Glock Ges.m.b.h.*, 227 F.3d 308 (5th Cir. 2000)................................................19

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007)..........................................................15

iii

*United States v. Daidone*, 471 F.3d 371 (2d Cir. 2006)....................................................13

*United States v. Turkette*, 452 U.S. 576 (1981) ...............................................................13

*Zito v. Leasecomm Corp.*, No. 02-Civ.-8074, 2004 WL 2211650
    (S.D.N.Y. Sept. 30, 2004).........................................................................14, 15, 17

## STATE CASES

*Brooks v. Norwest Corp.*, 103 P.3d 39 (N.M. Ct. App. 2004)...........................................22

*Chavarria v. Fleetwood Retail Corp.*, 115 P.3d 799 (N.M. Ct. App. 2005)
    *aff'd in part, rev'd in part on other grounds*, 143 P.3d 717 (N.M. 2006) ...............22

*Himes v. Brown and Co. Sec. Corp.*, 518 So. 2d 937 (Fla. Dist. Ct. App. 1987) .............22

*HPI Health Care Serv., Inc. v. Mount Vernon Hosp., Inc.*,
    545 N.E.2d 672 (Ill. 1989) .......................................................................22, 23, 24

*Santa Fe Custom Shutters & Doors v. Home Depot U.S.A., Inc.*,
    113 P.3d 347 (N.M. Ct. App. 2005) ....................................................................20

*Season Comfort Corp. v. Ben A. Borenstein Co.*, 655 N.E.2d 1065
    (Ill. App. Ct. 1995) *appeal denied*, 664 N.E.2d 648 (Ill. 1996) ..........................24

*Shilkoff, Inc. v. 885 Third Avenue Corp.*, 750 N.Y.S.2d 53 (App. Div. 2002).................24

*Smoot v. Physicians Life Ins. Co.*, 87 P.3d 545 (N.M. Ct. App. 2003)...........................21

## DOCKETED CASES

*State of West Virginia v. Purdue Pharma L.P.*, Civ.No. 01-C-137-S
    (Cir. Ct., McDowell Co., W.Va.)...................................................................3,4,5,8

*United States v. The Purdue Frederick Company, Inc. d/b/a The Purdue Frederick
    Company, et al.*, No. 07-cr-00029- jpj (W.D. Va.) ..................................................4

## FEDERAL STATUTES

18 U.S.C. §1341...............................................................................................................13

18 U.S.C. §1343...............................................................................................................13

18 U.S.C. §1952 ................................................................................................... 13

18 U.S.C. §1961(4) ........................................................................................ 12-13

18 U.S.C. §1962 ......................................................... 1, 10, 11, 12, 16, 17, 18

**FEDERAL RULES**

FED. R. CIV. P. 8 ............................................................................................ 6, 25

FED. R. CIV. P. 9 ........................................................................................ 11, 14, 15

FED. R. CIV. P. 12(b)(1) ................................................................................. 1, 6

FED. R. CIV. P. 12(b)(6) ................................................................................. 1, 6

FED. R. CIV. P. 15(a) ........................................................................................... 9

**STATE STATUTES**

N.M. STAT. ANN. §57-12-2 ......................................................................... 18, 20

N.M. STAT. ANN. §57-12-10 (B) ...................................................................... 20

**MISCELLANEOUS**

Marcus, Dawn, "Treatment of Nonmalignant Chronic Pain,"
    AMERICAN FAMILY PHYSICIAN, Vol. 61, No. 5 (March 2000) ................................ 8

Roth, Sandford, M.D., *et al., Around-the-Clock, Controlled-Release Oxycodone Therapy
    for Osteoarthritis-Related Pain*, Arch. Intern. Med. 853 (March 27, 2000) ........... 8

I.     **INTRODUCTION**

This Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1962,

*et seq.*, class action involves the continuing, fraudulent over-promotion of the prescription drug,

oxycodone hydrochloride or OxyContin, an opioid agonist, manufactured by the Purdue

Defendants and jointly marketed by the Purdue and Abbott Defendants.  Plaintiff, the New

Mexico United Food and Commercial Workers Union's and Employers' Health and Welfare

Trust Fund ("NMUFCW" or "Plaintiff"), submits this response in opposition to the motion to

dismiss filed by Defendants Abbott Laboratories and Abbott Laboratories, Inc. ("Abbott").

To extricate itself from this litigation, Abbott attempts to divorce its actions from the

activities of its partners to a co-promotion agreement to market OxyContin, Defendants Purdue

Pharma, L.P., Purdue Pharma, Inc., The Purdue Frederick Company, Inc., d/b/a The Purdue

Frederick Company, and PF Laboratories, Inc. ("Purdue"), and the Individual Defendants,

Michael Friedman, Howard R. Udell, and Paul D. Goldenheim.   That separation is especially

desired as The Purdue Frederick Company, Inc. and the Individual Defendants pleaded guilty to

historic felony or misdemeanor charges of misbranding OxyContin in May 2007.  Complaint

¶¶49-50.  Abbott's motion is premised upon the improper assumption that the Complaint's

allegations describing the joint and individual behavior of the conspiring Defendants has not

been sufficiently broken down into the specific conduct engaged in by each Defendant as it

affected their joint "off-label" marketing, promotion and sales efforts.   Absent such specificity as

to it, Abbott contends, pursuant to FED.R.CIV.P. 12(b)(1), that NMUFCW lacks standing to

pursue its claim and that this Court lacks jurisdiction over the subject matter of the Complaint.

Abbott further asserts, pursuant to FED.R.CIV.P. 12(b)(6), that Plaintiff has failed to state claims

1

under RICO, any state's consumer protection statute or the common law claim of unjust

enrichment. However, as discussed in greater detail below, and in Plaintiff's Memorandum in

Opposition to Purdue Defendants Motion for Judgment on the Pleading, incorporated by

reference, there is no merit to Abbott's arguments and its motion to dismiss should be denied.[1]

## II.    **FACTUAL BACKGROUND**

The NMUFCW is a Taft-Hartley fund responsible for paying or reimbursing eligible trust

participants' prescription drug benefits. Complaint ¶5. NMUFCW seeks to represent a Class

consisting of: All insurance providers and other third party payors, including self-funded plans,

but excluding governmental entities, in the United States and its territories who, for purposes

other than resale, purchased, reimbursed and/or paid for OxyContin from January 1, 1996 to the

present. *Id.*, ¶77. Because of the actions of Abbott and its co-conspirators, NMUFCW and the

Class members have been caused to pay more for prescriptions of OxyContin than they otherwise

would have paid and/or caused Plaintiff and the Class to pay for prescriptions of OxyContin in

connection with uses not approved by the FDA. *Id.*, ¶82(f, g).

Abbott played an integral role in the fraudulent manner by which OxyContin came to be

marketed and sold in the United States. After the Purdue Defendants developed and patented

OxyContin, which drug was approved by the FDA for the management and treatment of patients

---

[1]Abbott beats the drum about what it calls the "2006 Case", an earlier action by the Plaintiff against Purdue Pharma, L.P.; Purdue Pharma, Inc.; Purdue Frederick Company; Abbott Laboratories and Abbott Laboratories, Inc., that sought only a New Jersey Consumer Fraud Act claim and common law claims of unjust enrichment and fraud. The 2006 Case was voluntarily discontinued without prejudice by stipulation of all the parties, including Abbott, on April 27, 2006.  This case now asserts federal claims under the RICO statute that are significantly bolstered by the criminal guilty pleas entered by the Purdue Frederick Company and the three Individual Defendants, the latter of whom were not parties to the 2006 Case. Abbott's negative comments notwithstanding, Abbott offers no legal or factual reason that the present lawsuit of NMUFCW is affected by the 2006 Case and thus, in the end, the rhetoric related to the 2006 Case offers nothing to assist the Court in resolving this motion.

with moderate to severe pain that were expected to need continuous opioids for an extended period of time, they enlisted Abbott to assist in the marketing and promotion of OxyContin. *Id.*, ¶¶21-23. Together, they entered into a Co-Promotion Agreement on or about January 1, 1996. *Id.* As joint venturers in the sale of OxyContin, Abbott and Purdue shared not only strategies, sales force training materials and promotional materials involved in the marketing of the drug, but also commissions based upon Purdue's nationwide gross sales. *See State of West Virginia v. Purdue Pharma L.P.*, Civ. No. 01-C-137-S, Order Denying Abbott Defendants' Motion for Summary Judgment at 2-4, ¶¶7-10 (Cir.Ct., McDowell Co., W.Va. Nov. 15, 2004)[Hereafter referred to as "West Virginia" and attached hereto as Exhibit "A"].[2]

Together, Abbott and the other Defendants devised an aggressive, **nationwide** and **uniform** strategy to market OxyContin in a way that negatively impacted NMUFCW and the Class, over many years (from 1996 through at least 2002). Complaint ¶¶ 29, 33, 38, 39, 40, 48 (emphasis added). The marketing strategy was heavily coercive, misrepresented the appropriate uses of OxyContin and failed to adequately disclose and discuss the safety issues and possible adverse effects of OxyContin use. *Id.*, ¶29. "Abbott, like Purdue, taught detailers that OxyContin's formulation diminished side effects and lowered oxycodones's abuse or addiction potential." *West Virginia, supra* at 6, ¶16.

These activities by both Purdue and Abbott had a direct effect on NMUFCW and the Class. The Defendants' national marketing strategy was intended to increase market demand for OxyContin. Complaint ¶38. These misrepresentations concerning the safety, efficacy and

---

[2]Should Abbott challenge Plaintiff's use of *West Virginia* to oppose their motion, it is well established that in resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court may refer to evidence outside the pleadings. *See Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986).

3

usefulness of OxyContin were directed to the Plaintiff and Class members to induce them to overpay for the drug. Complaint ¶93(d). The increased demand allowed the Defendants to charge more for OxyContin than they otherwise would have been able to charge, but for the Defendants' fraudulent marketing campaign. Complaint ¶38.

Based upon such behavior, the United States Attorney filed a criminal information against Purdue and the Individual Defendants in the matter of *United States v. The Purdue Frederick Company, Inc. d/b/a The Purdue Frederick Company*, et al., No. 07-cr-00029- jpj (W.D. Va.) in connection with their guilty pleas. Complaint ¶49. The Complaint provides an extensive description of the activities involved in the criminal matter, including that, "Purdue admitted to knowingly and fraudulently misbranding OxyContin as being less addictive, less subject to abuse and diversion and less likely to cause tolerance and withdrawl problems than other pain medications." *Id.* The Purdue Defendants paid over $600,000,000 in criminal fines and civil penalties. Complaint ¶49. The Individual Defendants paid in excess of $34,000,000. *Id.*, ¶50.

Given Plaintiff's knowledge of Purdue's Co-Promotion agreement with Abbott, it was alleged upon information and belief that Abbott "utilized the same deceptive and aggressive marketing tactics as those utilized by Purdue." Complaint ¶67. Abbott, disregarding the notice pleading standards of the Federal Rules of Civil Procedure, contends that the allegations based upon information and belief represent an inadequate foundation for any complaint.

However, as noted by Chief Judge Booker T. Stephens in the *West Virginia* litigation, there was sufficient evidence presented by the plaintiff in that case, the State of West Virginia, for the Court to conclude that Abbott's motion for summary judgment was appropriately denied. Paralleling the federal criminal conduct admitted to by Purdue, the court in *West Virginia* found

4

there to be evidence sufficient for a jury to conclude that Abbott engaged in the same or virtually

identical activity as the Purdue Defendants.[3]  For example, corresponding to Purdue's admission

that it misbranded OxyContin as being less subject to abuse, the *West Virginia* court determined:

"Plaintiffs have presented evidence sufficient for a jury to conclude Abbott trained its sales

forces that the lack of a high peak also lowers the incidence of side effects associated with

OxyContin, and also lowers its abuse potential.  Plaintiffs' Ex. 9 ("The Pain Game" Jeopardy" at

ABBOTT1006275 (Oxy05728), noting the "peaks and valleys" of IR opioids, "could result in

addiction.")."  *West Virginia, supra* at 6, ¶17.  As to the other components of Purdue's

admissions – *i.e.*, that OxyContin was less addictive than other opioids and less likely to cause

tolerance and withdrawl problems than other pain medications – the Court in *West Virginia* also

found sufficient evidence of wrongdoing by Abbott to withstand a motion for summary

judgment.  *Id.* at 5-7, ¶¶15, 19 & 21.

These facts  – even before any significant discovery has taken place – confirm Plaintiff's

allegations that Abbott was integrally involved in the same sort of illicit behavior as Purdue and

strongly support the claims NMUFCW alleges against Abbott in this case.

## III.    ARGUMENT

In *Alexandra Global Master Fund, Ltd. v. Ikon Office Solutions, Inc.*, No. 06 Civ. 5383,

2007 WL 2077153, *1 (S.D.N.Y. July 20, 2007)(Koeltl, J.), this Court recently pronounced the

---

[3] Abbott's reference to the Release by the Commonwealth of Virginia that was entered by the Purdue and Individual Defendants is not referenced in Plaintiff's Complaint and therefore should not be taken into consideration of this motion to dismiss.  *See Alexandra Global Master Fund, Ltd. v. Ikon Office Solutions, Inc.*, No. 06 Civ. 5383, 2007 WL 2077153, *1 (S.D.N.Y. July 20, 2007)(Koeltl, J.) ("In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the Complaint").  Even if considered, the Release affords no solace to Abbott.  Virginia's decision not to prosecute Purdue's co-promoters (*i.e.*, Abbott) in exchange for a guilty plea suggests that Virginia could have prosecuted claims against Abbott but decided instead to employ its prosecutorial discretion to end the litigation with the several guilty pleas it did obtain.

standard of review on a 12(b)(6) motion to dismiss to be that, "the allegations in the Complaint are accepted as true" and that "all reasonable inferences must be drawn in the plaintiff's favor. The Court's function on a motion to dismiss is 'not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient.'" *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985)."[4] The same standard applicable to a 12(b)(6) motion to dismiss applies to a motion to dismiss pursued under Rule 12(b)(1). *See Davis v. Commercial Bank of New York*, 275 F. Supp.2d 418, 422 (S.D.N.Y. 2003)("Where a defendant objects to a plaintiff's jurisdictional pleading, the standard of review is the same as the familiar Rule 12(b)(6) requirement: "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff."). *See also Center for Reproductive Law and Policy v. Bush*, 304 F.3d 183, 192 (2d Cir. 2002)(same).

Given the liberal pleading standards applicable to Plaintiff's Complaint, the NMUFCW has adequately pleaded plausible and legally sufficient claims against Abbott.

### A. THE NMUFCW HAS ARTICULATED FACTS DESCRIBING HOW PLAINTIFF'S INJURY IS ATTRIBUTABLE TO ABBOTT.

Abbott contends that this action should be dismissed pursuant to Fed.R.Civ.P. 12(b)(1) for lack of standing purportedly because NMUFCW has not pleaded any injury attributable to it.[5]

---

[4] *See also Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007)("Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"), *quoting, Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) (a case that finds that the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face"); *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)(*Twombly* imposes a flexible "plausibility standard," which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*.").

[5] Later in its brief, Abbott disingenuously acknowledges that, "Plaintiff has standing to pursue a claim only under the New Mexico consumer protection statute." Abbott Brf. at 13.

6

A fair reading of the Complaint, giving every reasonable inference to the Plaintiff, quickly dispels Abbotts' contentions.

Without allegations of a "causal connection," a plaintiff lacks the constitutionally required minimum case or controversy for a justiciable claim. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). It follows then that a "case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Such motions traditionally are based upon challenges to either the sufficiency or accuracy of the jurisdictional allegations of the complaint. *See Robinson v. Government of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001); *Davis*, 275 F. Supp.2d at 422 & n. 15. Here, however, there is no doubt that the NMUFCW has adequately pleaded a cognizable injury that was caused by Abbott.

In an effort to elevate form over substance, Abbott argues that the Complaint fails to state that Abbott's actions caused any harm to NMUFCW. Abbott focuses on the sufficiency of Paragraph 67, which asserts upon information and belief, that, "the Abbott Defendants utilized the same deceptive and aggressive marketing tactics as those utilized by Purdue," Complaint ¶67. Abbott contends that, "other than identifying Abbott as a co-promoter of OxyContin, Plaintiff alleges no illegal act or particular misconduct by Abbott," and denies having played any part in Purdue's illegal activities. Abbott Memorandum at 7. As detailed above, there is ample evidence that suggests Abbott was complicitly engaged in parallel conduct, if not the identical illegal behavior, as its co-conspirators at Purdue. In particular, the court in *West Virginia* made particularized findings that bolster Plaintiff's allegations that Purdue and Abbott were sharing

7

marketing information. *Compare* Complaint ¶53(b) *with* West Virginia, *supra* at 10, ¶29, which

state:

53. According to the Plea and related documents, Purdue misbranded OxyContin in three specific ways:

\*   \*   \*

b. Purdue supervisors and employees drafted an article about a study of the use of OxyContin in osteoarthritis patients that was published in a medical journal on March 27, 2000. On June 26, 2000, each sales representative was provided with copy of the article and a "marketing tip" that stated that the article was available for use in achieving sales success. Sales representatives distributed copies of the article to health care providers to falsely and/or misleadingly represent that patients taking OxyContin at doses below 60 mg per day could always be discontinued abruptly without withdrawal symptoms. The article also indicated that patients on such doses would not develop to tolerance. The marketing tip that accompanied the article stated that one of twelve key points was: "There were 2 reports of withdrawal symptoms after patients abruptly stopped taking CR [controlled release] oxycodone at doses of 60 or 70 mg/day. Withdrawal syndrome was not reported as an adverse event during scheduled respites indicating that CR oxycodone at doses below 60 mg/day can be discontinued without tapering the dose if the patient condition so warrants." These marketing claims were made even though Purdue representatives were well aware of studies, reports and other information contrary to the representations they were making. Indeed, certain information was actively suppressed by Purdue.

29. Plaintiffs have presented evidence sufficient for a jury to conclude that Purdue and Abbott provided their sales representatives with the same reprints to give to doctors as part of their joint effort to push OxyContin sales. Abbott detailers used the piece written by Purdue speaker, Dawn Marcus. Ex. 25 (Memo re: new OxyContin paincare promotional materials at ABBOTT1008472 (OXY08687). The Marcus article advocated using long-acting opioids for the treatment of chronic pain, and stated, without reference, that "While studies report drug abuse/dependence/addiction is 3 to 19 percent of chronic pain patients, true addiction (psychologic dependency) is uncommon with the use of long-acting opioids for chronic pain." Ex. 26 (Marcus, "Treatment of Nonmalignant Chronic Pain," reprinted from American Family Physician, Vol. 61, No. 5 (March 2000) at ABBOTT1003561 OXY05883)) (emphasis added).[6]

---

[6]Plaintiff recognizes that the Marcus article adverted to by the court in *West Virginia* is not the March 27, 2000 article referenced in Purdue's Guilty Plea, *i.e.,* Sanford H. Roth, M.D., *et al., Around-the-Clock, Controlled-Release Oxycodone Therapy for Osteoarthritis-Related Pain,* Arch. Intern. Med. 853 (March 27, 2000), but the finding of the court – that the same reprints were shared by Purdue and Abbott – permits a reasonable inference that even the article by Roth, et al., was improperly used by Abbott to promote the sale of Oxycontin.

Abbott's challenge to Plaintiff's allegations based on information and belief as being insufficient boils down to the argument that, "Plaintiff has to point to something Abbott actually did." Abbott Brf. at 7. NMUFCW submits that the allegations of its Complaint are already sufficient and point to the *West Virginia* case as that "something" that demonstrates that Abbott's actions mirror Purdue's illegal behavior, making the pleading more than plausible.[7]

Abbott's remaining challenge to the so-called "lack of connection" between Abbott's misconduct and Plaintiff's damages as a third-party payor, is equally misplaced. In *Desiano v. Warner-Lambert Co.*, 326 F.3d 339 (2d Cir. 2003), the Second Circuit upheld the legal sufficiency of a complaint made by similarly situated health insurers that alleged that they had been misled as purchasers of a prescription drug. The Second Circuit held:

> In the instant case, instead, Plaintiffs allege an injury directly to themselves; an injury, moreover, that is unaffected by whether any given patient who ingested Rezulin became ill. Plaintiffs' claim is that the Defendants' wrongful action was their misrepresentation of Rezulin's safety, and that this fraud directly caused economic loss to them as purchasers, since they would not have bought Defendants' product, rather than available cheaper alternatives, had they not been misled by Defendants' misrepresentations. Thus the damages – the excess money Plaintiffs paid Defendants for the Rezulin that they claim they would not have purchased "but for" Defendants' fraud – were in no way "derivative of damage to a third party."

*Id.* at 349. *See also In re Zyprexa Prod. Liab. Litig.*, 493 F. Supp.2d 571, 576 (E.D.N.Y. 2007)("As purchasers of Zyprexa, consumers and third party payers have standing to sue for

---

[7]In the event that the Complaint fails to satisfactorily plead Plaintiff's jurisdictional standing requirements, fails to state a claim or plead facts with sufficient specificity, leave to amend the Complaint should be freely given absent bad faith, futility or substantial prejudice to the opposing party. *See* FED. R. CIV. P. 15(a); *Kassner v. 2nd Avenue Delicatessen, Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).

9

economic damages; they have demonstrated a sufficient causal nexus between Lilly's alleged

fraud and their own claimed economic injuries.").

Here, NMUFCW has analogously alleged that the Class was damaged as the result of its

overpayment for OxyContin, which damages would not have occurred but for the Defendants'

(including Abbott's) misbranding efforts directed at them. Complaint ¶¶38, 93(d). In addition,

Plaintiff alleged in each Count that:

Count I
: Plaintiff and members of the Class have been injured in their property by reason of these violations in that Plaintiff and members of the Class have made millions of dollars in payments for OxyContin that they would not have made had Defendants not engaged in their pattern of racketeering activity. Complaint ¶100.[8]

Count II
: Plaintiff and members of the Class have been injured in their property by reason of these violations in that Plaintiff and members of the Class have made millions of dollars in payments for OxyContin that they would not have made had Defendants not conspired to violate 18 U.S.C. §1962(c). Complaint ¶110.

Count III
: In exchange for the payments they made for OxyContin, and at the time they made these payments, Plaintiff and the Class expected that the drug was a safe and medically effective treatment for the condition, illness, disease, disorder, or symptom for which it was prescribed. Complaint ¶169.

---

[8]RICO standing is properly alleged if plaintiff pleads "1) the defendants' violation of §1962, 2) an injury to plaintiff's business or property and 3) causation of the injury by the defendant's violation." *Baisch v. Gallina*, 346 F.3d 366, 372 (2d Cir. 2003) (*quoting, Lerner v. Fleet Bank, N.A.*, 318 F.3d 113 (2d Cir. 2003)). In *Baisch*, the Second Circuit held that RICO standing should be determined solely upon a two-part proximate cause test focusing upon 1) whether plaintiff's injury is proximately caused by a pattern of racketeering activity violating §1962 or by individual RICO predicate acts, and 2) that plaintiff suffered a direct injury that is foreseeable. *Id.* at 373. As discussed *infra*, the alleged mail and wire fraud engaged in by the Defendants constituted a pattern of racketeering activity. Coupled with the fact that the Plaintiff and the Class are victims of the Defendants' fraudulent scheme, Complaint ¶60, which were directly harmed in their business and property through their overpayment for OxyContin, this combination firmly establishes Plaintiff's RICO standing. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 307 F. Supp.2d 196, 207-08 (D. Mass. 2004)("In the private, end-payor context, the harm alleged by Defendants' alleged actions is visited directly upon the end-payor Plaintiffs, as they have paid directly for the named drugs based on the AWP's.").

Count IV    Defendants voluntarily have accepted and retained these payments, with full knowledge and awareness that, as a result of their wrongdoing, Plaintiff and the Class paid for OxyContin when they otherwise would not have done so. The failure of Defendants to provide Plaintiff and the Class with the remuneration they expected enriched Defendants unjustly. Complaint ¶170.

These allegations conform with those of *Desiano, supra.*[9] Had the Defendants not engaged in their deceptive and fraudulent behavior, the Plaintiff and the Class would not have been susceptible to the increased demands for the drug or the overcharging that ensued as a consequence of the fraud. *Desiano*, 326 F.3d at 349 & n.9. These allegations establish that the Plaintiff and the Class were directly harmed by the deception practiced upon them by Abbott.

Accordingly, Plaintiff's Complaint is sufficient to withstand Abbott's motion to dismiss.

**B.    COUNT I ADEQUATELY STATES A SECTION 1962(C) RICO CLAIM.**

To state a claim under §1962(c), plaintiff must allege at least four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). *See also Burrell v. State Farm and Cas. Co.*, 226 F. Supp.2d 427, 443 (S.D.N.Y. 2002)(Koeltl, J.)(describing seven elements); 18 U.S.C. §1962(c).

Abbott does not challenge Plaintiff's pleadings on three of these four elements. Instead, Abbott raises three concerns: 1) at trial Plaintiff must establish its §1962(c) claim as to each Defendant; 2) that the Complaint failed to allege a "pattern" of misconduct by the Defendants, particularly Abbott; and 3) that the Complaint lacks the specificity required by Fed.R.Civ.P. 9(b). Each of Abbott's concerns are easily allayed.

---

[9]Abbott's last contention that it had "no pricing power" is not a fact of record and Abbott cannot reference the Complaint for this assertion. This factual contention is not appropriately considered given the present procedural posture of the case. Moreover, an inference from the findings by the Court in *West Virginia* suggest to the contrary- that the price of OxyContin was inflated because of Abbott's commissions.

11

First, Abbott relies upon *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001), for the

proposition that the requirements of §1962(c) must be "established as to each individual

defendant." Abbott Brf. at 11. *DeFalco* involved an elaborate racketeering enterprise engaged in

by a cabal of Delaware, New York officials and accessories to misappropriate money and other

rewards from a real estate developer. The Second Circuit reviewed a judgment from the second

of two jury trials. The pleadings in that case were not at issue. Plaintiff agrees that at trial, it

must "establish" the requirements of §1962(c) as to each Defendant, including Abbott. That

proof-of-fact obligation, however, has nothing to do with the adequacy of Plaintiff's pleadings.

Plaintiff's Complaint identifies numerous instances of parallel conduct by Abbott that is

consistent with, if not identical to, the criminal conduct admitted to by Purdue. *See* discussion,

*supra* at pp. 2-5. Abbott is therefore sufficiently on notice of the claims against it.

Second, NMUFCW's pleading sufficiently describes the pattern of racketeering activity

engaged in by Abbott. As this Court observed in *JSC Foreign Economic Ass'n*

*Technostroyexport v. Weiss,* No. 06-Civ.-6095, 2007 WL 1159637, *10 (S.D.N.Y. Apr. 18,

2007)(Koeltl, J.)[hereafter "Techno"], the "pattern" element is adequately pleaded by identifying

the sufficient number of predicate acts of racketeering activity. In *Techno*, the defendants

challenged the sufficiency of plaintiff's allegations of an association-in-fact enterprise because

they overlapped with plaintiff's pattern allegations of the racketeering acts themselves. This

Court found that the complaint was adequately pleaded despite the convergence of the allegations

addressing these different RICO elements. *Id.* Specifically, this Court ruled:

> While no formal structure is alleged, apart from the aspects of the
> scheme which Weiss himself devised and managed, the enterprise
> that is alleged could constitute an "associat[ion] in fact." 18 U.S.C.

12

> § 1961(4). The Complaint includes extensive detail about a variety of transactions ranging over a lengthy period of time, all involving Weiss and Reich or Jossem, and all allegedly designed to conceal and launder funds unlawfully. This "course of conduct" suggests that Weiss and Weiss & Co. may have functioned together with Reich, Jossem, and others as a "continuing unit" with the "common purpose" of concealing and laundering a large amount of funds. *Turkette*, 452 U.S. at 583. Judged by the liberal pleading standards of Rule 8, while Techno will be required to prove the existence of the enterprise, the Court cannot find that Techno could prove no set of facts that would establish the existence of the enterprise.

*Id.*[10]

In Plaintiff's Complaint, each of the Defendants are described as RICO "persons" who, distinct from the association-in-fact enterprise, referred to as the Off-Label Promotion Enterprise, conducted its affairs by promoting OxyContin for off-label uses in contravention of FDA regulations. Complaint ¶¶87 & 88. This ongoing enterprise's affairs were alleged to have been conducted through a pattern of racketeering activity involving "acts indictable under 18 U.S.C. §1341 (mail fraud), §1343 (wire fraud), and §1952 (use of interstate facilities to conduct unlawful activity)." Complaint ¶92. The means by which this pattern of activity was effectuated was further explicated to include *inter alia*: 1) marketing the drug in a manner encouraging "off-label" uses for which OxyContin had not been proven to be safe or efficacious; 2) misrepresenting the appropriate uses of OxyContin in marketing materials and/or placement of advertisements in medical journals; 3) direct communications with physicians misrepresenting that OxyContin was clinically proven to be safe and medically efficacious when used for off-

---

[10]*See also H.J. Inc. v Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989)(Pattern established by alleging at least two racketeering predicate acts "are related and that they amount to or pose a threat of continued criminal activity."); *United States v. Daidone*, 471 F.3d 371, 375 (2d Cir. 2006)(pattern is afforded a "generous reading").

13

label purposes; and 4) communicating with the Plaintiff and Class members to induce payments for OxyContin to be made based upon misrepresentations concerning the safety, efficacy and usefulness of OxyContin. Complaint ¶93. These actions were further alleged to have been "routinely" conducted with knowledge that the Plaintiff and Class members "depended on the honesty and integrity of Defendants in representing the medical efficacy of OxyContin and its appropriate uses." Complaint ¶¶96 and 98.

These allegations more than adequately meet the relatedness and continuity requirements for pleading a pattern of racketeering activity. *See In re Neurontin Mktg., Sales Practices, and Prod. Liab. Litig.*, 433 F. Supp.2d 172, 180 (D. Mass. 2006)(in similar case involving fraudulent promotion of pharmaceutical drug, the court found "both complaints adequately allege an unlawful common purpose for each of the alleged enterprises, namely, to illegally promote off-label uses of Neurontin."); *In re Zyprexa*, 493 F.Supp.2d at 576-78 (denying summary judgment motion filed by drug manufacturer as to analogous RICO drug overpricing claim based upon defendant's fraudulent marketing practices). Abbott's contentions that there is a lack of specificity as to it are not borne out by a fair reading of the Complaint.

Third, the Complaint adequately pleads misrepresentations by Abbott concerning OxyContin. Even under the heightened pleading standard of Fed.R.Civ.P. 9(b) that is applicable to RICO claims for which fraud is the predicate illegal act, *see, e.g., Moore v. PaineWebber, Inc.*, 189 F.3d 165, 172 (2d Cir. 1999), Plaintiff is not required to allege each specific conversation or representation, where the very nature of the Defendants' scheme renders this impossible at the pleadings stage. *See Zito v. Leasecomm Corp.*, No. 02-Civ.-8074, 2004 WL 2211650, *13-14 (S.D.N.Y. Sept. 30, 2004). In fact, Plaintiff need not specifically identify each and every

14

fraudulent statement at issue in the case. *See General Elec. Capital Corp. v. Posey*, 415 F.3d 391, 397 n. 7 (5th Cir. 2005)("Indeed, under Rule 9(b), even for allegations of fraud, not every alleged misrepresentation need appear in the pleadings." ). Rather, "Rule 9(b) is satisfied if the complaint gives enough information to enable defendants to frame a responsive pleading and assures that a sufficient basis exists for the allegations made." *Center Cadillac, Inc. v. Bank Leumi Trust Co.*, 808 F. Supp. 213, 228 (S.D.N.Y. 1992), *aff'd*, 99 F.3d 401 (2d Cir. 1995)(table). Plaintiff may even allege fraud upon information and belief "if they [sic.] include a statement of fact on which the belief is founded." *Id.* at 229.

In addition, the requirements of FED. R. CIV. P. 9 must be read consistent with the notice pleading obligation of Rule 8. *See, e.g., Seville Indus. Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984); *Center Cadillac*, 808 F. Supp. at 228. In so doing, courts apply some flexibility to the heightened pleading requirement. *Id.; In re Sumitomo Copper Litig.*, 995 F. Supp. 451, 454 (S.D.N.Y. 1998) (allowing notice pleading of the "enterprise" element of RICO, even were the basis of the claim is fraud). This flexibility has been extended to allow group pleading that does not parse each fact and attribute each false statement to any particular defendant provided that each defendant is on notice of the specific circumstances constituting the overall fraud. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007); *Sumitomo Copper*, 995 F.Supp. at 456; *Zito*, 2004 WL 2211650 at *14.

NMUFCW's Complaint alleges the "who, what, where and when" of the myriad misrepresentations made by the Purdue and Abbott Defendants with respect to OxyContin. The Complaint contains examples of specific misrepresentations addressing the drug's efficacy, safety and illegal, off-label promotion. These representations were part of a scheme or pattern of

15

activity designed to cause widespread, unnecessary usage of a high-priced, limited-purpose drug that otherwise would not have occurred.

Specific examples of the misrepresentations that misstated the appropriate use of OxyContin and which failed to adequately disclose and discuss safety and efficacy are provided in the Complaint. Complaint ¶30. The uniform efforts to over-promote the drug beyond its approved indications for inappropriate and off-label uses are similarly spelled out in the *Id.*, ¶¶33-37. These allegations are supplemented by specific details of the criminal misbranding, *i.e.*, the misrepresentations, documents used, etc., that demonstrated the Purdue Defendants' intentions to promote OxyContin for off-label use. *Id.*, ¶¶52-53. Abbott is alleged to have "utilized the same deceptive and aggressive marketing tactics as those utilized by Purdue." *Id.*, ¶67. Abbott made sales presentations to doctors and hospitals and provided incentives to its sales force based upon sales of OxyContin. *Id.*, ¶69. Abbott provided at least 300 sales representatives, as per the Co-Promotion Agreement, dedicated to promoting OxyContin; and Abbott lent its name and logo to materials for OxyContin. *Id.*, ¶¶70-71.

To suggest, as Abbott does, that the Complaint lacks specificity as to misrepresentations by Abbott is unfounded. The pleading amply provides notice to Abbott of the fraud in which it engaged along with the Purdue Defendants. More specificity should not be required.

**C.    COUNT II ADEQUATELY STATES A SECTION 1962(D) RICO CLAIM**

Count II of Plaintiff's Complaint asserts a RICO conspiracy claim pursuant to 18 U.S.C. §1962(d). Abbott, relying upon *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990), erroneously contends that to state a RICO conspiracy Plaintiff must allege facts implying an agreement by each Defendant to commit at least two predicate acts. This holding by

16

the court in *Hecht* has been overruled and no longer accurately describes the pleading

requirements of a RICO conspiracy claim.

In 1997, the United States Supreme Court interpreted §1962(d) to have "broadened

conspiracy coverage by omitting the requirement of an overt act". *Salinas v. United States*, 522

U.S. 52, 64 (1997). The Supreme Court's analysis was explicit:

> It makes no difference that the substantive offense under § 1962(c)
> requires two or more predicate acts. The interplay between
> subsections (c) and (d) does not permit us to excuse from the reach
> of the conspiracy provision an actor who does not himself commit
> or agree to commit the two or more predicate acts requisite to the
> underlying offense.

*Id.* at 65. In so holding, the Supreme Court resorted to conventional principles applicable to

conspiracy, namely, "[a] conspiracy may exist even if a conspirator does not agree to commit or

facilitate each and every part of the substantive offense." *Id.* at 63.

Following *Salinas*, courts have relaxed the pleading restrictions on RICO conspiracy

claims. *See, e.g., Zito*, 2004 WL 2211650 at *19 ("While the precise contours of each

defendant's knowledge of the scope of the overall conspiracy has yet to be proven, plaintiffs have

brought conspiracy allegations against each of the dealer defendants that are sufficient to

withstand a motion to dismiss.").

Here, despite Abbott's argument that posits that the Complaint fails to plead any

agreement by Abbott to commit at least two predicate acts, the Complaint sufficiently pleads:

> The nature of the above-described Defendants' and their co-
> conspirators' acts, material misrepresentations, and omissions in
> furtherance of the conspiracy give rise to an inference that they not
> only agreed to the objective of an 18 U.S.C. §1962(d) violation of
> RICO by conspiring to violate 18 U.S.C. §1962(c), but that they

were aware that their ongoing fraudulent and extortionate acts have
been and are part of an overall pattern of racketeering activity.

Complaint ¶107. *See also* Complaint ¶109 (alleging multiple instances of mail fraud and wire

fraud, *i.e.*, predicate acts). Under *Salinas*, Plaintiff's allegations are more than adequate to plead

a RICO conspiracy claim.

Abbott's remaining argument suggests that Plaintiff's RICO conspiracy claim fails as a

matter of law because Plaintiff has not adequately alleged a §1962(c) claim. The allegations of

Count II incorporate by reference all the preceeding paragraphs of the Complaint, Complaint

¶103, which, as set forth above in Section III, B of this brief, amply describe the illegal conduct

engaged in not only by Purdue, but also by Abbott. Rather than burden the Court with

cumulative discussions, Plaintiff adopts its prior arguments that more than adequately refute the

premise of Abbott's mistaken argument that the pleadings are insufficient to describe Abbott's

participation in the Off-Label Promotion Enterprise.

Based upon the forgoing, Count II of the Complaint adequately states a RICO conspiracy

claim under §1962(d).

### D. COUNT III ADEQUATELY PLEADS STATE LAW CONSUMER PROTECTION CLAIMS.

Abbott presents an inconsistent argument in opposition to Plaintiff's consumer protection

claim. Abbott concedes that the NMUFCW has standing to challenge Abbott's illegal marketing

practices under the New Mexico Unfair Practices Act, Chapter 57, Article 12 NMSA ("UPA").

Abbott Brf. at 13. No sooner does Abbott make this concession, then, in a complete about-face,

Abbott claims that Count III fails because Plaintiff "lacks standing under the UPA." Abbott Brf.

at 14. Abbott is wrong about NMUFCW's standing to challenge Abbott's actions under the 50

states consumer protection laws and it is wrong as to Plaintiff's standing under the UPA.

Abbott's effort to limit Plaintiff's consumer protection statute claim to New Mexico's

UPA is flawed and incorrect. NMUFCW's citizenship does not summarily determine which

state's consumer protection law applies to the Plaintiff's claim. The choice-of-law analysis that

will be required to be made by this Court at the class certification hearing is more involved than

that suggested by Abbott. As no motion for class certification is currently pending, however, the

choice-of-law analysis should be deferred until such time as the issue is properly before the

Court. *See In re Zyprexa,* 493 F.Supp.2d at 579 ("Since a decision on class certification has not

yet been made, it is not appropriate to now address the elements in specific state consumer

protection statutes.").[11]

The issue that is before the Court now is whether the Plaintiff has pleaded a claim upon

which relief can be granted. Regardless of whether NMUFCW is entitled to apply New York,

Illinois, New Mexico or any other state's law to the claims of all members of the proposed Class,

*see, e.g., Powers v. Lycoming Engines,* 245 F.R.D. 226, 229-231 (E.D. Pa. 2007), the Plaintiff

has adequately stated a consumer protection claim. Since Abbott directs its efforts to disclaim

the Complaint's allegations under the UPA, while reserving our rights to address the viability of

consumer protection claims under the remaining 47 jurisdictions, Plaintiff hereby responds to

Abbott's argument.

---

[11] *See, e.g., Spence v. Glock Ges.m.b.h.,* 227 F.3d 308, 311 (5th Cir. 2000) (threshold question in reviewing class certification decision is "whether the district court conducted a proper choice of law analysis"); *Castano v. American Tobacco Co.,* 84 F.3d 734, 741 (5th Cir. 1996) ("a district court must consider how variations in state law affect predominance and superiority"); *In re Pharm. Indus. Average Wholesale Price Litig.,* 230 F.R.D. 61, 82 (D. Mass. 2005) ("To analyze the predominance challenge, the court must first determine what law applies.").

Section 57-12-10 of the UPA provides for a private remedy to any person injured by an unlawful act (without regard to citizenship of any particular state) as follows:

> Any person who suffers any loss of money or property, real or personal, as a result of any employment by another person of a method, act or practice declared unlawful by the Unfair Practices Act may bring an action to recover actual damages or the sum of one hundred dollars ($100), whichever is greater. Where the trier of fact finds that the party charged with an unfair or deceptive trade practice or an unconscionable trade practice has willfully engaged in the trade practice, the court may award up to three times actual damages or three hundred dollars ($300), whichever is greater, to the party complaining of the practice.

N.M. STAT. ANN. §57-12-10 (B).  As a Taft-Hartley Trust Fund, Plaintiff easily meets the "person" requirement of the UPA.  *Id.  See also* N.M. STAT. ANN. §57-12-2 (A)(defining "person" to include a trust).

The UPA specifies those types of unlawful acts that are actionable as private remedies under the definition of "unfair and deceptive trade practices."   An "unfair or deceptive trade practice" is defined as "an act specifically declared unlawful pursuant to the Unfair Practices Act, a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale . . .of goods . . . by a person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead any person." N.M. Stat. Ann. §57-12-2 (D).

Therefore, to state a claim under the UPA, Plaintiff was required to allege that it is a 1) buyer of goods, 2) who suffered a loss of money, 3) as a result of any employment by another person of an unfair and deceptive trade practice.  *See Santa Fe Custom Shutters & Doors v. Home Depot U.S.A., Inc.*, 113 P.3d 347, 353 (N.M. Ct. App. 2005).

Plaintiff's Complaint satisfies these three basic UPA requirements. First, Plaintiff alleges

that it and the Class were buyers of a good, OxyContin. Complaint ¶2 (Plaintiff and the Class

"purchased, reimbursed and/or paid for OxyContin").[12] Second, Plaintiff alleges it and the Class

suffered a loss of money. Complaint ¶165 ("Plaintiff and the Class have suffered ascertainable

loss and damages."). Third, Plaintiff claims its loss resulted from Abbott's deceptive trade

practices. Complaint ¶165 ("Plaintiff and members of the Class . . . relied upon Defendants'

misrepresentations and omissions in paying for OxyContin. By reason of the unlawful acts

engaged in by Defendants, Plaintiff and the Class have suffered ascertainable loss and damage.").

Having mastered the pleading requirements of the UPA, Plaintiff's Complaint states a cause of

action. *See also* Plaintiff's Memorandum in Opposition to Purdue's Motion.

Abbott also raises a factual dispute by denying that NMUFCW and the Class can prove

causation based upon the repeated, flawed premise that Abbott had no control over the pricing of

OxyContin. The Complaint alleges, however, that Abbott's misrepresentations and deceptive

conduct exacerbated a demand for off-label use of OxyContin that allowed the Defendants to

increase the market share for and charge more for OxyContin than they otherwise would have

been able to charge. Complaint ¶¶ 2,38. Abbott shared commissions from OxyContin with its

co-promoter, Purdue, to the detriment of the Plaintiff and the Class. *See supra,* pp. 2-5. *See also*

Abbott Brf. at 16 (conceding that "Abbott received compensation to which it was contractually

entitled for co-promotional services rendered."). These allegations, which must be accepted as

true, are more than sufficient to allege a UPA claim. *See Smoot v. Physicians Life Ins. Co.,* 87

---

[12]Abbott's characterization of the Plaintiff as a "non-consumer" that "did not buy anything" is contrary to
the factual allegations of the Complaint which allegations Abbott has admitted strictly for purposes of this motion.

P.3d 545, 550-51 (N.M. Ct. App. 2003)(recognizing that because the UPA does not require "a specific allegation of detrimental reliance for the relief provided," Plaintiff's Complaint adequately pleaded causation by alleging damages "as a result of any employment by another person of an unfair or deceptive practice.").[13]

As Abbott has been alleged to have engaged in deceptive acts, Count III of the Complaint states a cause of action upon which relief may be granted.

### E.   COUNT IV ADEQUATELY PLEADS STATE LAW CLAIMS IN EQUITY FOR UNJUST ENRICHMENT.

Plaintiff brings its fourth claim for unjust enrichment under the several states' laws. Complaint, Count IV.  In contrast to Count III, where Abbott asserts that New Mexico law applies, with regard to Count IV, Abbott selectively challenges the sufficiency of the pleading under the standards set forth under Illinois law as stated in *HPI Health Care Serv., Inc. v. Mount Vernon Hosp., Inc.*, 545 N.E.2d 672 (Ill. 1989)[hereafter "HPI"].  Plaintiff has stated a claim under every jurisdiction but will focus its discussion upon Illinois law.

In *HPI,* the Supreme Court of Illinois announced the pleading requirements for a claim of unjust enrichment:

> To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention

---

[13]Abbott's remaining authorities are not on point.  *See Brooks v. Norwest Corp.*, 103 P.3d 39, 51 (N.M. Ct. App. 2004)(a class certification opinion discussing plaintiff's obligation to prove at trial that the defendant's deceptive practices caused actual damages, not pleading sufficiency); *Chavarria v. Fleetwood Retail Corp.*, 115 P.3d 799, 810 (N.M. Ct. App. 2005)(trial court award of damages for sale of insurance policy by unlicenced agent in violation of law reversed because the evidence adduced at trial was insufficient to establish actual injury), *aff'd in part, rev'd in part on other grounds*, 143 P.3d 717 (N.M. 2006).  Abbott's reliance upon *Perry v. American Tobacco Co., Inc.*, 324 F.3d 845 (6th Cir. 2003) and *Himes v. Brown and Co. Sec. Corp.*, 518 So.2d 937 (Fla. Dist. Ct. App. 1987) is similarly misplaced.  Neither case interpreted the pleading standards of New Mexico's UPA.

> of the benefit violates the fundamental principles of justice, equity, and good conscience.

*HPI*, 545 N.E. at 679. Thus, the three essential elements necessary to adequately state a claim for unjust enrichment are: 1) that the defendant has retained a benefit; 2) retention of which is to the plaintiff's detriment; and 3) that to allow defendant to retain that profit is unjust.

Plaintiff's Complaint identifies each of these three elements of unjust enrichment. First, Plaintiff alleged that all the Defendants, including Abbott, "profited and benefitted from payments Plaintiff and the Class made for OxyContin." Complaint ¶168. Second, Plaintiff alleged that Defendants' retention of the overpayments for OxyContin were to its detriment, by stating: "Defendants voluntarily have accepted and retained these payments, with full knowledge and awareness that, as a result of their wrongdoing, Plaintiff and the Class paid for OxyContin when they otherwise would not have done so. The failure of Defendants to provide Plaintiff and the Class with the remuneration they expected enriched Defendants unjustly." Complaint ¶170. These allegations also satisfy the last element that to allow the Defendant to retain the benefit is unjust. *See also* Complaint ¶171.

Abbott seeks to avoid the fact that the Complaint is well-pleaded through yet another factual diversion. Abbott insists, contrary to the allegations of the Complaint, *e.g.,* Complaint ¶67, that it was an innocent third-party who merely received compensation from the wrongdoing of the Purdue Defendants pursuant to the Co-Promotion Agreement. Relying upon *HPI*, Abbott suggests that the presence of the Purdue Defendants exculpates its own malfeasance. Abbott's argument is premised upon a basic misunderstanding of the holding of *HPI*.

23

In *HPI*, the Illinois Supreme Court found that unjust enrichment claims may be asserted against a third party when another defendant transfers a benefit to that third party under several scenarios. Two of the scenarios described by *HPI* directly apply to the facts involving Abbott, namely where "the defendant procured the benefit from the third party through some type of wrongful conduct, or the plaintiff for some other reason had a better claim to the benefit than the defendant." *HPI*, 545 N.E.2d at 679. The Complaint is replete with allegations that Purdue and Abbott, engaging in the same illegal acts of misbranding OxyContin, benefitted from overcharges assessed against the Plaintiff. Complaint ¶¶168-170 . These self-same allegations of wrongful conduct also give rise to Plaintiff's superior claim to recover its overpayments for OxyContin from the malfeasant Defendants. Complaint ¶¶169-170.

Thus, Plaintiff is not asserting a guilt-by-association theory against an <u>innocent</u> third party. To the contrary, Plaintiff has pleaded that Abbott conspired with the Purdue Defendants to engage in illegal activities involving the misbranding and over-promotion of Oxycontin that encouraged off-label uses of the drug which resulted in the Plaintiff and the Class overpaying for the drug. Complaint ¶¶105-106. Because both Abbott and Purdue profited from Plaintiff's overpayment, their intentional, collective wrongful conduct permitted Abbott and Purdue to retain a benefit unjustly. Complaint ¶171. Abbott's reliance on cases whose factual patterns are inapposite because they involved payments received by innocent third parties or they followed evidentiary proceedings is misplaced. *See Season Comfort Corp. v. Ben A. Borenstein Co.,* 655 N.E.2d 1065, 1071 (Ill. App. Ct. 1995)("Merely because Season suffers a loss because of the bankruptcy of AA, does not mean that Jewel or BABCO was unjustly enriched"), *appeal denied,* 664 N.E.2d 648 (Ill. 1996); *Shilkoff, Inc. v. 885 Third Ave. Corp.,* 750 N.Y.S.2d 53, 54 (App.

24

Div. 2002)(no injustice found); *National Benefit Adm'rs, Inc. v. Mississippi Methodist Hosp. &*

*Rehab. Ctr., Inc.,* 748 F.Supp. 459, 465 (S.D. Miss. 1990)(on motion for summary judgment the

court found that the "undisputed facts also show . . . that the Johnsons, not MMHRC,

misrepresented the facts to the plaintiff, and that defendant neither knew nor had reason to know

of the misrepresentation"); *Matter of Stiennon,* 73 B.R. 905, 907 (Bankr. W.D. Wis.

1987)(following evidentiary proofs in adversary proceeding the court ruled that, "No enrichment

of Stiennon has occurred.").[14]

   Plaintiff has thus adequately stated claims for unjust enrichment such that dismissal under

Rule 12(b)(6) would not be appropriate.

## IV.    CONCLUSION

   For all of the above stated reasons, it is respectfully requested that the Abbott Defendants'

Motion To Dismiss be denied.

By:       /s/ Christopher A. Seeger
          Christopher A. Seeger, Esq. (CS-4880)
          David R. Buchanan, Esq.
          Seeger Weiss LLP
          One William Street
          New York, NY 10004
          Phone: 212-584-0700
          Fax: 212-584-0799
          *Plaintiff's Lead and Liaison Counsel*

---

[14]Abbott also argues that Plaintiff's unjust enrichment claim should be denied at the pleading stage because Plaintiff has an alternative remedy available to it at law. After 20 pages of briefing by Abbott on the reasons why Plaintiff has failed to state any legal claim, this last argument appears less than sincere. Regardless, Fed.R.Civ.P. 8(a) permits Plaintiff to demand relief in the alternative or of several different types. Even Abbott's cases recognize that it is premature to force Plaintiff to elect the theory under which it will choose to recover at the pleading stage. *See East River Savings Bank v. Secretary of Hous. and Urban Dev.,* 702 F. Supp. 448, 455 (S.D.N.Y. 1988)("The Court is not prepared at this stage of the proceedings to resolve plaintiff's legal claims against Vanguard. Accordingly, the Court will not now dismiss plaintiff's unjust enrichment claim on the ground that plaintiff has an adequate legal remedy."), *citing,* Fed.R.Civ.P. 8(e)(2). *See also In re Neurontin,* 433 F. Supp.2d at 186 ("While Plaintiffs may have to choose a theory of recovery at a later stage, that choice need not occur now.").

25

Jonathan Shub, Esq. (pro hac vice)
TerriAnne Benedetto, Esq. (pro hac vice)
Seeger Weiss LLP
1515 Market Street
Suite 1380
Philadelphia, PA  19102
Tel:  215-564-2300
Fax:  215-851-8029
*Attorneys for Plaintiff*

James R. Dugan, II, Esq.  (pro hac vice)
Douglas R. Plymale, Esq. (pro hac vice)
Stephen B. Murray, Sr., Esq.
Stephen B. Murray, Jr., Esq.
Murray Law Firm
650 Poydras Street
Suite 2150
New Orleans, LA  70130
Tel.:  504-648-0180
Fax:  504-648-0181
*Plaintiff's Lead Counsel*

Shane Youtz, Esq. (pro hac vice)
Youtz & Valdez, P.C.
900 Gold Avenue, S.W.
Albuquerque, NM  87102
Tel:  505-244-1200
Fax:  505-244-9700
*Attorneys for Plaintiff*

Arnold Levin, Esq. (pro hac vice)
Fred S. Longer, Esq.
Levin, Fishbein, Sedran & Berman
510 Walnut Street
Suite 500
Philadelphia, PA  19106
Tel:  215-592-1500
Fax: 215-592-4663
*Attorneys for Plaintiff*

Arthur Sadin, Esq. (pro hac vice)
Sadin Law Firm, P.C.
121 Magnolia Street
Suite 102
Friendswood, TX   77546
Tel:  281-648-7711
Fax:  281-648-7799
*Attorneys for Plaintiff*

26