UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEW MEXICO UNITED FOOD AND COMMERCIAL WORKERS UNION'S AND EMPLOYERS' HEALTH AND WELFARE TRUST FUND, on behalf of itself and all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>PURDUE PHARMA L.P., PURDUE PHARMA, INC., THE PURDUE FREDERICK COMPANY, INC. d/b/a THE PURDUE FREDERICK COMPANY, P.F. LABORATORIES, INC., ABBOTT LABORATORIES, ABBOTT LABORATORIES, INC., MICHAEL FRIEDMAN, HOWARD R. UDELL, PAUL D. GOLDENHEIM, JOHN DOE Nos. 1 through 20, and JANE DOE Nos. 1 through 20,<br><br>    Defendants. | **Civil Action No. 07-cv-6916-JGK** |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
INDIVIDUAL DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Individual Defendants, Michael Friedman, Howard Udell, and Paul Goldenheim (hereinafter collectively referred to as "Individual Defendants"), have moved for Judgment on the Pleadings on the grounds that Plaintiff purportedly has failed to allege any grounds for liability on the part of Individual Defendants apart from vicarious liability as corporate officers for the tortious acts of the Purdue Defendants.[1] The Individual Defendants' motion must fail,

---

[1] The Individual Defendants also assert that they are entitled to Judgment on the Pleadings for the reasons set forth in the Purdue Defendants' Motion for Judgment on the Pleadings, and incorporate by reference the Purdue Defendants' Memorandum in Support of Motion for Judgment on the Pleadings. In response to this assertion, Plaintiff incorporates by reference Plaintiff's Memorandum in Opposition to Purdue Defendants' Motion for Judgment on the Pleadings, as well as Plaintiff's Memorandum in Opposition to Abbott's Motion To Dismiss, both being filed contemporaneously herewith.

because Plaintiff has alleged ample facts upon which the Court could conclude that the Individual Defendants personally were aware of and participated in the fraudulent activities which give rise to this lawsuit.

In the Opposition to Purdue Defendants' Motion for Judgment on the Pleadings in *American Federation of State, County and Municipal Employees, District Council 47 Health and Welfare Fund, et al. v. Purdue Pharma L.P., et al.*, 07-8761, which action was consolidated herewith, Plaintiffs set forth the legal standard for consideration of such a motion. Rather than repeat those arguments here, to the extent applicable, Plaintiff herein adopts by reference Plaintiffs' Memorandum in Opposition to Purdue Defendants' Motion for Judgment on the Pleadings from the consolidated case. With respect to the grounds for dismissal urged by the Individual Defendants, Plaintiff reiterates that all factual allegations must be taken as true, and all reasonable inferences drawn in favor of Plaintiff. Under this standard, the Individual Defendants' Motion for Judgment on the Pleadings must fail.

The Individual Defendants correctly note that, as a general proposition, corporate officers cannot be held vicariously liable for the actions of the corporation solely by virtue of their positions in the corporation. Individual Defendants' Memorandum ("Indiv. Defs' Mem.") at 5 (*citing Stinson v. Berry*, 943 P.2d 129, 133 (N.M. Ct. App. 1997); *Bernstein v. Starrett City, Inc*., 758 N.Y.S.2d 658, 659 (App. Div. 2003); *Connell v. Hayden*, 443 N.Y.S.2d 383, 402 (App. Div. 1981); *Cohen v. Koenig*, 25 F.3d 1168, 1173 (2d Cir. 1994)). However, the very cases cited by the Individual Defendants also make clear that when a corporate officer knows of, countenances, and/or actively participates in the fraud, that officer **will** be held liable.

In *Cohen v. Koenig*, cited by the Individual Defendants, the Second Circuit held:

> Though such individuals are not generally liable for their corporation's debts or its breach of a contract... [o]fficers and directors of a corporation may be held liable for fraud if they participate in it or have actual knowledge of it .... A corporate officer is individually liable for fraudulent acts or false representations of his own, or in which he participates, even though his actions in such respect may be in furtherance of the corporate business....

25 F.3d at 1173 (citations omitted).

Likewise in *Stinson v. Berry*, also cited by Individual Defendants, the New Mexico Court of Appeals held:

> Corporate directors cannot be held vicariously liable for the corporation's torts merely by virtue of the office they hold. **However**, if an officer or director directs or actively participates in the commission of the tortious act of the corporation, he will be liable, along with the corporation.... Thus, **if the officer or director directed, controlled, approved or ratified the activity that led to the injury, he or she can be held personally liable.**

943 P.2d at 133 (emphasis added, citations omitted).

The allegations of the Complaint establish that the Individual Defendants not only knew of the fraudulent scheme, but also were active participants in it. Every paragraph setting forth the details of the vast fraudulent scheme charges that it was "defendants," including the Individual Defendants, who perpetrated the scheme. Moreover, Plaintiff has alleged facts specific to each Individual Defendant from which it can be inferred that they did not just know of the scheme, but were active participants in it, if not its architects.

Corporate defendants often plead guilty or are adjudicated as guilty – similar pleas and/or findings of guilt respecting their corporate executives are not automatic. Here, the Individual Defendants pled guilty to misdemeanor charges of "misbranding." They paid fines in the

millions of dollars.  Complaint, ¶¶ 50, 65.  The United States Attorney for the Western District of Virginia, John Brownlee, who headed up the criminal investigation which culminated in the guilty pleas being entered by the Purdue Defendants and the Individual Defendants, stated that "Even in the face of warnings from health care professionals, the media, and members of its own sales force that OxyContin was being widely abused and causing harm to our citizens, Purdue, **under the leadership of its top executives**, continued to push a fraudulent marketing campaign that promoted Oxycontin as less addictive, less subject to abuse, and less likely to cause withdrawal."  Complaint, ¶57 (emphasis added).

In Paragraph 63 of the Complaint, it is alleged that individual defendant Paul Goldenheim, who at various times pertinent to the litigation served as Group Vice President of Scientific and Medical Affairs, Executive Vice President of Medical and Scientific Affairs, Executive Vice President of Worldwide Research & Development and Executive Vice President of Worldwide Research & Development and Chief Scientific Officer, made representations to the U.S. Senate Committee on Health, Education, Labor and Pensions that Purdue promoted Oxycontin "only for its approved applications."  It is further alleged that Goldenheim told the Committee, "Purdue's sales and marketing practices focus exclusively on the management of pain and the proper use of OxyContin in patients for whom such pain medication is appropriate...."  Complaint, ¶63.  Since it was discovered thereafter that Purdue had not been marketing as represented by Goldenheim, neither prior to nor subsequent to his testimony, it is certainly plausible and actively asserted by Plaintiff that he knew about Purdue's fraudulent marketing tactics and declined to stop them from continuing.

From this and other allegations in the Complaint, one could reasonably infer that Goldenheim was aware of and actively participated in the fraudulent scheme.  If Goldenheim

4

was sufficiently familiar with Purdue's marketing of Oxycontin to give Congressional testimony, then he must have known of the pervasive unlawful marketing practices alleged in the Complaint. Indeed, it is plausible that the denial of those practices to the Senate Committee was an act in furtherance of the fraudulent scheme.

The Complaint likewise alleges sufficient facts to establish that Michael Friedman, who served as Chief Operating Officer and then President and Chief Executive Officer, was aware of the fraudulent scheme. At paragraph 62 of the Complaint, it is alleged that the FDA directed a January 2003 letter to Friedman personally, stating:

> Your advertisements thus grossly overstate the safety profile of OxyContin by not referring in the body of the advertisements to serious, potentially fatal risks associated with OxyContin, thereby potentially leading to prescribing of the product based on inadequate consideration of risk. In addition, your journal advertisements fail to present in the body of the advertisements critical information regarding limitations on the indicated use of OxyContin, thereby promoting OxyContin for a much broader range of patients with pain than are appropriate for the drug. The combination in these advertisements of suggesting such a broad use of this drug to treat pain without disclosing the potential for abuse with the drug and the serious, potentially fatal risks associated with its use, is especially egregious and alarming in its potential impact on the public health.

Complaint, ¶ 62.

The Complaint alleges that the fraudulent marketing scheme continued well after 2003. At least as of January 2003, Friedman was aware of the unlawful marketing of Oxycontin, and apparently countenanced continued unlawful marketing. From this factual allegation alone, it can reasonably be inferred that Friedman, the CEO of Purdue at the time, "approved or ratified" the continued perpetration of the fraudulent marketing scheme, rendering him personally liable for the scheme. *See e.g. Stinson v. Berry, supra.*

5

Last, but definitely not least, is Howard Udell, Executive Vice President and General Legal Counsel and later Executive Vice President and Chief Legal Officer. It defies all logic to suggest that the head in-house attorney for Purdue would have been unaware of such a pervasive illegal marketing scheme. Presumably, the letter from the FDA to Purdue C.E.O. Michael Friedman was brought to his attention. Doubtless Mr. Udell, as the corporation's chief legal advisor, had some familiarity with Goldenheim's testimony to a Senate Committee. At the very least, Plaintiff should be given the opportunity to conduct discovery into the depth and breadth of Udell's knowledge of the fraudulent scheme and his participation therein before the Complaint is dismissed.

The Complaint clearly establishes awareness of the fraudulent scheme, and gives rise to a plausible inference of active participation on the part of the Individual Defendants as to all of the fraudulent activities set forth in the Complaint. Indeed, it defies logic that the conduct of Purdue was so pervasive as to warrant repeated warnings from the FDA and the DEA and accusations and investigations by other government entities, *see* Complaint, ¶¶ 32, 45, 47, 49, 62, 64, 70, but, the Individual Defendants, Purdue's highest ranking employees, remained ignorant. It is more plausible that Goldenheim's testimony to the United States Senate denying any inappropriate marketing of Oxycontin was an affirmative false statement in furtherance of the fraudulent scheme than an inaccurate statement naively made. With respect to every allegation of fraudulent marketing, it is alleged that all "defendants" engaged in the activity. Contrary to the Individual Defendants' assertions, Plaintiff has not simply "lumped" the Individual Defendants in with Purdue. In addition to charging that the Individual Defendants together with other defendants personally participated in the scheme, Plaintiff has made allegations specific to these individuals which demonstrate how they were involved. Plaintiff's allegations specific to the

6

Individual Defendants are sufficient to establish their role in the wide-ranging fraudulent scheme.

Unable to refute these allegations of active personal involvement, the Individual Defendants make much of the fact that in their plea agreements, they **only** pled guilty to the crime of being "responsible corporate officers" of a company that engaged in misbranding under 21 U.S.C. §333(a)(1). Indiv. Defs' Mem. at 2. While the Individual Defendants, as part of a plea arrangement, may have only pled guilty to criminal liability as responsible officers of the corporation, the Complaint itself alleges actual involvement in the scheme.

Further, the Individual Defendants distort what they stipulated to in the context of their pleas. They claim that that they "denied personal knowledge of acts of misbranding." *Id*. (citing to ¶45 of Agreed Statement of Facts attached as Exhibit A to Strauber Declaration). Actually, at ¶45 they agree that they were responsible corporate officers of Purdue. At ¶46, they do not deny personal knowledge of misbranding, rather, they "do not agree that they had personal knowledge of **ALL** of the matters set forth in paragraphs 1-44 of this Agreed Statement of Facts." *See* Exhibit A to Strauber Declaration at ¶46 (emphasis added). *A fortiori*, they could have had personal knowledge of all but one of the matters set forth in paragraphs 1-44 and still have accurately made such statement. The Individual Defendants did not deny knowledge of each and every statement in paragraphs 1 through 44 of the Agreed Statement of Facts. Moreover, the comments of the head prosecutor involved do not support the Individual Defendants' claim that they were merely taking responsibility for acts of the corporation they were running respecting which they allegedly had no personal knowledge. Complaint, ¶57.

By referring to Defendants' plea agreement, Plaintiff most definitely has not conceded that the Individual Defendants had no knowledge of the fraudulent scheme, as they suggest. The admissions of the plea merely set the floor respecting the Individual Defendants' knowledge –

7

not the ceiling. Indeed, the Complaint specifically alleges continuing deceptive conduct outside of the time period during which the Individual Defendants and Purdue admitted that the misrepresentations were occurring. The fact that the Individual Defendants pled guilty to a crime that attaches due to their failure to stop misbranding that they had the power to prevent, at the very least demonstrates that discovery might well disclose facts not currently known to Plaintiff regarding these individuals' personal knowledge of and involvement in the scheme. By its very nature the **nationwide** and **uniform strategy** which Plaintiff alleges, *see* Complaint, ¶¶ 33, 38, 39, 40, 48, could not have succeeded for the many years during which Plaintiff alleges it was employed without the knowledge, if not active encouragement, of Purdue's top executives.

In the event that this Court determines that the Complaint, as it now stands, does not meet the requirements of Rule 9(b), this Court should grant Plaintiff the opportunity to conduct discovery and amend its Complaint to offer more specific allegations about the Individual Defendants' roles in the fraudulent marketing of Oxycontin.

              Respectfully submitted,

              SEEGER WEISS LLP

              By /s/Christopher A. Seeger
               Christopher A. Seeger, Esq. (CS-4880)
               David R. Buchanan, Esq.
               One William Street
               New York, NY 10004
               Tel: (212) 584-0700
               Fax: (212) 584-0799
               *Plaintiff's Lead and Liaison Counsel*

Jonathan Shub, Esq. (pro hac vice)
TerriAnne Benedetto, Esq. (pro hac vice)
SEEGER WEISS LLP
1515 Market Street
Suite 1380
Philadelphia, PA   19102
Tel:  215-564-2300
Fax:  215-851-8029
*Attorneys for Plaintiff*

Arnold Levin, Esq. (pro hac vice)
Fred S. Longer, Esq.
LEVIN, FISHBEIN, SEDRAN
 & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA   19106
Tel:  215-592-1500
Fax:  215-592-4663
*Attorneys for Plaintiff*

Shane Youtz, Esq. (pro hac vice)
YOUTZ & VALDEZ, P.C.
900 Gold Avenue, SW
Albequerque, NM   87102
Tel:  505-244-1200
Fax:  505-244-9700
*Attorneys for Plaintiff*

James R. Dugan, II, Esq. (pro hac vice)
Douglas R. Plymale, Esq. (pro hac vice)
Stephen B. Murray, Jr., Esq.
Stephen B. Murray, Sr. Esq.
MURRAY LAW FIRM
650 Poydras Street, Suite 2150
New Orleans, LA   70130
Tel:  504-648-010
Fax:  504-648-0181
*Plaintiff's Lead Counsel*

Arthur Sadin, Esq. (pro hac vice)
SADIN LAW FIRM, P.C.
121 Magnolia Street
Suite 102
Friendswood, TX   77546
Tel:  281-648-7711
Fax:  281-648-7799
*Attorneys for Plaintiff*

9