**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| NEW MEXICO UNITED FOOD AND COMMERCIAL WORKERS UNION'S AND EMPLOYERS' HEALTH AND WELFARE TRUST FUND, on behalf of itself and all others similarly situated, | : : : : : : | |
| Plaintiff | : : | 07-CV-6916 (JGK) |
| v. | : : : | Electronically Filed |
| PURDUE PHARMA L.P., *et al.*, | : : | |
| Defendants. | : : | |

**REPLY MEMORANDUM IN SUPPORT OF**
**ABBOTT LABORATORIES' AND ABBOTT**
**LABORATORIES, INC.'S MOTION TO DISMISS**

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................1

II.   ARGUMENT.......................................................................................2

      A.    Plaintiff Still Has Not Identified Any Specific
            Allegations of Abbott Wrongdoing in the Complaint ..................2

            1.    The Guilty Plea ...................................................................2

            2.    The West Virginia (McGraw) Case ..................................3

            3.    The Co-Promotion Agreement...........................................4

      B.    Plaintiff's Legal Arguments Do Not Resurrect Its RICO
            Claims Against Abbott...............................................................5

      C.    Regardless of Whose Law Applies, Plaintiff's Consumer
            Protection and Unjust Enrichment Claims Fail For Lack
            of Causation ..............................................................................7

      D.    Amendment of the Complaint is Not a Viable Option
            Here............................................................................................9

III.  CONCLUSION...................................................................................10

# TABLE OF AUTHORITIES

**Case**                                                                                   **Page(s)**

*Baisch v. Gallina*, 346 F.3d 366 (2d Cir. 2003)....................................................................7

*Barrett v. U.S. Banknote Corp.*, 806 F. Supp. 1094 (S.D.N.Y. 1992)................................10

*Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*,
    187 F.3d 229 (2d Cir. 1999).......................................................................................7

*Dietrich v. Bauer*, 76 F. Supp. 2d 312 (S.D.N.Y. 1999).......................................................6

*JSC Foreign Economic Ass'n Technostroyexport v. Weiss*,
    2007 WL 1159637 (S.D.N.Y. Apr. 18, 2007)............................................................7

*Kamen v. American Tel. & Tel.*, 791 F.2d 1006 (2d Cir. 1986)............................................2

*Lucente v. Int'l Business Machines Corp.*, 310 F.3d 243 (2d Cir. 2002) ............................9

*McConnell v. Fed. Election Comm'n*, 540 U.S. 93 (2003)....................................................9

*McCoy v. Macon Water Auth.*, 966 F. Supp. 1209 (M.D. Ga. 1997)....................................4

*Mertens v. Hewitt Assocs.*, 508 U.S. 248, 257 (1993) ..........................................................3

*Ortho Pharm. Corp. v. Cosprophar, Inc.*, 32 F.3d 690 (2d Cir. 1994)................................8

*Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329 (S.D. Fla. 2007)...........................................8

*Reading Int'l v. Oaktree Capital Mgt. LLC*, 317 F. Supp. 2d 301 (S.D.N.Y. 2003)...........9

*Rosner v. Bank of China*, ___ F. Supp. 2d ___, 2007 WL 4468654
    (S.D.N.Y. Dec. 19, 2007)............................................................................................6

*Salinas v. U.S.*, 522 U.S. 52 (1997) ................................................................................6, 7

*U.S. v. Guzman-Landeros*, 207 F.3d 1034 (8th Cir. 2000)...................................................3

OTHER AUTHORITIES

18 U.S.C. § 1962(c) ..................................................................................................5

18 U.S.C. § 1962(d) ...............................................................................................5, 7

Fed. R. Civ. P. 9(b) ................................................................................................6

Fed. R. Civ. P. 12(b)(1).........................................................................................2

Fed. R. Civ. P. 12(b)(6)........................................................................................10

Rule 15(a).............................................................................................................10

Defendants Abbott Laboratories and Abbott Laboratories, Inc. (collectively, "Abbott"), by their undersigned attorneys, submit this reply memorandum in support of their motion to dismiss Plaintiff's claims against Abbott.

## I.  INTRODUCTION

Abbott in its motion to dismiss papers challenged Plaintiff to point to specific allegations against Abbott sufficient to name Abbott as a defendant in this case. Rather than doing so in opposition to Abbott's motion, Plaintiff again directs the Court to the guilty plea by the Purdue and Individual Defendants. Opposition at 4. Plaintiff then identifies and quotes repeatedly from a West Virginia state court order denying summary judgment (in a case involving allegations different from those presented here), *id.* at 3-5, which order the same West Virginia court rescinded the next day and ordered removed from the court's files, *see* ex. 1. Finally, Plaintiff asks the Court to assume by virtue of the mere existence of an OxyContin co-promotion agreement between Purdue and Abbott that Abbott engaged in the same type of conduct to which the Purdue and Individual Defendants pled guilty. *Id.* at 4. Indeed, as to this final point, Plaintiff admittedly is only able to make this allegation "on information and belief." *Id.*

None of this should distract the Court from the basic fact that the Complaint contains no specific allegations of Abbott wrongdoing purportedly causing Plaintiff injury. Plaintiff's obviously improper reliance on (1) a guilty plea involving only the other defendants, (2) a void court order that Plaintiff tries to pass off as a valid one, and (3) sheer innuendo cannot compensate for the Complaint's deficiencies as to Abbott.

## II.    ARGUMENT

### A.    Plaintiff Still Has Not Identified Any Specific Allegations Of Abbott Wrongdoing In The Complaint

#### 1.    The Guilty Plea

Without acknowledging the unavoidable truth that the Purdue guilty plea is the centerpiece of the Complaint, Plaintiff argues that the release executed in connection with the plea agreement – which specifically releases "co-promoters" like Abbott -- cannot be considered in connection with Abbott's motion to dismiss. Opposition at 5 n.3. Plaintiff does so even though it admits in the immediately preceding footnote that "'[i]t is well established that in resolving a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), a district court may refer to evidence outside the pleadings.' *See Kamen v. American Tel. & Tel.*, 791 F.2d 1006, 1011 (2d Cir. 1986)." *Id.* at 3 n.2.

Plaintiff then unabashedly makes the wildly speculative and unsupported assertion that "Virginia's decision not to prosecute Purdue's co-promoters (*i.e.*, Abbott) in exchange for guilty pleas suggests that Virginia could have prosecuted claims against Abbott but decided instead to employ its prosecutorial discretion to end the litigation with the several guilty pleas it did obtain." *Id.* at 5 n.3. That Plaintiff would make such a facially suspect allegation in opposing Abbott's motion to dismiss shows the lengths to which it will go to attempt to keep Abbott in this case. *See also* Part I.B, *infra*. The simple fact is that Abbott was not and is not implicated in any way in the guilty plea on which Plaintiff premises this lawsuit, and Plaintiff cannot produce a shred of evidence to the contrary.

## 2.    The West Virginia (McGraw) Case

Tacitly admitting that the allegations in the Complaint are insufficient as to

Abbott, Plaintiff resorts in its Opposition to citing and quoting repeatedly a West Virginia

state trial court order denying summary judgment in another OxyContin case involving

Purdue and Abbott. *See* Opposition at 3-5. Despite the frequent references to the West

Virginia order – which arose in a non-RICO case[1] – Plaintiff conveniently fails ever to

mention to the Court that the order on which it so heavily relies was later ***rescinded*** by

the very same West Virginia court and ordered ***removed*** from that court's files.

While Plaintiff attached as Exhibit A to its Opposition all 23 pages of the

rescinded November 15, 2004 order, it did not attach or make any reference to Judge

Stephens' subsequent order (entered the following day and attached hereto as Exhibit 1).

That November 16, 2004 order clearly states that "[i]n light of the settlement reached

between the Plaintiffs and Purdue Pharma, [t]he [November 15, 2004] Order[] w[as]

*inadvertently and mistakenly entered* by the Court.   Therefore, based on the foregoing,

the Court on its own motion hereby rescinds the filing and entrance of the[] Orders[] and

further Orders that the[] Order[] be *removed* from the Court file." Ex. 1 (emphasis

added).

It is axiomatic that an opinion that has been withdrawn by the court has no

precedential value and is, in essence, a nullity. *U.S. v. Guzman-Landeros*, 207 F.3d 1034,

1035 (8th Cir. 2000) ("a withdrawn decision . . . is not the law of this circuit"); *see also*

*Mertens v. Hewitt Assocs.*, 508 U.S. 248, 257 n.7 (1993) (reliance on an opinion that

---

[1]    As Plaintiff has emphasized and as the Complaint makes clear, this is a RICO case. The West
Virginia Attorney General asserted no RICO claims whatsoever.  Indeed, the West Virginia case involved
only West Virginia state law claims.

"was formally withdrawn after being vacated on other grounds" was "unfounded");
*McCoy v. Macon Water Auth.*, 966 F. Supp. 1209, 1222 (M.D. Ga. 1997) (court
recognizing that its own reliance on a withdrawn opinion was "a clear mistake").

In this instance, the West Virginia court itself stated that the November 15, 2004
order was entered by "mistake" and had been withdrawn and removed from the Court
file. Plaintiff's concealment of this essential fact from this Court and, even worse, its
repeated citation and quotation of the order as "evidence" bolstering its naming of Abbott
as a defendant in this case again shows the lengths to which it will go to forge a claim
against Abbott. Plaintiff relies on the West Virginia case order as support for the
otherwise wholly unsupported claim that Abbott actually engaged in some wrongful
conduct. Opposition at 9. Not only should the Court disregard the rescinded November
15, 2004 West Virginia court order and Plaintiff's repeated quotations to same, it should
view Plaintiff's heavy reliance on that void order and its failure to disclose that the order
was withdrawn the next day as a tacit admission that Plaintiff has no factual support for
filing this lawsuit against Abbott.

### 3.    The Co-Promotion Agreement

Plaintiff in its Opposition also continues its chronic failure to distinguish between
Abbott and the other defendants. For example, Plaintiff asserts that "Abbott *and the
other Defendants* devised an aggressive, **nationwide** and **uniform** strategy to market
OxyContin." Opposition at 3 (italicized emphasis added).[2] Lest the Court be further
misled, it should be emphasized that the parties to the co-promotion agreement were

---

[2]    Plaintiff elsewhere in its Opposition distinguishes between Purdue and the Individual defendants,
which suggests that its attempt to blur that distinction here is not merely inadvertent.

Abbott and the Purdue Defendants. The Individual Defendants – who, along with the Purdue Defendants, were parties to the plea agreement – were **not** parties to the co-promotion agreement and Abbott had no legal, contractual or employment relationship with those Defendants. Even in its Opposition, after Abbott has clearly raised the issue of its limited role in the co-promotion of OxyContin, Plaintiff continues to attempt to blur this undisputed distinction.

**B.    Plaintiff's Legal Arguments Do Not Resurrect Its RICO Claims Against Abbott.**

Plaintiff's response fails to challenge seriously Abbott's attack on the 18 U.S.C § 1962(c) and 1962(d) counts of the Complaint. Indeed, Plaintiff mistakenly claims that Abbott's motion challenged only Plaintiff's ability to demonstrate Abbott's participation in a "pattern" of racketeering activity, without challenging Plaintiff's ability to prove the other elements of a 1962(c) action. However, Abbott's motion clearly stated that "Plaintiff has completely failed to allege any specific misconduct **by Abbott**" that would suffice to demonstrate the seven elements of a section 1962(c) claim. Motion at 11-12 (emphasis in original).

Plaintiff admits that the elements of a 1962(c) claim must be established as to each defendant, but once again seeks to blur the distinction between Purdue and Abbott without providing any substantive connection between any alleged RICO violation and Abbott. Plaintiff baldly asserts that the Complaint refers to numerous instances of parallel conduct by both Abbott and Purdue, and that such conduct amounts to a pattern of racketeering activity, but the allegations referenced do not identify any specific Abbott conduct and contain conclusory and generic allegations regarding "Defendants'" conduct. *See* Opposition at 2-5, 12 (referring to Complaint at ¶¶ 29, 33, 38, 39, 40, 48). Plaintiff's

inability to set forth any facts regarding Abbott's role in any alleged RICO violation
beyond the mere existence of a co-promotion agreement with Purdue renders the claim
under 1962(c) deficient and subject to dismissal. *See Rosner v. Bank of China,* ___ F.
Supp. 2d ___, 2007 WL 4468654, at * 8-10, 11 (S.D.N.Y. Dec. 19, 2007) (motion to
dismiss RICO claims was granted when the only facts alleged to support the existence of
a RICO enterprise and defendant's participation in an enterprise were allegations that
defendant provided a general professional service to other defendants) (citing, *inter alia,*
*Dietrich v. Bauer,* 76 F. Supp. 2d 312, 347 (S.D.N.Y. 1999) ("RICO liability may not be
imposed on a defendant who merely carries on its own professional activities.")). Indeed,
the only Abbott conduct discussed with any specificity in Plaintiff's Opposition is what
Plaintiff improperly quoted from the withdrawn West Virginia order.[3]

Plaintiff's arguments regarding the sufficiency of a RICO conspiracy claim fail to
address Plaintiff's inability to demonstrate Abbott's agreement to facilitate or participate
in a scheme to violate RICO's substantive provisions. In *Salinas v. United States,* the
Supreme Court held that in order to be guilty of conspiracy under § 1962(d), a plaintiff
must show that a conspirator "intend[ed] to further an endeavor which, if completed,
would satisfy all of the elements of a substantive criminal offense...." 522 U.S. 52, 65
(1997).[4] As further articulated by the Second Circuit, "[t]o establish the existence of a
RICO conspiracy, a plaintiff must prove the existence of an agreement to violate RICO's
substantive provisions," and "that if the agreed-upon predicate acts had been carried out,

---

[3]     Similarly, Plaintiff's RICO claim as to Abbott fails to meet the heightened pleading standard
required by Fed. R. Civ. P. 9(b). Even Plaintiff admits that under that standard, fraud allegations must be
based, at the very least, on a statement of fact supporting the allegations. Opposition at 15.

[4]     Plaintiff in its Opposition correctly points out that *Salinas* clarified the requirements of a 1962(d)
claim. However, that clarification does nothing to salvage Plaintiff's 1962(d) claim against Abbott.

[it] would have constituted a pattern of racketeering activity." *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 242 (2d Cir. 1999) (citing *Salinas*, 522 U.S. at 64-65). It is the conspirator's agreement to act in furtherance of an endeavor, whether by agreeing to engage in the predicate acts or by agreeing to facilitate the scheme in some other way, that forms the heart of an action for violation of 18 U.S.C § 1962(d). *Salinas*, 522 U.S. at 64-65; *Baisch v. Gallina*, 346 F.3d 366, 377 (2d Cir. 2003) (in a civil RICO conspiracy claim, a plaintiff must allege that defendant "knew about and agreed to facilitate the scheme.").

Plaintiff has failed to allege facts demonstrating that Abbott knew about and agreed to facilitate a scheme to violate RICO's substantive provisions, and as set forth in Abbott's motion to dismiss, Plaintiff's numerous conclusory allegations and description of Purdue and Abbott as "co-conspirators" are not sufficient to state a claim of conspiracy under the RICO statute. This Court has previously discussed the level of detail necessary to plead a 1962(d) claim, and has denied a motion to dismiss a claim under 1962(d) when the Complaint contained "*extensive* allegations describing how...[defendants] worked...to conceal and launder funds through a variety of transactions, including allegations that [one defendant] advised [other defendants] to employ certain money laundering schemes...." *See JSC Foreign Economic Ass'n Technostroyexport v. Weiss*, 2007 WL 1159637, * 10 (S.D.N.Y. Apr. 18, 2007) (Koeltl, J.) (emphasis added). No such extensive allegations as to Abbott's conduct are present in the Complaint.

## C.    Regardless Of Whose Law Applies, Plaintiff's Consumer Protection And Unjust Enrichment Claims Fail For Lack Of Causation.

Although offering no choice of law analysis of its own, Plaintiff chides Abbott for its purportedly "inconsistent" and "selective" application of state law in challenging

Plaintiff's consumer protection and unjust enrichment claims. Opposition at 18, 22.
Plaintiff even suggests that despite what it concedes is its exclusively New Mexico
citizenship, it has standing to represent a potential class of third-party payors seeking to
enforce the consumer protection statutes of all fifty states. *Id.* at 19.

Whether that bold proposition has any merit or may simply be deferred, as
Plaintiff ultimately requests (*id.*), Plaintiff does not dispute that regardless of whose law
applies, it must allege a causal link between some specific Abbott wrongdoing and some
economic injury/loss that Plaintiff allegedly incurred. *See, e.g., id.* at 20 (acknowledging
that under the New Mexico Unfair Practices Act, Plaintiff is required to allege that it lost
money "as a result of . . . an unfair trade practice"). Plaintiff takes pains to point out the
latter. *See id.* at 10-11 (identifying alleged OxyContin payment-related injuries).
However, as noted above and in Abbott's opening memorandum, Plaintiff never connects
those OxyContin pricing-related losses to anything that Abbott did or did not do.[5]

Again, it is not enough merely to rely on the Purdue plea agreement as Plaintiff
does and then to suggest that in light of Abbott's co-promotional relationship with
Purdue, Abbott "on information and belief" must have "utilized the same deceptive and
aggressive marketing tactics as those utilized by Purdue." Complaint at ¶ 67. Regardless
of the legal theory – whether it be RICO, consumer protection or unjust enrichment –
because Plaintiff has not connected a specific injury to a specific, *illegal* Abbott act or
omission,[6] Plaintiff cannot maintain this lawsuit against Abbott. *Ortho Pharm. Corp. v.*

---

[5]       Indeed, as the Purdue and Individual Defendants have argued, even if Plaintiff had alleged a
connection with Abbott, Abbott would still be entitled to dismissal based on Plaintiff's lack of standing.
The court recognized this lack of standing under nearly identical circumstances in *Prohias v. Pfizer, Inc.*,
485 F. Supp. 2d 1329, 1336 (S.D. Fla. 2007).

[6]       After all, there is nothing illegal about co-promoting a legal product.

*Cosprophar, Inc.*, 32 F.3d 690, 697 (2d Cir. 1994) (a court may not "mak[e] presumptions of injury and causation favorable to the plaintiff"); *see also McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 107-08 (2003) (articulating "the standing requirement that the[] injury be "fairly traceable" to [the alleged misconduct]").

Plaintiff's unjust enrichment claim further highlights the lack of a causal connection between Plaintiff and Abbott. As this Court has recognized, an unjust enrichment claim is a "quasi-contractual remedy" that is "an alternative to contract, where a contractual relationship has legally failed." *Reading Int'l v. Oaktree Capital Mgt. LLC*, 317 F. Supp. 2d 301, 333-34 (S.D.N.Y. 2003). Here, as in the *Reading* case, "Plaintiff[] ha[s] not alleged that [it] had a contractual or quasi-contractual relationship with defendant[ Abbott], and in fact ha[s] alleged no prior course of business dealings with defendant[ Abbott] whatsoever." *Id.* at 334. Stated perhaps most simply, that Plaintiff alleges no direct or even indirect dealings with Abbott precludes not only its quasi-contractual unjust enrichment claim, it entitles Abbott to dismissal of all of Plaintiff's claims.

**D.    Amendment Of The Complaint Is Not A Viable Option Here.**

Again, Plaintiff points in its Opposition to only two sources of "evidence" outside the Complaint in an unsuccessful effort to supplement the deficient Complaint – the Purdue plea agreement and the rescinded West Virginia court order. The former quite clearly has no application to Abbott and the latter is without any force or effect according to the very court that mistakenly issued it. As Plaintiff therefore seems to concede, amending the Complaint to specify the Abbott wrongdoing that allegedly caused Plaintiff injury would be an act of futility. *Lucente v. Int'l Business Machines Corp.*, 310 F.3d

BA2/326313

9

243, 258 (2d Cir. 2002) (an amendment to a pleading is futile if the proposed claim could

not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)) (citations

omitted); *Barrett v. U.S. Banknote Corp.*, 806 F. Supp. 1094, 1098 (S.D.N.Y. 1992)

("Leave to amend will not be granted under Rule 15(a)...where there are no colorable

grounds for the proposed claim-that is, where amendment would prove futile....").  After

over three months in which to respond to Abbott's motion to dismiss, all that Plaintiff can

now point to in support of its claims against Abbott are an inapplicable plea agreement

and a void state court order.

### III.    CONCLUSION

For the reasons stated above and set forth in Abbott's initial memorandum, the

Court should dismiss the Complaint as to Abbott.

Respectfully submitted,

*Attorneys for Defendants*
*Abbott Laboratories and Abbott*
*Laboratories, Inc.*

By:    Michael C. Hartmere

Michael C. Hartmere (MH-6839)
VENABLE LLP
405 Lexington Avenue
Chrysler Building, 56th Floor
New York, New York 10174
(212) 307-5500 (voice)
(212) 307-5598 (fax)

Of Counsel:

Paul F. Strain
M. King Hill, III
VENABLE LLP
1800 Mercantile Bank & Trust Building
2 Hopkins Plaza
Baltimore, Maryland  21201
(410) 244-7400 (voice)
(410) 244-7742 (fax)

BA2/326313

10