UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEW MEXICO UNITED FOOD AND COMMERCIAL WORKERS UNION'S AND EMPLOYERS' HEALTH AND WELFARE TRUST FUND, on behalf of itself and all others similarly situated,<br><br>        Plaintiff,<br><br>  v.<br><br>PURDUE PHARMA L.P., et al.,<br><br>        Defendants. | **Civil Action No. 07-cv-6916-JGK** |

## THE INDIVIDUAL DEFENDANTS' REPLY BRIEF
## IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS

Donald I Strauber
Mary T. Yelenick
Phoebe A. Wilkinson
Gretchen N. Werwaiss
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 408-5100
Facsimile: (212) 541-5369

*COUNSEL FOR*
*THE INDIVIDUAL DEFENDANTS*

Chilton D. Varner
Stephen B. Devereaux
King & Spalding LLP
1180 Peachtree Street, NE
Atlanta, GA 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

Patrick S. Davies
Joshua D. Greenberg
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Tel: 202.662.6000
Fax: 202.662.6291

*OF COUNSEL FOR*
*THE INDIVIDUAL DEFENDANTS*

Defendants Michael Friedman, Howard Udell, and Paul Goldenheim respectfully submit this Reply in Support of their Motion for Judgment on the Pleadings.

## INTRODUCTION

The rhetoric of Plaintiff's response brief speaks volumes about the sufficiency (or lack thereof) of its allegations against the Individual Defendants. Instead of the kind of particularized allegations of fact required by Rule 9(b), Plaintiff relies on terms like "reasonably infer," "must have known," "presumably," and "plausible inference" in an attempt to link the Individual Defendants to the misconduct attributed to Purdue. This is not enough. To hold individual corporate officers personally liable for the acts of their organization, Plaintiff must plead with particularity that the officers in question directed or were otherwise involved in the alleged misconduct. That the Complaint is devoid of any such allegations should be no surprise. Over the course of *four* years, a team of investigators and lawyers at the FBI and Justice Department reviewed *millions* of internal company documents and interviewed *hundreds* of witnesses. At the end of this exhaustive investigation, the U.S. Attorney for the Western District of Virginia determined that he lacked the evidence to charge the Individual Defendants with either knowledge of or direct involvement in the misbranding that gave rise to the indictment and plea agreements. It would be grossly unfair to these three individuals to permit Plaintiff to replicate this costly and invasive process here only to reach the same result. Enough is enough. The claims against the Individual Defendants should be dismissed with prejudice.[1]

---

[1] The Individual Defendants also adopt the arguments in the Purdue Defendants' Reply in Support of Their Motion For Judgment on the Pleadings as if set forth herein.

# ARGUMENT

*Plaintiff makes no effort to distinguish or rebut the authority cited by the Individual Defendants setting forth the applicable pleading standards.* In their opening brief, the Individual Defendants cited extensive authority describing the heightened scrutiny applicable in this Circuit to attempts to plead RICO and other fraud-based claims against individual defendants. (*See* Defs.' Memo. at 1-3.) That pleading standard is particularly high where corporate and individual defendants are sued together. (*Id.*) Remarkably, instead of trying to distinguish or rebut this authority, Plaintiff argues that it is permitted to do exactly what these cases forbid: lump the corporate and individual defendants together and accuse every defendant of engaging in every alleged act. (*See* Pl.'s Opp. at 3 (arguing that "[e]very paragraph setting forth the details of the vast fraudulent scheme charges that it was 'defendants,' including the Individual Defendants, who perpetrated the scheme").) This technique is not only contrary to the law in this circuit, it is fatal to Plaintiff's claims against the Individual Defendants.

*The two cases cited by Plaintiff serve only to highlight the deficiencies in Plaintiff's allegations against the Individual Defendants.* Plaintiff's reliance on the two cases the Individual Defendants cited in support of their motion is puzzling. *See Cohen v. Koenig*, 25 F.3d 1168 (2d Cir. 1994) and *Stinson v. Berry*, 943 P.2d 129 (N.M. Ct. App. 1997). Indeed, the facts of both *Cohen* and *Stinson* serve only to highlight the deficiencies in Plaintiff's allegations. In *Cohen*, for example, the plaintiffs brought a lawsuit against two corporate officers alleging that the officers were directly involved in financial transactions with the plaintiffs and made specific misrepresentations directly to the plaintiffs on numerous occasions regarding the value of certain business entities. *See Cohen*, 25 F.3d at 1170-71, 1172-73. The plaintiffs also claimed to have relied on the misrepresentations to their detriment and lost their investments after the defendants'

companies filed for bankruptcy. *Id.* at 1171. The court acknowledged that the district court should not have dismissed the plaintiffs' complaint because the plaintiffs alleged that "the [corporate officers] themselves made misrepresentations." *Id.* at 1173. Obviously, there are no such allegations here.

In *Stinson*, the plaintiffs sued a company, its president, and its vice-president for wrongful death. The decedent, an employee of the company, was killed when using a welding procedure designed by the president. The court affirmed the *dismissal* of the claims against the vice-president even though the vice-president knew of the procedure, because the vice-president did not have control over the company's operations and did not "participate in, supervise, or dire[c]t the [procedure]." *Id.* at 133. In other words, mere knowledge of the conduct in question is not sufficient, standing alone, to expose a corporate executive to individual liability. Because it was undisputed that the president was both knowledgeable about and directly involved in the design and implementation of the welding procedure that allegedly harmed the decedent, his liability turned on whether he personally had had an individual duty of care to the decedent (separate and apart from his duty as a corporate officer). This question is not, of course, before this Court. *Id.* at 134. In any event, far from bolstering Plaintiff's position here, *Stinson* and *Cohen* serve only to accentuate the deficiencies in Plaintiff's allegations against the Individual Defendants.

***The few allegations that purport to single out the three individuals fall far short of the heightened particularity required in this Circuit.*** Plaintiff's allegations that the Individual Defendants had actual knowledge of and/or actively participated in the alleged wrongdoing consist of the following: Mr. Friedman received a letter from the FDA in 2003, Dr. Goldenheim

3

testified before the Senate in 2002, and Mr. Udell was Purdue's General Counsel. (Pl.'s Opp. at 6.) None comes anywhere close to satisfying Plaintiff's pleading burden.

*Michael Friedman.* In 2003, Michael Friedman did receive a letter from the FDA complaining about an advertisement that appeared in two issues of the Journal of the American Medical Association in the fall of 2002.[2] Critically, the FDA's letter does not address any of the alleged misconduct that gave rise to the plea agreements and does not support the allegation that the plea-related conduct continued beyond July 2001. Nor does it accuse Mr. Friedman of being personally aware of or involved in any alleged misconduct either at the time the letter was sent or before.[3] Mr. Friedman simply received the letter in his capacity as an officer of the company. At best, the letter establishes only that Mr. Friedman was made aware of something that had already occurred. Obviously, learning of something after the fact does not give rise to "retroactive" liability. Plaintiff's reliance on this episode is thus completely misplaced.

*Paul Goldenheim.* Plaintiff makes much of the fact that, in 2002, Dr. Goldenheim testified before Congress concerning Purdue's marketing and promotion of OxyContin. According to Plaintiff, this testimony is a veritable "smoking gun," somehow establishing that Dr. Goldenheim was both aware of and involved in the alleged fraud. (Pl.'s Opp. at 4.)

---

[2] Those advertisements did not contain any allegedly false statements and included all warnings required by the FDA. Instead, the FDA focused on the positioning and prominence of the boxed warning (implemented in July 2001), which was contained in its entirety on the second page of the advertisement. *See* JAMA advertisement attached as Exhibit A to Feb. 19 Strauber Decl. ("Strauber Decl."). Because Plaintiff cited to the advertisement in its Complaint, it can be considered by the Court. *Druyan v. Jagger*, 508 F. Supp. 2d 228, 235-36 (S.D.N.Y. 2007) ("In deciding a motion to dismiss, this Court may consider the full text of *documents that are quoted in the complaint or documents that the plaintiff either possessed or knew about and relied upon in bringing the suit*. Therefore, this court may consider a document not expressly incorporated by reference in a complaint without converting a 12(b)(6) motion into a motion for summary judgment where the document is 'integral to the complaint.'") (citations omitted) (emphasis in original).

[3] For his part, and despite the fact that he was fully aware of the warning letter, the U.S. Attorney did not treat the FDA's letter as some sort of continuation of the conduct that gave rise to the pleas. As bears repeating, the conduct giving rise to the plea occurred well over a year before the advertisements in question were published.

4

Actually, the opposite is true. Far from some kind of admission of liability, the testimony in question establishes only that Dr. Goldenheim was *unaware* of the alleged misconduct. (*See* Compl. ¶ 63.) This is, of course, completely consistent with both the results of the government's exhaustive investigation of Purdue (and its officers) and the misdemeanor "strict liability" violation Dr. Goldenheim was ultimately charged with. Indeed, had the government believed that Dr. Goldenheim offered knowingly false testimony to Congress, he would also have been charged with perjury. Inferring something nefarious from this testimony may suggest the work of an overheated imagination, but it has no basis in well-pleaded fact.

*Howard Udell.* As for Mr. Udell, Plaintiff relies exclusively on the fact that Mr. Udell served as "the head in-house attorney" during the relevant time period. (Pl.'s Opp. at 6.) According to Plaintiff, this is sufficient, standing alone, to give rise to an inference of liability. Plaintiff cites no authority for this remarkable proposition because there is none. Suffice to say if it was permissible to impose liability on an individual merely by virtue of his or her having served as in-house counsel, it would be very difficult (if not impossible) to convince anyone to take on this critical role. This is not just bad policy, but totally at odds with the letter and spirit of Rules 8 and 9(b). *Carell v. Shubert Org., Inc.*, 104 F. Supp. 2d 236, 270-71 (S.D.N.Y. 2000) (dismissing claim against individual defendant for plaintiff's failure to satisfy Rule 8 when plaintiff merely alleged that individual was copied on a letter threatening legal action and served as chairman of a defendant company); *Beauford v. Helmsley*, 740 F. Supp. 201, 213 (S.D.N.Y. 1990) (dismissing plaintiffs' RICO claim when plaintiffs failed "to particularize the roles of the individual defendants in perpetrating the allegedly fraudulent acts, as is required by Rule 9(b)").

**Plaintiff's insistence that a cause of action against the Individual Defendants can be "inferred" from the plea agreements is exactly the kind of unwarranted deduction of fact**

5

***Rules 8 and 9(b) were designed to prevent.*** Having failed to come forward with any well-pleaded factual basis for its claim against the Individual Defendants, Plaintiff asserts that such a claim can be somehow inferred from the plea agreements themselves. In doing so, Plaintiff claims that "the Individual Defendants did not deny knowledge of each and every statement in [the plea agreement]," and that the comments of John Brownlee, the U.S. Attorney who prosecuted the case, do not support the fact that the Individual Defendants only pled guilty as responsible corporate officers. (*Id.* at 7.) As a threshold matter, it is just not possible to infer knowledge of the misbranding from the mere fact that the Individual Defendants did not deny knowledge of each and every allegation of the Agreement Statement of Facts. Indeed, this is the very definition of an unwarranted deduction of fact. The Individual Defendants obviously could not issue a blanket denial because this would have meant denying knowledge of their own names and positions at the company as well as of many other innocuous facts (e.g., the date of FDA's approval of OxyContin).

Nor is there anything in the excerpt from Mr. Brownlee's press release quoted by Plaintiff that suggests that the Individual Defendants were aware of or involved in the misbranding. In reality, both the district court judge who approved the plea agreements and Mr. Brownlee acknowledged that the government's exhaustive investigation failed to establish these putative facts.

In its Order approving the plea agreements, for example, the district court determined that prison sentences for the Individual Defendants were "not appropriate" in the "absence of government proof of knowledge by the individual defendants of the wrongdoing." *U.S. v. Purdue Frederick Co.*, No. 1:07CR00029 at 3, 15-16 (W.D. Va. July 23, 2007) (Order) (Ex. B to Strauber Decl.).

6

Similarly, in a statement to the Senate Committee on the Judiciary, Mr. Brownlee stated that the Individual Defendants "pled guilty to strict liability misdemeanor offense based on the fact that they were responsible corporate officials . . . the misdemeanor charge required no proof of intent or actual knowledge of the violations to establish their guilt." *See* Senate Judiciary Hr'g Tr., dated July 31, 2007 at 9 (Ex. C to Strauber Decl.); *see also* Statement of Mr. Brownlee, dated July 31, 2007 at 5 (Ex. D to Strauber Decl.).[4] Even more directly, during the Senate hearing, in response to Senator Specter's inquiry regarding whether the Individual Defendants had knowledge of or participated in the alleged misconduct, Mr. Brownlee's denial was categorical: "The answer is no, sir." (Ex. C to Strauber Decl., at 11.) Mr. Brownlee further testified that, after an extensive investigation that included hundreds of interviews and review of millions of documents, he felt constrained by the evidence to limit the charge against the Individual Defendants to a strict liability misdemeanor. (*See id.* at 11, 29.)

In short, there is no basis either in the plea agreements or the Complaint to permit Plaintiff's RICO, consumer fraud, or unjust enrichment claims to go forward against the Individual Defendants. Moreover, given that the U.S. Government has already spent four years reviewing millions of internal company documents and interviewing hundreds of witnesses and was unable find a basis to charge the Individual Defendants with knowledge of any misconduct, there is no reason to permit Plaintiff to engage in discovery here in hopes of finding something the government somehow missed. This is exactly the sort of fishing expedition Rules 8 and 9(b)

---

[4] The Individual Defendants offer Mr. Brownlee's testimony and statement simply to illustrate why it is so improper to "infer" that the Individual Defendants either knew of or were involved in the misbranding described in the pleas from either statements Mr. Brownlee made in his press release (which is quoted in the Complaint) or from the other documents pertaining to the pleas (which are also incorporated by reference in the Complaint). In any event, the Court can take judicial notice of both of these documents. FRE 201; *United States v. Robinson*, 144 F.3d 104, 109 n.4 (1st Cir. 1998); *United States v. Berzon*, 941 F.2d 8, 14 n.9 (1st Cir.1991); *Johnson & Johnson v. Am. Nat'l Red Cross*, --- F. Supp. 2d ---, 2008 WL 40072, at *1 n.1 (S.D.N.Y. 2008) (citing *Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 127 S.Ct. 2499, 2509 (2007)); *Adarand Constructors, Inc. v. Slater*, 228 F.3d, 1147, 1168 n.12 (10th Cir. 2000).

7

were enacted to prevent. Plaintiff's claims against the Individual Defendants should therefore be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons and those set forth in their opening brief, the Individual Defendants' Motion for Judgment on the Pleadings should be granted.

s/Donald I Strauber

Donald I Strauber
Mary T. Yelenick
Phoebe A. Wilkinson
Gretchen N. Werwaiss
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY  10112
Telephone: (212) 408-5100
Facsimile: (212) 541-5369

*COUNSEL FOR THE
INDIVIDUAL DEFENDANTS*

Chilton D. Varner
Stephen B. Devereaux
King & Spalding LLP
1180 Peachtree Street, NE
Atlanta, GA  30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

Patrick S. Davies
Joshua D. Greenberg
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Tel: 202.662.6000
Fax: 202.662.6291

*OF COUNSEL FOR THE
INDIVIDUAL DEFENDANTS*