Westlaw.

--- S.Ct. ----                                                                                                                  Page 1
--- S.Ct. ----, 2008 WL 2329761 (U.S.)
**(Cite as: --- S.Ct. ----, 2008 WL 2329761 (U.S.))**

Bridge v. PhoenixBond & Indem. Co.
U.S.,2008.
Only the Westlaw citation is currently available.
Supreme Court of the United States
John BRIDGE et al., Petitioners,
v.
PHOENIXBOND & INDEMNITY CO. et al.
No. 07-210.

Argued April 14, 2008.
Decided June 9, 2008.

**Background:** Regular bidders at county's auctions of tax liens sued competitor and its principal under Racketeer Influenced and Corrupt Organizations Act (RICO), alleging that competitor had engaged in pattern of mail fraud by lying to county about its violating county's single simultaneous bidder rule. The United States District Court for the Northern District of Illinois, James F. Holderman, Chief Judge, 2005 WL 3527232, dismissed for lack of standing, and bidders appealed. The United States Court Of Appeals For The Seventh Circuit, 477 F.3d 928, reversed and remanded. Certiorari was granted.

**Holding:** The Supreme Court, Justice Thomas, held that bidders were not required to show that they relied on defendant's alleged misrepresentations to the county; abrogating *VanDenBroeck v. CommonPoint Mortgage Co.,* 210 F.3d 696 (C.A.6 2000); *Sikes v. Teleline, Inc.,* 281 F.3d 1350 (C.A.11 2002).

Affirmed.

**[1] Federal Courts 170B ⟬797**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)3 Presumptions
                170Bk797 k. Dismissal. Most Cited Cases
On appeal from grant of motion to dismiss, the Court of Appeals accepts as true all of the factual allegations contained in the complaint.

**[2] Racketeer Influenced and Corrupt Organizations 319H ⟬59**

319H Racketeer Influenced and Corrupt Organizations
    319HI Federal Regulation
        319HI(B) Civil Remedies and Proceedings
            319Hk56 Persons Entitled to Sue or Recover
                319Hk59 k. Business, Property, or Proprietary Injury; Personal Injuries. Most Cited Cases

**Racketeer Influenced and Corrupt Organizations 319H ⟬62**

319H Racketeer Influenced and Corrupt Organizations
    319HI Federal Regulation
        319HI(B) Civil Remedies and Proceedings
            319Hk56 Persons Entitled to Sue or Recover
                319Hk62 k. Causal Relationship; Direct or Indirect Injury. Most Cited Cases
Racketeer Influenced and Corrupt Organizations Act (RICO) provides a private right of action for treble damages to any person injured in his business or property by reason of the conduct of a qualifying enterprise's affairs through a pattern of acts indictable as mail fraud. 18 U.S.C.A. §§ 1341, 1964(c).

**[3] Postal Service 306 ⟬35(2)**

306 Postal Service
    306III Offenses Against Postal Laws
        306k35 Use of Mails to Defraud
            306k35(2) k. Nature and Elements of Offense in General. Most Cited Cases

**Postal Service 306 ⟬35(8)**

306 Postal Service
    306III Offenses Against Postal Laws
        306k35 Use of Mails to Defraud
            306k35(8) k. Effectiveness of Matter Mailed to Further Fraud. Most Cited Cases
The gravamen of the offense of mail fraud is the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

scheme to defraud, and any mailing that is incident to an essential part of the scheme satisfies the mailing element. 18 U.S.C.A. § 1341.

**[4]** Racketeer Influenced and Corrupt Organizations 319H ⛝10

319H Racketeer Influenced and Corrupt Organizations
    319HI Federal Regulation
        319HI(A) In General
            319Hk4 Racketeering or Criminal Activity
                319Hk10 k. Fraud in General. Most Cited Cases

Plaintiff asserting a civil Racketeer Influenced and Corrupt Organizations Act (RICO) claim predicated on mail fraud need not show as an element of its claim that it relied on the defendant's alleged misrepresentations; abrogating VanDenBroeck v. CommonPoint Mortgage Co., 210 F.3d 696 (C.A.6 2000); Sikes v. Teleline, Inc., 281 F.3d 1350 (C.A.11 2002). 18 U.S.C.A. §§ 1341, 1964(c).

**[5]** Postal Service 306 ⛝35(8)

306 Postal Service
    306III Offenses Against Postal Laws
        306k35 Use of Mails to Defraud
            306k35(8) k. Effectiveness of Matter Mailed to Further Fraud. Most Cited Cases

Racketeer Influenced and Corrupt Organizations 319H ⛝10

319H Racketeer Influenced and Corrupt Organizations
    319HI Federal Regulation
        319HI(A) In General
            319Hk4 Racketeering or Criminal Activity
                319Hk10 k. Fraud in General. Most Cited Cases

Using the mail to execute or attempt to execute a scheme to defraud is indictable as mail fraud, and hence a predicate act of racketeering under Racketeer Influenced and Corrupt Organizations Act (RICO), even if no one relied on any misrepresentation. 18 U.S.C.A. §§ 1341, 1961(1)(B).

**[6]** Racketeer Influenced and Corrupt Organizations 319H ⛝95

319H Racketeer Influenced and Corrupt Organizations
    319HI Federal Regulation
        319HI(C) Criminal Remedies and Proceedings
            319Hk92 Evidence
                319Hk95 k. Weight and Sufficiency. Most Cited Cases

No showing of reliance is required to establish that a person has violated Racketeer Influenced and Corrupt Organizations Act's (RICO) criminal prohibitions by conducting the affairs of an enterprise through a pattern of racketeering activity consisting of acts of mail fraud. 18 U.S.C.A. § 1962(c).

**[7]** Racketeer Influenced and Corrupt Organizations 319H ⛝10

319H Racketeer Influenced and Corrupt Organizations
    319HI Federal Regulation
        319HI(A) In General
            319Hk4 Racketeering or Criminal Activity
                319Hk10 k. Fraud in General. Most Cited Cases

When Congress established in the Racketeer Influenced and Corrupt Organizations Act (RICO) a civil cause of action predicated on a violation of the mail fraud statute, it did not incorporate reliance element of common-law fraud, since mail fraud was a statutory offense unknown to the common law. 18 U.S.C.A. §§ 1341, 1964(c).

**[8]** Racketeer Influenced and Corrupt Organizations 319H ⛝62

319H Racketeer Influenced and Corrupt Organizations
    319HI Federal Regulation
        319HI(B) Civil Remedies and Proceedings
            319Hk56 Persons Entitled to Sue or Recover
                319Hk62 k. Causal Relationship; Direct or Indirect Injury. Most Cited Cases

Plaintiff asserting a civil Racketeer Influenced and Corrupt Organizations Act (RICO) claim predicated on mail fraud need not show that it relied on the defendant's misrepresentations in order to establish the requisite element of causation. 18 U.S.C.A. §§ 1341, 1964(c).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**[9]** Fraud 184 ⚿20

184 Fraud
    184I Deception Constituting Fraud, and Liability Therefor
        184k19 Reliance on Representations and Inducement to Act
            184k20 k. In General. Most Cited Cases

Torts 379 ⚿106

379 Torts
    379I In General
        379k106 k. Nature and Elements of Torts in General. Most Cited Cases
Reliance is not a general limitation on civil recovery in tort; it is a specialized condition that happens to have grown up with common law fraud.

**[10]** Fraud 184 ⚿25

184 Fraud
    184I Deception Constituting Fraud, and Liability Therefor
        184k25 k. Injury and Causation. Most Cited Cases
While first-party reliance is an element of a common-law fraud claim, the legal injury from a fraudulent misrepresentation is not limited to only those who rely on it.

**[11]** Action 13 ⚿3

13 Action
    13I Grounds and Conditions Precedent
        13k3 k. Statutory Rights of Action. Most Cited Cases
It is not for the judiciary to eliminate the private action in situations where Congress has provided it.

*Syllabus*[FN*]

FN* The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States v. Detroit Timber & Lumber Co.,* 200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

**\*1** Each year the Cook County Treasurer's Office holds a public auction to sell its tax liens on delinquent taxpayers' property. To prevent any one buyer from obtaining a disproportionate share of the liens, the county adopted the "Single, Simultaneous Bidder Rule" (Rule), which requires each buyer to submit bids in its own name, prohibits a buyer from using "apparent agents, employees, or related entities" to submit simultaneous bids for the same parcel, and requires a registered bidder to submit a sworn affidavit affirming its compliance with the Rule. Petitioners and respondents regularly participate in the tax sales. Respondents filed suit, alleging that petitioners fraudulently obtained a disproportionate share of liens by filing false compliance attestations. As relevant here, they claim that petitioners violated and conspired to violate the Racketeer Influenced and Corrupt Organizations Act (RICO) through a pattern of racketeering activity involving mail fraud, which occurred when petitioners sent property owners various notices required by Illinois law. The District Court dismissed the RICO claims for lack of standing, finding that respondents were not protected by the mail fraud statute because they did not receive the alleged misrepresentations. Reversing, the Seventh Circuit based standing on the injury respondents suffered when they lost the chance to obtain more liens, and found that respondents had sufficiently alleged proximate cause because they were immediately injured by petitioners' scheme. The court also rejected petitioners' argument that respondents are not entitled to relief under RICO because they had not received, and therefore had not relied on, any false statements.

*Held:* A plaintiff asserting a RICO claim predicated on mail fraud need not show, either as an element of its claim or as a prerequisite to establishing proximate causation, that it relied on the defendant's alleged misrepresentations. Pp. ---- - ----.

(a) In 18 U.S.C. § 1964(c), RICO provides a private right of action for treble damages to "[a]ny person injured in his business or property by reason of a violation," as pertinent here, of § 1962(c), which makes it "unlawful for any person employed by or associated with" a qualifying enterprise "to conduct or participate ... in the conduct of such enterprise's affairs through a pattern of racketeering activity,"

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

including "mail fraud," § 1961(1)(B). Mail fraud, in turn, occurs whenever a person, "having devised or intending to devise any scheme or artifice to defraud," uses the mail "for the purpose of executing such scheme or artifice." § 1341. The gravamen of the offense is the scheme to defraud, and any " 'mailing ... incident to an essential part of the scheme'... satisfies the mailing element," *Schmuck v. United States,* 489 U.S. 705, 712, 109 S.Ct. 1443, 103 L.Ed.2d 734, even if the mailing "contain[s] no false information," *id*., at 715, 109 S.Ct. 1443. Once the relationship among these statutory provisions is understood, respondents' theory of the case is straightforward. Petitioners nonetheless argue that because the alleged pattern of racketeering activity is predicated on mail fraud, respondents must show that they relied on petitioners' fraudulent misrepresentations, which they cannot do because the misrepresentations were made to the county. Nothing on the statute's face imposes such a requirement. Using the mail to execute or attempt to execute a scheme to defraud is indictable as mail fraud, and hence a predicate racketeering act under RICO, even if no one relied on any misrepresentation, see *Neder v. United States,* 527 U.S. 1, 24-25, 119 S.Ct. 1827, 144 L.Ed.2d 35; and one can conduct the affairs of a qualifying enterprise through a pattern of such acts without anyone relying on a fraudulent misrepresentation. Thus, no reliance showing is required to establish that a person has violated § 1962(c) by conducting an enterprise's affairs through a pattern of racketeering activity predicated on mail fraud. Nor can a first-party reliance requirement be derived from § 1964(c), which, by providing a right of action to "[a]ny person" injured by a violation of § 1962, suggests a breadth of coverage not easily reconciled with an implicit first-party reliance requirement. Moreover, a person can be injured "by reason of" a pattern of mail fraud even if he has not relied on any misrepresentations. For example, accepting respondents' allegations as true, they were harmed by petitioners' scheme when they lost valuable liens they otherwise would have been awarded. Pp. ---- - ----.

(b) None of petitioners' arguments-that under the "common-law meaning" rule, Congress should be presumed to have made reliance an element of a civil RICO claim predicated on a violation of the mail fraud statute; that a plaintiff bringing a RICO claim based on mail fraud must show reliance on the defendant's misrepresentations in order to establish proximate cause; and that RICO should be interpreted to require first-party reliance for fraud-based claims in order to avoid the "overfederalization" of traditional state-law claims-persuades this Court to read a first-party reliance requirement into a statute that by its terms suggests none. Pp. ---- - ----.

**\*2**477 F.3d 928, affirmed.

THOMAS, J., delivered the opinion for a unanimous Court.

Theodore M. Becker, Chicago, IL, for petitioners.  
David W. DeBruin, Washington, DC, for respondents.  
Eric D. Miller, for the United States as amicus curiae, by special leave of the Court, supporting the respondents.  
Peter Buscemi, Joseph Brooks, Michelle Park Chiu, Morgan, Lewis & Bockius LLP, Washington, D.C., Theodore M. Becker, Counsel of Record, James E. Bayles, Jr., Morgan, Lewis & Bockius LLP, Chicago, Illinois, for Petitioners.  
Lowell E. Sachnoff, David C. Bohan, John W. Moynihan, Reed Smith LLP, Chicago, IL, Jonathan L. Marks, Katten Muchin Rosenmann LLP, Chicago, IL, David W. DeBruin, Counsel of Record, Ian Heath Gershengorn, Matthew S. Hellman, Carrie F. Apfel, Sharmila Sohoni, Jenner & Block LLP, Washington, DC, for Respondents. For U.S. Supreme Court briefs, see:2008 WL 466088 (Pet.Brief)2008 WL 685064 (Resp.Brief)2008 WL 976385 (Reply.Brief)  
Justice THOMAS delivered the opinion of the Court. The Racketeer Influenced and Corrupt Organizations Act (RICO or Act), 18 U.S.C. §§ 1961-1968, provides a private right of action for treble damages to "[a]ny person injured in his business or property by reason of a violation" of the Act's criminal prohibitions. § 1964(c). The question presented in this case is whether a plaintiff asserting a RICO claim predicated on mail fraud must plead and prove that it relied on the defendant's alleged misrepresentations. Because we agree with the Court of Appeals that a showing of first-party reliance is not required, we affirm.

I

[1] Each year the Cook County, Illinois, Treasurer's Office holds a public auction at which it sells tax liens it has acquired on the property of delinquent

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

taxpayers.[FN1] Prospective buyers bid on the liens, but not in cash amounts. Instead, the bids are stated as percentage penalties the property owner must pay the winning bidder in order to clear the lien. The bidder willing to accept the lowest penalty wins the auction and obtains the right to purchase the lien in exchange for paying the outstanding taxes on the property. The property owner may then redeem the property by paying the lienholder the delinquent taxes, plus the penalty established at the auction and an additional 12% penalty on any taxes subsequently paid by the lienholder. If the property owner does not redeem the property within the statutory redemption period, the lienholder may obtain a tax deed for the property, thereby in effect purchasing the property for the value of the delinquent taxes.

> FN1. Because this case arises from the District Court's grant of petitioners' motion to dismiss, we "accept as true all of the factual allegations contained in [respondents'] complaint." *Erickson v. Pardus,* 551 U.S. ----, ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007).

Because property acquired in this manner can often be sold at a significant profit over the amount paid for the lien, the auctions are marked by stiff competition. As a result, most parcels attract multiple bidders willing to accept the lowest penalty permissible-0%, that is to say, no penalty at all. (Perhaps to prevent the perverse incentive taxpayers would have if they could redeem their property from a winning bidder for less than the amount of their unpaid taxes, the county does not accept negative bids.) The lower limit of 0% creates a problem: Who wins when the bidding results in a tie? The county's solution is to allocate parcels "on a rotational basis" in order to ensure that liens are apportioned fairly among 0% bidders. App. 18.

**\*3** But this creates a perverse incentive of its own: Bidders who, in addition to bidding themselves, send agents to bid on their behalf will obtain a disproportionate share of liens. To prevent this kind of manipulation, the county adopted the "Single, Simultaneous Bidder Rule," which requires each "tax buying entity" to submit bids in its own name and prohibits it from using "apparent agents, employees, or related entities" to submit simultaneous bids for the same parcel.[FN2] App. 67. Upon registering for an auction, each bidder must submit a sworn affidavit affirming that it complies with the Single, Simultaneous Bidder Rule.

> FN2. The Single, Simultaneous Bidder Rule provides that "one tax buying entity (principal) may not have its/his/her/their actual or apparent agents, employees, or related entities, directly or indirectly register under multiple registrations for the *intended or perceived* purpose of having more than one person bidding at the tax sale at the same time for the *intended or perceived* purpose of increasing the principal's likelihood of obtaining a successful bid on a parcel." App. 67. The rule defines "Related Bidding Entity" as "any individual, corporation, partnership, joint venture, limited liability company, business organization, or other entity that has a shareholder, partner, principal, officer, general partner or other person or entity having an ownership interest in common with, or contractual relationship with, any other registrant." *Ibid.* It further provides that "[t]he determination of whether registered entities are related, so as to prevent the entities from bidding at the same time, is in the *sole and exclusive discretion* of the Cook County Treasurer or her designated representatives." *Ibid.*

Petitioners and respondents are regular participants in Cook County's tax sales. In July 2005, respondents filed a complaint in the United States District Court for the Northern District of Illinois, contending that petitioners had fraudulently obtained a disproportionate share of liens by violating the Single, Simultaneous Bidder Rule at the auctions held from 2002 to 2005. According to respondents, petitioner Sabre Group, LLC, and its principal Barrett Rochman arranged for related firms to bid on Sabre Group's behalf and directed them to file false attestations that they complied with the Single, Simultaneous Bidder Rule. Having thus fraudulently obtained the opportunity to participate in the auction, the related firms collusively bid on the same properties at a 0% rate. As a result, when the county allocated liens on a rotating basis,[FN3] it treated the related firms as independent entities, allowing them collectively to acquire a greater number of liens than

would have been granted to a single bidder acting alone. The related firms then purchased the liens and transferred the certificates of purchase to Sabre Group. In this way, respondents allege, petitioners deprived them and other bidders of their fair share of liens and the attendant financial benefits.

> FN3. Respondents' complaint does not elaborate on the county's rotational system. The Court of Appeals described it as follows: "If X bids 0% on ten parcels, and each parcel attracts five bids at that penalty rate, then the County awards X two of the ten parcels. Winners share according to the ratio of their bids to other identical bids."477 F.3d 928, 929 (C.A.7 2007). Petitioners object that this description is not supported by the record and inappropriately "inject[s] into the case an element of mathematical certainty that is missing from the complaint itself."Reply Brief for Petitioners 20. While a precise understanding of the county's system may be necessary to calculate respondents' damages, nothing in our disposition turns on this issue. For present purposes, it suffices that respondents allege they "suffered the loss of property related to the liens they would have been able to acquire, and the profits flowing therefrom, had [petitioners] not implemented their scheme and acquired liens in excess of their appropriate share through their violation of the County Rule."App. 50.

Respondents' complaint contains five counts. Counts I-IV allege that petitioners violated and conspired to violate RICO by conducting their affairs through a pattern of racketeering activity involving numerous acts of mail fraud. In support of their allegations of mail fraud, respondents assert that petitioners "mailed or caused to be mailed hundreds of mailings in furtherance of the scheme," App. 49, when they sent property owners various notices required by Illinois law. Count V alleges a state-law claim of tortious interference with prospective business advantage.

On petitioners' motion, the District Court dismissed respondents' RICO claims for lack of standing. It observed that "[o]nly [respondents] and other competing buyers, as opposed to the Treasurer or the property owners, would suffer a financial loss from a scheme to violate the Single, Simultaneous Bidder Rule."App. to Pet. for Cert. 17a. But it concluded that respondents "are not in the class of individuals protected by the mail fraud statute, and therefore are not within the 'zone of interests' that the RICO statute protects," because they "were not recipients of the alleged misrepresentations and, at best were indirect victims of the alleged fraud."*Id*., at 18a.The District Court declined to exercise supplemental jurisdiction over respondents' tortious-interference claim and dismissed it without prejudice.

**\*4** The Court of Appeals for the Seventh Circuit reversed. It first concluded that "[s]tanding is not a problem in this suit" because plaintiffs suffered a "real injury" when they lost the valuable chance to acquire more liens, and because "that injury can be redressed by damages."477 F.3d 928, 930 (2007). The Court of Appeals next concluded that respondents had sufficiently alleged proximate cause under *Holmes v. Securities Investor Protection Corporation,* 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992), and *Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451, 126 S.Ct. 1991, 164 L.Ed.2d 720 (2006), because they (along with other losing bidders) were "immediately injured" by petitioners' scheme. 477 F.3d, at 930-932.Finally, the Court of Appeals rejected petitioners' argument that respondents are not entitled to relief under RICO because they did not receive, and therefore did not rely on, any false statements: "A scheme that injures D by making false statements through the mail to E is mail fraud, and actionable by D through RICO if the injury is not derivative of someone else's."*Id*., at 932.

With respect to this last holding, the Court of Appeals acknowledged that courts have taken conflicting views. By its count, "[t]hree other circuits that have considered this question agree ... that the direct *victim* may recover through RICO whether or not it is the direct *recipient* of the false statements,"*ibid*.(citing *Mid Atlantic Telecom, Inc. v. Long Distance Servs., Inc.,* 18 F.3d 260, 263-264 (C.A.4 1994); *Systems Management, Inc. v. Loiselle,* 303 F.3d 100, 103-104 (C.A.1 2002); *Ideal Steel Supply Corp. v. Anza,* 373 F.3d 251, 263 (C.A.2 2004)), whereas two Circuits hold that the plaintiff must show that it in fact relied on the defendant's misrepresentations, 477 F.3d, at 932 (citing *VanDenBroeck v. CommonPoint Mortgage Co.,* 210

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

F.3d 696, 701 (C.A.6 2000); Sikes v. Teleline, Inc., 281 F.3d 1350, 1360-1361 (C.A.11 2002)). Compare also Sandwich Chef of Texas, Inc. v. Reliance Nat'l Indemnity Ins. Co., 319 F.3d 205, 223 (C.A.5 2003) (recognizing "a narrow exception to the requirement that the plaintiff prove direct reliance on the defendant's fraudulent predicate act ... when the plaintiff can demonstrate injury as a direct and contemporaneous result of a fraud committed against a third party"), with Appletree Square I, L.P. v. W.R. Grace & Co., 29 F.3d 1283, 1286-1287 (C.A.8 1994) (requiring the plaintiff to show that it detrimentally relied on the defendant's misrepresentations).

We granted certiorari, 552 U.S. ----, 128 S.Ct. 829, 169 L.Ed.2d 625 (2008), to resolve the conflict among the Courts of Appeals on "the substantial question," Anza, 547 U.S., at 461, 126 S.Ct. 1991, whether first-party reliance is an element of a civil RICO claim predicated on mail fraud.[FN4]

> FN4. The Court considered a civil RICO claim predicated on mail fraud in its recent decision in Anza, 547 U.S. 451, 126 S.Ct. 1991, 164 L.Ed.2d 720. There the Court held that proximate cause is a condition of recovery under 18 U.S.C. § 1962(c). The Court did not address the question whether reliance by the plaintiff is a required element of a RICO claim, the matter now before us. Cf. 547 U.S., at 475-478, 126 S.Ct. 1991 (THOMAS, J., concurring in part and dissenting in part) (reaching the question and concluding that reliance is not an element of a civil RICO claim based on mail fraud).

II

**\*5** We begin by setting forth the applicable statutory provisions. RICO's private right of action is contained in 18 U.S.C. § 1964(c), which provides in relevant part that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."Section 1962 contains RICO's criminal prohibitions. Pertinent here is § 1962(c), which makes it "unlawful for any person employed by or associated with" an enterprise engaged in or affecting interstate or foreign commerce "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."The term "racketeering activity" is defined to include a host of so-called predicate acts, including "any act which is indictable under ...section 1341 (relating to mail fraud)."§ 1961(1)(B).

[2][3] The upshot is that RICO provides a private right of action for treble damages to any person injured in his business or property by reason of the conduct of a qualifying enterprise's affairs through a pattern of acts indictable as mail fraud. Mail fraud, in turn, occurs whenever a person, "having devised or intending to devise any scheme or artifice to defraud," uses the mail "for the purpose of executing such scheme or artifice or attempting so to do."§ 1341. The gravamen of the offense is the scheme to defraud, and any "mailing that is incident to an essential part of the scheme satisfies the mailing element,"Schmuck v. United States, 489 U.S. 705, 712, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989) (citation and internal quotation marks omitted), even if the mailing itself "contain[s] no false information," id., at 715, 109 S.Ct. 1443.

[4] Once the relationship among these statutory provisions is understood, respondents' theory of the case is straightforward. They allege that petitioners devised a scheme to defraud when they agreed to submit false attestations of compliance with the Single, Simultaneous Bidder Rule to the county. In furtherance of this scheme, petitioners used the mail on numerous occasions to send the requisite notices to property owners. Each of these mailings was an "act which is indictable" as mail fraud, and together they constituted a "pattern of racketeering activity." By conducting the affairs of their enterprise through this pattern of racketeering activity, petitioners violated § 1962(c). As a result, respondents lost the opportunity to acquire valuable liens. Accordingly, respondents were injured in their business or property by reason of petitioners' violation of § 1962(c), and RICO's plain terms give them a private right of action for treble damages.

Petitioners argue, however, that because the alleged pattern of racketeering activity consisted of acts of mail fraud, respondents must show that they relied on

--- S.Ct. ----  
--- S.Ct. ----, 2008 WL 2329761 (U.S.)  
**(Cite as: --- S.Ct. ----, 2008 WL 2329761 (U.S.))**

Page 8

petitioners' fraudulent misrepresentations. This they cannot do, because the alleged misrepresentations-petitioners' attestations of compliance with the Single, Simultaneous Bidder Rule-were made to the county, not respondents. The *county* may well have relied on petitioners' misrepresentations when it permitted them to participate in the auction, but *respondents,* never having received the misrepresentations, could not have done so. Indeed, respondents do not even allege that they relied on petitioners' false attestations. Thus, petitioners submit, they fail to state a claim under RICO.

**\*6**[5] If petitioners' proposed requirement of first-party reliance seems to come out of nowhere, there is a reason: Nothing on the face of the relevant statutory provisions imposes such a requirement. Using the mail to execute or attempt to execute a scheme to defraud is indictable as mail fraud, and hence a predicate act of racketeering under RICO, even if no one relied on any misrepresentation. See *Neder v. United States,* 527 U.S. 1, 24-25, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) ("The common-law requiremen[t] of 'justifiable reliance' ... plainly ha[s] no place in the [mail, wire, or bank] fraud statutes"). And one can conduct the affairs of a qualifying enterprise through a pattern of such acts without anyone relying on a fraudulent misrepresentation.

[6] It thus seems plain-and indeed petitioners do not dispute-that no showing of reliance is required to establish that a person has violated § 1962(c) by conducting the affairs of an enterprise through a pattern of racketeering activity consisting of acts of mail fraud. See *Anza,* 547 U.S., at 476, 126 S.Ct. 1991 (THOMAS, J., concurring in part and dissenting in part) ("Because an individual can commit an indictable act of mail or wire fraud even if no one relies on his fraud, he can engage in a pattern of racketeering activity, in violation of § 1962, without proof of reliance"). If reliance is required, then, it must be by virtue of § 1964(c), which provides the right of action. But it is difficult to derive a first-party reliance requirement from § 1964(c), which states simply that "[a]ny person injured in his business or property by reason of a violation of section 1962" may sue for treble damages. The statute provides a right of action to "[a]ny person" injured by the violation, suggesting a breadth of coverage not easily reconciled with an implicit requirement that the plaintiff show reliance in addition to injury in his business or property.

Moreover, a person can be injured "by reason of" a pattern of mail fraud even if he has not relied on any misrepresentations. This is a case in point. Accepting their allegations as true, respondents clearly were injured by petitioners' scheme: As a result of petitioners' fraud, respondents lost valuable liens they otherwise would have been awarded. And this is true even though they did not rely on petitioners' false attestations of compliance with the county's rules. Or, to take another example, suppose an enterprise that wants to get rid of rival businesses mails misrepresentations about them to their customers and suppliers, but not to the rivals themselves. If the rival businesses lose money as a result of the misrepresentations, it would certainly seem that they were injured in their business "by reason of" a pattern of mail fraud, even though they never received, and therefore never relied on, the fraudulent mailings. Yet petitioners concede that, on their reading of § 1964(c), the rival businesses would have no cause of action under RICO, Tr. of Oral Arg. 4, even though they were the primary and intended victims of the scheme to defraud.

Lacking textual support for this counterintuitive position, petitioners rely instead on a combination of common-law rules and policy arguments in an effort to show that Congress should be presumed to have made first-party reliance an element of a civil RICO claim based on mail fraud. None of petitioners' arguments persuades us to read a first-party reliance requirement into a statute that by its terms suggests none.

III

A

**\*7**[7] Petitioners first argue that RICO should be read to incorporate a first-party reliance requirement in fraud cases "under the rule that Congress intends to incorporate the well-settled meaning of the common-law terms it uses."*Neder, supra,* at 23, 119 S.Ct. 1827.It has long been settled, they contend, that only the recipient of a fraudulent misrepresentation may recover for common-law fraud, and that he may do so "if, but only if ... he relies on the misrepresentation in acting or refraining from action."Restatement (Second) of Torts § 537 (1977). Given this

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

background rule of common law, petitioners maintain, Congress should be presumed to have adopted a first-party reliance requirement when it created a civil cause of action under RICO for victims of mail fraud.

In support of this argument, petitioners point to our decision in Beck v. Prupis, 529 U.S. 494, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000). There, we considered the scope of RICO's private right of action for violations of § 1962(d), which makes it "unlawful for any person to conspire to violate" RICO's criminal prohibitions. The question presented was "whether a person injured by an overt act in furtherance of a conspiracy may assert a civil RICO conspiracy claim under § 1964(c) for a violation of § 1962(d) even if the overt act does not constitute 'racketeering activity.'" Id., at 500, 120 S.Ct. 1608.Answering this question in the negative, we held that "injury caused by an overt act that is not an act of racketeering or otherwise wrongful under RICO is not sufficient to give rise to a cause of action under § 1964(c) for a violation of § 1962(d)."Id., at 505, 120 S.Ct. 1608 (citation omitted). In so doing, we "turn[ed] to the well-established common law of civil conspiracy."Id., at 500, 120 S.Ct. 1608.Because it was "widely accepted" by the time of RICO's enactment "that a plaintiff could bring suit for civil conspiracy only if he had been injured by an act that was itself tortious,"id., at 501, 120 S.Ct. 1608, we presumed "that when Congress established in RICO a civil cause of action for a person 'injured ... by reason of' a 'conspir [acy],' it meant to adopt these well-established common-law civil conspiracy principles."Id., at 504, 120 S.Ct. 1608 (quoting §§ 1964(c), 1962(d); alterations in original). We specifically declined to rely on the law of criminal conspiracy, relying instead on the law of civil conspiracy:

> "We have turned to the common law of criminal conspiracy to define what constitutes a violation of § 1962(d), see Salinas v. United States, 522 U.S. 52, 63-65[, 118 S.Ct. 469, 139 L.Ed.2d 352] (1997), a mere violation being all that is necessary for criminal liability. This case, however, does not present simply the question of what constitutes a violation of § 1962(d), but rather the meaning of a civil cause of action for private injury by reason of such a violation. In other words, our task is to interpret §§ 1964(c) and 1962(d) in conjunction, rather than § 1962(d) standing alone. The obvious source in the common law for the combined meaning of these provisions is the law of civil conspiracy."Id., at 501, n. 6, 120 S.Ct. 1608.

*8 Petitioners argue that, as in Beck, we should look to the common-law meaning of civil fraud in order to give content to the civil cause of action § 1964(c) provides for private injury by reason of a violation of § 1962(c) based on a pattern of mail fraud. The analogy to Beck, however, is misplaced. The critical difference between Beck and this case is that in § 1962(d) Congress used a term-"conspir[acy]"-that had a settled common-law meaning, whereas Congress included no such term in § 1962(c).Section 1962(c) does not use the term "fraud"; nor does the operative language of § 1961(1)(B), which defines "racketeering activity" to include "any act which is indictable under ...section 1341."And the indictable act under § 1341 is not the fraudulent misrepresentation, but rather the use of the mails with the purpose of executing or attempting to execute a scheme to defraud. In short, the key term in § 1962(c)-"racketeering activity"-is a *defined* term, and Congress defined the predicate act not as fraud *simpliciter,* but mail fraud-a statutory offense unknown to the common law. In these circumstances, the presumption that Congress intends to adopt the settled meaning of common-law terms has little pull. Cf. Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc., 552 U.S. ----, ----, 128 S.Ct. 761, 773, 169 L.Ed.2d 627 (2008) (rejecting the argument that § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), incorporates common-law fraud). There is simply no "reason to believe that Congress would have defined 'racketeering activity' to include acts indictable under the mail and wire fraud statutes, if it intended fraud-related acts to be predicate acts under RICO only when those acts would have been actionable under the common law."Anza, 547 U.S., at 477-478, 126 S.Ct. 1991 (THOMAS, J., concurring in part and dissenting in part).

Nor does it help petitioners' cause that here, as in Beck, the question is not simply "what constitutes a violation of § 1962[ (c) ], but rather the meaning of a civil cause of action for private injury by reason of such a violation."529 U.S., at 501, n. 6, 120 S.Ct. 1608.To be sure, Beck held that a plaintiff cannot state a civil claim for conspiracy under § 1964(c)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- S.Ct. ----
Page 10
--- S.Ct. ----, 2008 WL 2329761 (U.S.)
**(Cite as: --- S.Ct. ----, 2008 WL 2329761 (U.S.))**

merely by showing a violation of § 1962(d) and a resulting injury. But in so doing, *Beck* relied not only on the fact that the term "conspiracy" had a settled common-law meaning, but also on the well-established common-law understanding of what it means to be injured by a conspiracy for purposes of bringing a civil claim for damages. See *id.*, at 501-504, 120 S.Ct. 1608. No comparable understanding exists with respect to injury caused by an enterprise conducting its affairs through a pattern of acts indictable as mail fraud. And even the common-law understanding of injury caused by fraud does not support petitioners' argument. As discussed *infra*, at ---- - ----, the common law has long recognized that plaintiffs can recover in a variety of circumstances where, as here, their injuries result directly from the defendant's fraudulent misrepresentations to a third party.

For these reasons, we reject petitioners' contention that the "common-law meaning" rule dictates that reliance by the plaintiff is an element of a civil RICO claim predicated on a violation of the mail fraud statute. Congress chose to make mail fraud, not common-law fraud, the predicate act for a RICO violation. And "the mere fact that the predicate acts underlying a particular RICO violation happen to be fraud offenses does not mean that reliance, an element of common-law fraud, is also incorporated as an element of a civil RICO claim." *Anza, supra,* at 476, 126 S.Ct. 1991 (THOMAS, J., concurring in part and dissenting in part).

B

*9 [8] Petitioners next argue that even if Congress did not make first-party reliance an element of a RICO claim predicated on mail fraud, a plaintiff who brings such a claim must show that it relied on the defendant's misrepresentations in order to establish the requisite element of causation. In *Holmes,* we recognized that § 1964(c)'s "language can, of course, be read to mean that a plaintiff is injured 'by reason of' a RICO violation, and therefore may recover, simply on showing that the defendant violated § 1962, the plaintiff was injured, and the defendant's violation was a 'but for' cause of plaintiff's injury." 503 U.S., at 265-266, 112 S.Ct. 1311 (footnote omitted). We nonetheless held that not "all factually injured plaintiffs" may recover under § 1964(c). *Id.*, at 266, 112 S.Ct. 1311. Because Congress modeled § 1964(c) on other provisions that had been interpreted to "requir[e] a showing that the defendant's violation not only was a 'but for' cause of his injury, but was the proximate cause as well," we concluded that § 1964(c) likewise requires the plaintiff to establish proximate cause in order to show injury "by reason of" a RICO violation. *Id.*, at 268, 112 S.Ct. 1311.

Proximate cause, we explained, is a flexible concept that does not lend itself to "'a black-letter rule that will dictate the result in every case.'" *Id.*, at 272, n. 20, 112 S.Ct. 1311 (quoting *Associated Gen. Contractors of Cal., Inc. v. Carpenters,* 459 U.S. 519, 536, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983)). Instead, we "use[d] 'proximate cause' to label generically the judicial tools used to limit a person's responsibility for the consequences of that person's own acts," *Holmes,* 503 U.S., at 268, 112 S.Ct. 1311, with a particular emphasis on the "demand for some direct relation between the injury asserted and the injurious conduct alleged," *ibid.*; see also *Anza, supra,* at 461, 126 S.Ct. 1991 ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries"). The direct-relation requirement avoids the difficulties associated with attempting "to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors," *Holmes,* 503 U.S., at 269, 112 S.Ct. 1311; prevents courts from having "to adopt complicated rules of apportioning damages among plaintiffs removed at different levels of injury from the violative acts, to obviate the risk of multiple recoveries," *ibid.*; and recognizes the fact that "directly injured victims can generally be counted on to vindicate the law as private attorneys general, without any of the problems attendant upon suits by plaintiffs injured more remotely," *id.*, at 269-270, 112 S.Ct. 1311.[FN5]

> FN5. Applying these principles in *Holmes,* the Court held that the Securities Investor Protection Corporation (SIPC) could not recover for injuries caused by a stock-manipulation scheme that prevented two broker-dealers from meeting obligations to their customers, thereby triggering SIPC's duty to reimburse the customers. 503 U.S., at 270-274, 112 S.Ct. 1311. And in *Anza,* the Court applied the principles of *Holmes* to

preclude a company from recovering profits it allegedly lost when a rival business was able to lower its prices because it failed to charge the requisite sales tax on cash sales. 547 U.S., at 456-461, 126 S.Ct. 1991.

Pointing to our reliance on common-law proximate-causation principles in *Holmes* and *Anza,* petitioners argue that "[u]nder well-settled common-law principles, proximate cause is established for fraud claims only where the plaintiff can demonstrate that he relied on the misrepresentation." Brief for Petitioners 28. In support of this argument, petitioners cite Restatement (Second) of Torts § 548A, which provides that "[a] fraudulent misrepresentation is a legal cause of a pecuniary loss resulting from action or inaction in reliance upon it if, but only if, the loss might reasonably be expected to result from the reliance." Thus, petitioners conclude, "a plaintiff asserting a civil RICO claim predicated on mail fraud cannot satisfy the proximate cause requirement unless he can establish that his injuries resulted from his reliance on the defendant's fraudulent misrepresentation." Brief for Petitioners 28.

**\*10**[9] Petitioners' argument is twice flawed. First, as explained above, the predicate act here is not common-law fraud, but mail fraud. Having rejected petitioners' argument that reliance is an element of a civil RICO claim based on mail fraud, we see no reason to let that argument in through the back door by holding that the proximate-cause analysis under RICO must precisely track the proximate-cause analysis of a common-law fraud claim. "Reliance is not a general limitation on civil recovery in tort; it 'is a specialized condition that happens to have grown up with common law fraud.'" *Anza,* 547 U.S., at 477, 126 S.Ct. 1991 (THOMAS, J., concurring in part and dissenting in part) (quoting *Systems Management,* 303 F.3d, at 104). That "specialized condition," whether characterized as an element of the claim or as a prerequisite to establishing proximate causation, simply has no place in a remedial scheme keyed to the commission of mail fraud, a statutory offense that is distinct from common-law fraud and that does not require proof of reliance.

[10] Second, while it may be that first-party reliance is an element of a common-law fraud claim, there is no general common-law principle holding that a fraudulent misrepresentation can cause legal injury only to those who rely on it. The Restatement provision cited by petitioners certainly does not support that proposition. It provides only that the plaintiff's loss must be a foreseeable result of *someone's* reliance on the misrepresentation.[FN6] It does not say that only those who rely on the misrepresentation can suffer a legally cognizable injury. And any such notion would be contradicted by the long line of cases in which courts have permitted a plaintiff directly injured by a fraudulent misrepresentation to recover even though it was a third party, and not the plaintiff, who relied on the defendant's misrepresentation.[FN7] Indeed, so well established is the defendant's liability in such circumstances that the Restatement (Second) of Torts sets forth as a "[g]eneral [p]rinciple" that "[o]ne who intentionally causes injury to another is subject to liability to the other for that injury, if his conduct is generally culpable and not justifiable under the circumstances." § 870. As an illustration, the Restatement provides the example of a defendant who "seeks to promote his own interests by telling a known falsehood to *or about* the plaintiff or his product." *Id.,* Comment *h* (emphasis added). And the Restatement specifically recognizes "a cause of action" in favor of the injured party where the defendant "defrauds another for the purpose of causing pecuniary harm to a third person." *Id*., § 435A, Comment *a*. Petitioners' contention that proximate cause has traditionally incorporated a first-party reliance requirement for claims based on fraud cannot be reconciled with these authorities.

> FN6. In addition to Restatement (Second) of Torts § 548A (1977), petitioners cite Comment *a* to that section, which provides that "[c]ausation, in relation to losses incurred by reason of a misrepresentation, is a matter of the recipient's reliance in fact upon the misrepresentation in taking some action or in refraining from it." Like § 548A itself, however, the comment does not support petitioners' argument. Of course, a misrepresentation can cause harm only if a recipient of the misrepresentation relies on it. But that does not mean that the only injuries proximately caused by the misrepresentation are those suffered by the recipient.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- S.Ct. ----
--- S.Ct. ----, 2008 WL 2329761 (U.S.)
**(Cite as: --- S.Ct. ----, 2008 WL 2329761 (U.S.))**

Page 12

FN7. Such cases include *Rice v. Manley,* 66 N.Y. 82 (1876) (permitting plaintiffs who had arranged to buy a large quantity of cheese to recover against a defendant who induced the vendor to sell him the cheese by falsely representing to the vendor that plaintiffs no longer wished to purchase it); and *Gregory v. Brooks,* 35 Conn. 437 (1868) (permitting plaintiff wharf owner to recover against a defendant who, in order to deprive plaintiff of business, misrepresented himself to be a superintendent of wharves and ordered a vessel unloading at plaintiff's wharf to leave); see also Brief for Respondents 26-29 (collecting cases).

Petitioners argue that these cases are irrelevant because they would be treated today as specialized torts, such as wrongful interference with contractual relations, rather than as common-law fraud. See, *e.g.,* Restatement (Second) of Torts § 767, Comment *c* (recognizing that "one [may be] liable to another for intentional interference with economic relations by inducing a third person by fraudulent misrepresentation not to do business with the other"). But petitioners miss the point. The cases are not cited as evidence that common-law fraud can be established without showing first-party reliance. Rather, they-along with the Restatement's recognition of specialized torts based on third-party reliance-show that a fraudulent misrepresentation can proximately cause actionable injury even to those who do not rely on the misrepresentation.

Nor is first-party reliance necessary to ensure that there is a sufficiently direct relationship between the defendant's wrongful conduct and the plaintiff's injury to satisfy the proximate-cause principles articulated in *Holmes* and *Anza.*Again, this is a case in point. Respondents' alleged injury-the loss of valuable liens-is the direct result of petitioners' fraud. It was a foreseeable and natural consequence of petitioners' scheme to obtain more liens for themselves that other bidders would obtain fewer liens. And here, unlike in *Holmes* and *Anza,* there are no independent factors that account for respondents' injury, there is no risk of duplicative recoveries by plaintiffs removed at different levels of injury from the violation, and no more immediate victim is better situated to sue. Indeed, both the District Court and the Court of Appeals concluded that respondents and other losing bidders were the *only* parties injured by petitioners' misrepresentations. App. to Pet. for Cert. 17a; 477 F.3d, at 931.Petitioners quibble with that conclusion, asserting that the county would be injured too if the taint of fraud deterred potential bidders from participating in the auction. But that eventuality, in contrast to respondents' direct financial injury, seems speculative and remote.

**\*11** Of course, none of this is to say that a RICO plaintiff who alleges injury "by reason of" a pattern of mail fraud can prevail without showing that *someone* relied on the defendant's misrepresentations. Cf. *Field v. Mans,* 516 U.S. 59, 66, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) ("No one, of course, doubts that some degree of reliance is required to satisfy the element of causation inherent in the phrase 'obtained by'" in 11 U.S.C. § 523(a)(2)(A), which prohibits the discharge of debts for money or property "obtained by" fraud). In most cases, the plaintiff will not be able to establish even but-for causation if no one relied on the misrepresentation. If, for example, the county had not accepted petitioners' false attestations of compliance with the Single, Simultaneous Bidder Rule, and as a result had not permitted petitioners to participate in the auction, respondents' injury would never have materialized. In addition, the complete absence of reliance may prevent the plaintiff from establishing proximate cause. Thus, for example, if the county knew petitioners' attestations were false but nonetheless permitted them to participate in the auction, then arguably the county's actions would constitute an intervening cause breaking the chain of causation between petitioners' misrepresentations and respondents' injury.

Accordingly, it may well be that a RICO plaintiff alleging injury by reason of a pattern of mail fraud must establish at least third-party reliance in order to prove causation. "But the fact that proof of reliance is often used to prove an element of the plaintiff's cause of action, such as the element of causation, does not transform reliance itself into an element of the cause of action."*Anza,* 547 U.S., at 478, 126 S.Ct. 1991 (THOMAS, J., concurring in part and dissenting in

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

part). Nor does it transform first-party reliance into an indispensable requisite of proximate causation. Proof that the plaintiff relied on the defendant's misrepresentations may in some cases be sufficient to establish proximate cause, but there is no sound reason to conclude that such proof is always necessary. By the same token, the absence of first-party reliance may in some cases tend to show that an injury was not sufficiently direct to satisfy § 1964(c)'s proximate-cause requirement, but it is not in and of itself dispositive. A contrary holding would ignore *Holmes*' instruction that proximate cause is generally not amenable to bright-line rules.

C

**\*12** As a last resort, petitioners contend that we should interpret RICO to require first-party reliance for fraud-based claims in order to avoid the "over-federalization" of traditional state-law claims. In petitioners' view, respondents' claim is essentially one for tortious interference with prospective business advantage, as evidenced by Count V of their complaint. Such claims have traditionally been handled under state law, and petitioners see no reason why Congress would have wanted to supplement traditional state-law remedies with a federal cause of action, complete with treble damages and attorney's fees, in a statute designed primarily to combat organized crime. See *Anza,supra,* at 471-475, 126 S.Ct. 1991 (THOMAS, J., concurring in part and dissenting in part); *Beck,* 529 U.S., at 496-497, 120 S.Ct. 1608. A first-party reliance requirement, they say, is necessary "to prevent garden-variety disputes between local competitors (such as this case) from being converted into federal racketeering actions." Reply Brief for Petitioners 3.

Whatever the merits of petitioners' arguments as a policy matter, we are not at liberty to rewrite RICO to reflect their-or our-views of good policy. We have repeatedly refused to adopt narrowing constructions of RICO in order to make it conform to a preconceived notion of what Congress intended to proscribe. See, *e.g.,National Organization for Women, Inc. v. Scheidler,* 510 U.S. 249, 252, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994) (rejecting the argument that "RICO requires proof that either the racketeering enterprise or the predicate acts of racketeering were motivated by an economic purpose"); *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 244, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (rejecting "the argument for reading an organized crime limitation into RICO's pattern concept"); *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 481, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) (rejecting the view that RICO provides a private right of action "only against defendants who had been convicted on criminal charges, and only where there had occurred a 'racketeering injury' ").

[11] We see no reason to change course here. RICO's text provides no basis for imposing a first-party reliance requirement. If the absence of such a requirement leads to the undue proliferation of RICO suits, the "correction must lie with Congress." *Id.,* at 499, 105 S.Ct. 3275."It is not for the judiciary to eliminate the private action in situations where Congress has provided it."*Id.,* at 499-500, 105 S.Ct. 3275.

IV

For the foregoing reasons, we hold that a plaintiff asserting a RICO claim predicated on mail fraud need not show, either as an element of its claim or as a prerequisite to establishing proximate causation, that it relied on the defendant's alleged misrepresentations. Accordingly, the judgment of the Court of Appeals is affirmed.

*It is so ordered.*

U.S.,2008.
Bridge v. Phoenix Bond & Indem. Co.
--- S.Ct. ----, 2008 WL 2329761 (U.S.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.