UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEW MEXICO UNITED FOOD AND COMMERCIAL WORKERS UNION'S AND EMPLOYERS' HEALTH AND WELFARE TRUST FUND, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, DISTRICT COUNCIL 47 HEALTH AND WELFARE FUND, PHILADELPHIA FIREFIGHTERS UNION LOCAL NO. 22 HEALTH & WELFARE FUND, and NATIONAL COUNCIL OF FIREMEN AND OILERS, LOCAL 1201 HEALTH AND WELFARE FUND, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs<br><br>v.<br><br>PURDUE PHARMA L.P., PURDUE, INC., P.F. LABORATORIES, INC., THE PURDUE COMPANY, INC. d/b/a THE FREDERICK COMPANY,<br><br>Defendants. | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC# _____<br>DATE FILED: 5/29/14<br><br>Civil Action No. 07-CV-6916-JGK<br><br>*Application granted without opposition. So ordered.*<br>*JGK*<br>*U.S.D.J.*<br>*5/28/14* |

**PLAINTIFFS' CO-LEAD CLASS COUNSEL'S MOTION FOR AN ORDER APPROVING DISTRIBUTION OF UNCLAIMED SETTLEMENT FUNDS TO *CY PRES* RECIPIENTS**

Plaintiffs' Co-Lead Class Counsel respectfully move for an order authorizing a *cy pres* distribution of the unclaimed settlement funds from this OxyContin off-label marketing litigation. Following the notice and distribution program administered by the Court-appointed Claims Administrator Rust Consulting, Inc. ("Rust"), over 98% of all class members received their *pro rata* share of the net settlement fund and well over 99% of all settlement funds were distributed. Still, because a small number of claimants failed to cash their settlement checks, the settlement fund contains a residual amount, net of outstanding administrative costs, of $6,735.11.

Given the nominal amount remaining, it is neither economically feasible nor necessary or appropriate to undertake a second *pro rata* distribution to the class. In addition, all class

1

members have been given a full and fair opportunity to assert their claims. Class Counsel instead recommend that the residual unclaimed settlement funds be distributed in *cy pres* and directed to the Public Justice Foundation, a national public interest law firm that pursues socially significant litigation designed to enhance consumer rights, public health and safety, and access to justice.

A.  **Procedural background.**

This action was commenced in August 2007 on behalf of a class of non-governmental third-party payors ("TPPs"), *i.e.*, health plans, employee benefit plans, and commercial insurers, that paid for the prescription drug OxyContin. In December 2008, the parties reached a settlement under which the defendants agreed to pay $20 million for the benefit of the class and up to an additional $1 million for the costs of notice and claims administration. The Court granted preliminary approval of the settlement on December 29, 2008[1] and final approval of the settlement on May 18, 2009.[2]

B.  **Over 99% of the settlement fund was distributed to TPP claimants.**

Claims Administrator Rust notified potential class members of the settlement, received claims, and determined that 2,648 TPP claimants were entitled to receive their *pro rata* share of the settlement fund. The amount available for distribution (the settlement amount net of attorney fees and litigation expenses, plus accrued interest) was $15,251,319.45.[3] On July 9, 2010, the Court granted class plaintiffs' motion to distribute the amount available for settlement to eligible claimants on a *pro rata* basis as determined by Rust.[4] In its final approval order, the Court

---

[1] Order Granting Preliminary Approval of Settlement and Scheduling Fairness Hearing, December 29, 2008 [Dkt. No. 144].

[2] Final Order and Judgment Granting Final Approval to Proposed Class Action Settlement, May 18, 2009 [Dkt. No. 173].

[3] Declaration of Daniel Coggeshall dated April 29, 2014 ("Coggeshall Dec.") at ¶ 2.

[4] Order Approving Distribution of Settlement Fund, July 9, 2010 [Dkt. No. 178].

retained jurisdiction for purposes of supervising and approving any matters relating to the administration of the settlement.[5]

Following final approval, Rust mailed or wired initial distribution settlement payments to all eligible TPP claimants.[6] Although Rust sent funds only to TPPs that prepared and submitted claims, a small number of settlement checks either could not be delivered to the claimant TPPs at the addresses provided or were delivered to the claimant TPPs but were not cashed.[7] Through communications with claimants and in some cases resissue of undelivered checks, Rust reduced the number of non-participating claimants, but in the end, 38 settlement checks totaling $16,640.43 remained uncashed.[8] The stale date for the uncashed checks has passed and Rust has received no further reissue requests. At this point, Rust does not believe further efforts to encourage these TPP claimants to accept their distribution will be fruitful.[9]

Rust's costs and fees in connection with carrying out its responsibilities following the initial distribution were reimbursed by the defendants. Since that time, Rust's fees for and estimates for assisting with the final distribution, tax and other reporting, and case closing total $9,905.32.[10] This leaves $6,735.11 remaining in the settlement fund.[11]

All class members have had an opportunity to submit their claims. The cost of calculating *pro rata* shares of the residual fund, printing and mailing checks, and administering a second distribution to TPPs who made claims and cashed their first round distribution checks would substantially dilute the residual fund, and the amount each class member would receive

---

[5] Coggeshall Dec. at ¶ 6.
[6] *Id.* at ¶ 6.
[7] *Id.* at ¶¶ 3, 5.
[8] *Id.* at ¶ 6.
[9] *Id.*
[10] Coggeshall Dec. at ¶¶ 9-10.
[11] *Id.* at ¶ 10.

would be *de minimis*. Therefore, it is neither economically feasible nor appropriate to undertake a second *pro rata* distribution to the class.

C. *Cy Pres* **distribution of unclaimed funds to Public Justice Foundation is appropriate in these circumstances.**

Class Counsel recommend that the remainder of the settlement funds be distributed to a charitable organization under the *cy pres* doctrine. *Cy pres* distribution is warranted in order to

> "put[] the unclaimed fund to its next best compensation use, *e.g.*, for the aggregate, indirect, prospective benefit of the class...*Cy Pres* means "as near as possible" and "[c]ourts have utilized *Cy Pres* distributions where class members are difficult to identify, or where they change constantly, or where there are unclaimed funds."[12]

Where, as here, settlement funds remain after distribution to the plaintiffs, and it is not economically feasible to undertake a second *pro rata* distribution to the class, *cy pres* distribution of the unclaimed settlement funds is warranted.[13]

When a court finds it appropriate to disperse remaining class settlement funds to a *cy pres* recipient, a court "should require the parties to identify a recipient whose interests reasonably approximate those being pursued by the class."[14] Factors used to determine whether a proposed *cy pres* recipient's interests are "reasonably approximate" to the class include the underlying statutory purpose, the nature of the class injury, and the interests and characteristics of the class.[15]

In this case, the settlement fund was created to settle litigation which alleged that the defendants had engaged in promotion of OxyContin for unapproved uses, resulting in medically

---

[12] *Masters v Wilhelmina Model Agency, Inc*, 473 F.3d 423, 436 (2d Cir. 2007)(citing 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 10:16 n.1, 10:17 (4th ed. 2002)).

[13] *See Plotz v NYAT Maintenance Corp*, No. 98 Civ. 8860, 2006 U.S. Dist. LEXIS 4799, at *6 (S.D.N.Y. Feb. 6, 2006) (*cy pres* distribution appropriate where "residual class funds remain after class members were provided with an opportunity to deposit and claim their distribution.").

[14] American Law Institute, PRINCIPLES OF THE LAW OF AGGREGATE LITIGATION 217 (A.L.I. 2010). *See also, Mohney v Shelly's Prime Steak*, 06 Civ. 4270 (PAC), 2009 U.S. Dist. LEXIS 115637, at*5 (S.D.N.Y. December 7, 2009) (citing *Mirsafihi v. Fleet Mortgage Corp.*, 356 F.3d 187, 194 (7th Cir. 2004)).

[15] *In re: Lupron Marketing and Sales Practices Litigation*, 677 F.3d 21, 33, 2012 U.S. App. LEXIS 8263 (1st Cir. 2012).

4

unnecessary health care costs. While the action expressly sought compensation for TPPs, the suit's broader purpose was to protect the public from improper marketing of prescription drugs by pharmaceutical manufacturers.

Class Counsel recommend that the residual settlement fund be awarded in *cy pres* to the Public Justice Foundation. The Public Justice Foundation sponsors a national public interest law firm known as Public Justice dedicated to using litigation and public education to advance the public good. With offices in Oakland, CA and Washington, D.C., Public Justice litigates a diverse docket of public interest cases in the state and federal courts, specializing in socially significant and precedent-setting litigation. Public Justice also provides a substantial amount of assistance and information on a *pro bono* basis to consumers and attorneys who represent consumers victimized by deceptive and unfair practices, including litigating against class action bans, for consumers overcharged by various industries and medical overcharges.[16]

A cy *pres award* to the Public Justice Foundation will benefit the class or similarly situated persons, and will promote the law consistent with the objectives and purposes of the underlying cause of action in this case. The Public Justice Foundation will use any such award to protect and advance the rights of consumers, including the right to seek redress through class actions, and to be free of deceptive and unfair practices.[17]

WHEREFORE, plaintiffs respectfully request that the Court enter an order approving *cy pres* distribution of the residual settlement fund to the Public Justice Foundation. Plaintiffs submit herewith a proposed order for the convenience of the Court.

---

[16] A full description of the work of the Public Justice Foundation is set forth in the Declaration of Gary Gold-Moritz, Chief Operating Officer of the Public Justice Foundation, dated April 25, 2014.

[17] *See id.* at e.g., ¶31.

5

Date: April 29, 2014                    Respectfully submitted,

/s/  **Thomas M. Sobol**
Thomas M. Sobol
David S. Nalven
Hagens Berman Sobol Shapiro LLP
55 Cambridge Parkway
Cambridge, MA 02142
Tel:   (617) 482-3700
Fax:   (617) 482-3003
Email: tom@hbsslaw.com
           davidn@hbsslaw.com

*Escrow Counsel and Plaintiffs' Co-Lead Class Counsel*

Christopher A. Seeger (CS-4880)
David Buchanan
Seeger Weiss LLP
One William Street
New York, NY 10004
Tel:   (212) 584-0700
Fax:   (212) 584-0799

TerriAnne Benedetto
Seeger Weiss LLP
1515 Market Street, Suite 1380
Philadelphia, PA  19102
Tel:   (215) 564-2300
Fax:   (212) 851-8029

*Plaintiffs' Liaison and Co-Lead Class Counsel*

6

## CERTIFICATE OF SERVICE

I hereby certify that I am one of plaintiffs' attorneys and that on this date I caused copies of the papers annexed hereto to be served on all counsel of record in this proceeding via CM/ECF filing.

/s/ **Thomas M. Sobol**
Thomas M. Sobol

Dated: April 29, 2014